IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HYSITRON INCORPORATED, a Minnesota corporation, | Civil Action No. 0:07-cv-01533-ADM/AJB |
| Plaintiff, | |
| | **AMENDED COMPLAINT** |
| v. | |
| MTS SYSTEMS CORPORATION, a Minnesota corporation, | (Jury Trial Demanded) |
| Defendant. | |

Hysitron Incorporated, for its Complaint against MTS Systems Corporation, states:

## THE PARTIES

1. Plaintiff, Hysitron Incorporated ("Hysitron"), is a corporation organized and existing under the laws of Minnesota and having a principal place of business in Eden Prairie, Minnesota.

2. Defendant, MTS Systems Corporation ("MTS"), is a corporation organized and existing under the laws of Minnesota and having a principal place of business in Eden Prairie, Minnesota.

## JURISDICTION AND VENUE

3. This is a case for patent infringement arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271, *et seq.*, trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. 1051, *et seq.*, deceptive trade practices arising under the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*, unlawful trade practices under the

Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq.*, and common law trademark infringement and unfair competition. This Court has subject matter jurisdiction over Hysitron's patent infringement and federal trademark infringement and unfair competition claims under 28 U.S.C. §§ 1331, 1338(a), (b), and 15 U.S.C. § 1121. It has subject matter jurisdiction over the supplemental state claims pursuant to 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over Defendant by virtue of Defendant's incorporation under the laws of the State of Minnesota, Defendant's maintenance of its headquarters in the State of Minnesota, and Defendant's continuous and systematic contacts with the State of Minnesota.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and § 1400(b).

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 6,026,677

6. On February 22, 2000, United States Patent No. 6,026,677 ("the '677 patent"), entitled APPARATUS FOR MICROINDENTATION HARDNESS TESTING AND SURFACE IMAGING INCORPORATING A MULTI-PLATE CAPACITOR SYSTEM was duly and legally issued to Hysitron as assignee of the inventor, Wayne A. Bonin. Hysitron is the owner of the entire right, title and interest in and to the '677 patent, and has been and continues to be the owner. A copy of the '677 patent is attached as Exhibit A and is incorporated by reference.

7. Defendant has directly infringed, induced infringement, and contributed to the infringement of the '677 patent through the manufacture, use, sale, and offer for sale of indentation testing devices with a scanned probe microscope apparatus, including NANO

Vision™, as well as Defendant's manufacture, use, sale, and offer for sale of scanned probe microscope apparatuses, including NANO Vision™, to be used with indentation testing devices.

8. Hysitron has been damaged by Defendant's infringement of the '677 patent and will continue to be damaged in the future and suffer irreparable injury unless Defendant is enjoined from infringing, inducing the infringement, and contributing to the infringement of the '677 patent.

9. Hysitron has satisfied the requirements of 35 U.S.C. § 287(a) by marking its products to indicate that the products are covered by the '677 patent.

10. Defendant's infringement of the '677 patent has been willful and will continue to be willful unless the Defendant is enjoined from further infringement of the '677 patent.

## COUNT II

### INFRINGEMENT OF U.S. PATENT NO. 5,553,486

11. Paragraphs 1 through 5 are incorporated by reference and made a part of this Count.

12. On September 10, 1996, United States Patent No. 5,553,486 ("the '486 patent"), entitled APPARATUS FOR MICROINDENTATION HARDNESS TESTING AND SURFACE IMAGING INCORPORATING A MULTI-PLATE CAPACITOR SYSTEM was duly and legally issued to Hysitron as assignee of the inventor, Wayne A. Bonin. Hysitron is the owner of the entire right, title and interest in and to the '486 patent, and has been and continues to be the owner. A copy of the '486 patent is attached as Exhibit B and is incorporated by reference.

13. Defendant has directly infringed, induced infringement, and contributed to the infringement of the '486 patent through the manufacture, use, sale, and offer for sale of

indentation testing devices with a scanned probe microscope apparatus, including NANO Vision™, as well as Defendant's manufacture, use, sale, and offer for sale of scanned probe microscope apparatuses, including NANO Vision™, to be used with indentation testing devices.

14. Hysitron has been damaged by Defendant's infringement of the '486 patent and will continue to be damaged in the future and suffer irreparable injury unless Defendant is enjoined from infringing, inducing infringement, and contributing to the infringement of the '486 patent.

15. Hysitron has satisfied the requirements of 35 U.S.C. § 287(a) by marking its products to indicate that the products are covered by the '486 patent.

16. Defendant's infringement of the '486 patent has been willful and will continue to be willful unless the Defendant is enjoined from further infringement of the '486 patent.

## COUNT III

## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

17. Paragraphs 1 through 5 are incorporated by reference and made a part of this Count.

**PRELIMINARY STATEMENT**

18. In 1992, Plaintiff introduced to the public the trademark and trade name HYSITRON. Since as early as 1995, Plaintiff has used the HYSITRON trademark and trade name in connection with nanomechanical test instruments and services related, which Plaintiff markets via numerous trade channels, including the Internet. Plaintiff's HYSITRON brand products and services are highly regarded throughout the United States, being among other things, the subject of numerous awards.

19. Defendant, with actual knowledge of Plaintiff's HYSITRON trademark and trade name, bid for the keyword term "hysitron" on search engines, causing Defendant's advertising to be displayed on the search results page associated with Plaintiff's HYSITRON mark.

20. Defendant uses Plaintiff's HYSITRON trademark and trade name to promote its own nanomechanical products and services, including those products infringed under Counts I and II above, via the same channel as Plaintiff, causing Plaintiff irreparable harm.

**PLAINTIFF'S TRADEMARK AND TRADE NAME**

21. Plaintiff is the owner of the common law trademark and trade name HYSITRON for use in connection with a wide variety of nanomechanical test instruments and related services, which it has sold under the HYSITRON trademark and trade name since at least as early as 1995 throughout the United States.

22. Plaintiff has invested a significant amount of money to promote its nanomechanical test instruments under its HYSITRON mark. Through continuous, extensive, and exclusive use and promotion by Plaintiff, the HYSITRON trademark and trade name is known to consumers across the United States.

23. Plaintiff's HYSITRON mark is distinctive for nanomechanical test instruments, and was prior to the time Defendant began using the term HYSITRON.

24. Plaintiff's HYSITRON mark is recognized and relied upon as identifying Plaintiff as the sole source of nanomechanical test instruments under that mark, and as distinguishing Plaintiff's goods and services from the goods and services of others. As a result, Plaintiff's HYSITRON mark has acquired substantial goodwill and is an extremely valuable commercial asset.

**SEARCH ENGINE ADVERTISING**

25. Internet search engines (e.g. Google, Yahoo!, and AOL) enable consumers to locate specific companies and the online websites of those companies by keying in terms and performing searches of search engine databases. After a consumer keys in a search term (e.g. "shoes"), the search engine processes the request and produces search results matching the key term searched (e.g. "NIKE.com"). The process of conducting a key term search on a search engine is nearly instantaneous, which allows consumers to rapidly key in a search term, view results of that query, select a destination, and arrive at the website of the selected company.

26. Internet search engines produce two types of search results: organic and sponsored. Organic search results are based on data collected by search engines from the Internet. Search engines use crawlers, spiders, and other technology to learn and collect information from various websites located on the Internet. Those results are then collected in a database. If a key term entered by a consumer matches the data collected from a particular website, that website may be produced as a search result.

27. Sponsored search results are links that are based on keywords purchased by advertisers. Several search engines have set up sponsored link programs as a way to generate revenue for the search engines. As part of a sponsored link program, advertisers purchase or bid on terms. Those terms are put into a database and linked to the advertiser's website or advertisement. If a consumer keys in an advertiser's purchased term, the advertiser's website link or advertisement will appear on the search results page.

28. One example of a sponsored link program is Google, Inc.'s AdWords program. The AdWords program enables advertisers to purchase or bid on keywords that generate an

advertising link (called a "Sponsored Link") on the search results page. The Sponsored Link directs consumers to the advertiser's website or advertisement.

29. The search results page generally contains the searched term in the search box at the top of the page, followed by a mixture of organic and sponsored search results. The sponsored results generally occur before and to the side of the organic search results.

30. By purchasing or bidding on key terms that are based on a competitor's trademarks, advertisers trick consumers into believing that the advertiser's products or services are in some way related, endorsed, sponsored by, or affiliated with the competitor or the competitor's trademark.

31. Advertisers who bid on a competitor's trademark through a search engine intentionally attempt to intercept consumers who are searching for a specific trademark owner's website. Based on the ease of conducting a search and the speed of the search results, consumers may click on the competitor's website, many of whom do not realize they have clicked on the link to a company unrelated to the term placed in the search engine query box.

**DEFENDANT'S UNLAWFUL CONDUCT**

32. After Plaintiff began use of its distinctive HYSITRON trademark and trade name, Defendant purchased or bid on Plaintiff's HYSITRON trademark through Google's AdWords program in connection with Defendant's online advertising, promotion, and marketing of competing products.

33. By purchasing or bidding on Plaintiff's trademark and trade name, Defendant seeks to trick consumers into visiting Defendant's website, implying a false association with Plaintiff or by directing consumers away from visiting Plaintiff's actual website.

34. Examples of searches conducted for the key term "hysitron" show Defendant's advertisement and website link in the search results page for Google and AOL, which is "enhanced by Google."



35. Defendant's use of Plaintiff's HYSITRON trademark and trade name as a key term that generates Defendant's advertisements for the same technology is in interstate commerce, including Minnesota.

36. Defendant's use of the HYSITRON trademark and trade name is likely to cause confusion, mistake, or deception as to the source of origin of Defendant's products and services in that customers and potential customers are likely to believe that the search engine results for Defendant's products and services based on the keyword "hysitron" are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Plaintiff.

37. As a direct and proximate result of the likely confusion, mistake, or deception, Plaintiff has suffered and will continue to suffer irreparable harm if the conduct of Defendant is not enjoined.

38. The likely confusion, mistake, or deception caused by Defendant is in violation of 15 U.S.C. § 1125(a).

39. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover the costs of this action. The nature of Defendant's unlawful acts renders this an "exceptional case," entitling Plaintiff to an award of attorneys' fees under 15 U.S.C. § 1117(a).

**COUNT IV**
**DECEPTIVE TRADE PRACTICES – Minn. Stat. 325D.44**

40. Paragraphs 1 through 5 and 18 through 39 are incorporated and made a part of this Claim.

41. Defendant has engaged in deceptive trade practices in violation of Minn. Stat. § 325D.44, including Minn. Stat. § 325D.44, subdivisions (1) through (5), because its use of the HYSITRON designation is likely to cause confusion, mistake, or deception as to the source of origin of Defendant's products and services in that customers and potential customers are likely to believe that the search engine results for Defendant's products and services based on the keyword "hysitron" are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Plaintiff or its products and services under Plaintiff's HYSITRON trademark or trade name.

42. As a direct and proximate result of the likely confusion, mistake, or deception, Plaintiff has suffered and will continue to suffer irreparable harm if the conduct of Defendant is not enjoined.

43. Pursuant to Minn. Stat. § 325D.45, Plaintiff is entitled to recover its costs and attorneys' fees.

## COUNT V
## UNLAWFUL TRADE PRACTICES ACT – MINN. STAT. § 325D.15

44. Paragraphs 1 through 5 and 18 through 43 are incorporated and made a part of this Claim.

45. Defendant has engaged in unlawful trade practices in violation of Minn. Stat. § 325D.09 *et seq.* because its use of the HYSITRON designation is likely to cause confusion, mistake, or deception as to the source of origin of Defendant's products in that customers and potential customers are likely to believe that the search engine results for Defendant's products and services based on the keyword "hysitron" are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Plaintiff or its products and services under Plaintiff's HYSITRON mark

46. As a direct and proximate result of the likely confusion, mistake, or deception, Plaintiff has suffered and will continue to suffer irreparable harm if the conduct of Defendant is not enjoined.

47. The public is being harmed by Defendant's use of the HYSITRON designation; stopping Defendant's actions will benefit the public in general and individual consumers who are searching for Plaintiff's products and services under the HYSITRON mark.

48. Pursuant to Minn. Stat. § 325D.15 and § 8.31, subd. 3a, Plaintiff is entitled to recover its costs, disbursements, and reasonable attorneys' fees.

## COUNT VI
## COMMON LAW TRADEMARK INFRINGEMENT

49. Paragraphs 1 through 5 and 18 through 48 are incorporated and made a part of this Claim.

50. Plaintiff's HYSITRON mark is distinctive.

51. Defendant's use of the HYSITRON designation is likely to cause confusion, mistake, or deception as to the source of origin of Defendant's products and services in that customers and potential customers are likely to believe that the search engine results for Defendant's products and services based on the keyword "hysitron" are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Plaintiff or its products and services under Plaintiff's HYSITRON mark.

52. Defendant's acts constitute trademark infringement under the common law.

53. Defendant's acts were taken in willful, deliberate, and/or intentional disregard of Plaintiff's rights.

54. Plaintiff has suffered irreparable harm, for which it has no adequate remedy at law, and will continue to suffer irreparable injury unless and until Defendant's infringing acts are enjoined by this Court.

## COUNT VII
## COMMON LAW UNFAIR COMPETITION

55. Paragraphs 1 through 5 and 18 through 54 are incorporated and made a part of this Claim.

56. Defendant's conduct constitutes unfair competition in violation of the rights of Plaintiff.

57. As a direct and proximate result of the unfair competition of Defendant, Plaintiff has suffered and will continue to suffer irreparable harm if the conduct of Defendant is not enjoined.

58. Defendant's acts were taken in willful, deliberate and/or intentional disregard of Plaintiff's rights.

59. Plaintiff respectfully requests a jury trial for this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Hysitron prays for the following relief:

A. A judgment that Defendant has infringed, induced infringement, and contributed to the infringement of United States Patent No. 6,026,677.

B. A judgment that Defendant's infringement of United States Patent No. 6,026,677 was willful.

C. A preliminary and permanent injunction enjoining Defendant, its directors, officers, agents, servants, and employees, as well as any other persons in privity or active concert with any of the aforementioned people, from further infringing, inducing the infringement, or contributorily infringing United States Patent No. 6,026,677.

D. The award to Hysitron of all damages, including lost profits, arising from Defendant's infringement of United States Patent No. 6,026,677, including treble damages for willful infringement as provided by 35 U.S.C. § 284, with interest and costs.

E. The award to Hysitron of pre-judgment interest under 35 U.S.C. § 284 and the further award of post-judgment interest under 28 U.S.C. § 1961 at the maximum rates permitted by law.

F. A judgment that Defendant has infringed, induced infringement, and contributed to the infringement of United States Patent No. 5,553,486.

G. A judgment that Defendant's infringement of United States Patent No. 5,553,486 was willful.

H. A preliminary and permanent injunction enjoining Defendant, its directors, officers, agents, servants, and employees, as well as well as any other persons in privity or active concert with any of the aforementioned people, from further infringing, inducing the infringement, or contributorily infringing United States Patent No. 5,553,486.

I. The award to Hysitron of all damages, including lost profits, arising from Defendant's infringement of United States Patent No. 5,553,486, including treble damages for willful infringement as provided by 35 U.S.C. § 284, with interest and costs.

J. The award to Hysitron of pre-judgment interest under 35 U.S.C. § 284 and the further award of post-judgment interest under 28 U.S.C. § 1961 at the maximum rates permitted by law.

K. Permanently enjoining and restraining Defendant and its respective partners, agents, servants, employees and attorneys, and those persons in active concert or participation with Defendant from:

    1. Using the HYSITRON mark on or in connection with or using the HYSITRON mark to generate advertisements, sponsorships, displays (including on the Internet and search engine advertising) or other promotions, to display for sale, offer for sale, sale, or to distribute any product or service or for any purposes whatsoever.

    2. Representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to

deceive purchasers into believing that Defendant's products or services originate with or are the products or services of Plaintiff or that there is any affiliation or connection between Plaintiff and its products and services and Defendant and its products or services, and from otherwise competing unfairly with Plaintiff;

L. Directing that Defendant, at its own expense, recall all the marketing, promotional and advertising materials and edit any websites that bear or incorporate any mark or design with HYSITRON not in conformance with Section K(1) of Plaintiff's Prayer For Relief, or any mark confusingly similar to Plaintiff's HYSITRON mark, which has been distributed, sold or shipped by it;

M. Directing such other relief as the Court may deem appropriate to prevent the trade and public from forming any erroneous impression that any product or service promoted or provided by Defendant is authorized by Plaintiff or related in any way to Plaintiff's products or services.

N. Directing Defendant to file with this Court and to serve upon Plaintiff within thirty (30) days after service upon Defendant of an injunction in this action, a written report by Defendant, under oath, setting forth in detail the manner in which Defendant has complied with the injunction.

O. For all damages available under federal or state common law or statute, including but not limited to actual, exemplary and statutory damages. Plaintiff specifically reserves its right to seek statutory damages under 15 U.S.C. § 1117(d) and fees under 35 U.S.C. § 285; and

P. Such other and further relief as this Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: May 29, 2007

MERCHANT & GOULD P.C.

By: s/Allen W. Hinderaker
    Allen W. Hinderaker, #45287
    Tong Wu, MN Reg. #0288974
    William D. Schultz #0323482
    Todd Werner, MN Reg. #033019X
    3200 IDS Center
    80 South Eighth Street
    Minneapolis, MN 55402-4131
    Telephone: (612) 332-5300
    Facsimile: (612) 332-9081

ATTORNEYS FOR PLAINTIFF