UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HYSITRON INCORPORATED,                                         CIVIL NO. 07-1533 ADM/AJB

    PLAINTIFF,

V.                                                                                           **ORDER ON DEFENDANT'S MOTION
FOR A STAY PENDING
REEXAMINATION**

MTS SYSTEMS CORPORATION,

    DEFENDANT.

This matter is before the court, United States Magistrate Judge Arthur J. Boylan, on Defendant's Motion for a Stay Pending Reexamination [Docket No. 16]. A hearing was held on June 20, 2007, in the United States District Courthouse, 180 E. Fifth Street, St. Paul, MN, 55101. Allen Hinderaker, Esq., and Tom Wu, Esq., appeared for Hysitron Incorporated. Erich Koch, Esq., appeared for MTS Systems Corporation.

Based upon the file and documents contained therein, along with the memoranda and arguments of counsel,

**IT IS HEREBY ORDERED** that Defendant's Motion for a Stay Pending Reexamination [Docket No. 16] is **denied**.

Dated:   June 26, 2007

                                                                               s/ Arthur J. Boylan
                                                                               Arthur J. Boylan
                                                                               United States Magistrate Judge

Dockets.Justia.com

**MEMORANDUM**

**I. Background**

Plaintiff Hysitron Incorporated ("Hysitron") filed this action on March 14, 2007. In its complaint, Hysitron included two counts of patent infringement and five counts of unfair competition based on trademark infringement. Am. Compl. 2-12 [Docket No. 21]. More specifically, Hysitron alleges MTS Systems Corporation ("MTS") infringed two patents, U.S. Patent No. 6,026,677 ("the '677 Patent") and U.S. Patent No. 5,553,486 ("the '486 Patent"). Both patents are directed to a device capable of *in situ* topographical imaging in conjunction with nanomechanical indentation testing. See Pl.'s Mem. 3 [Docket No. 30].

On May 25, 2007, MTS submitted a "Request for *Ex Parte* Reexamination" of both patents with the United States Patent and Trademark Office ("PTO"). Reexamination of these claims was requested by MTS in light of the following references: (1) Todd, J.D. & Pethica, J.B., A Shear Model for STM Imaging of Layered Materials, J. Phys.: Condens. Matter 1, pp. 9823-9821 (1989); (2) Pethica, J.B. & Oliver, W.C., Tip Surface Interactions in STM and AFM, Physica Scripta, Vol. 119, pp. 61-67 (1987); (3) Oliver et al., U.S. Patent No. 4,848,141; (4) Hansma et al., U.S. Patent No. 4,800,274; and (5) Sikorra, U.S. Patent No. 4,196,632. Additionally, MTS sough reexamination of claims 1-3, 5-6, 10-12, 25-27, 31 and 32 of the '486 Patent.[1]

---

[1]MTS notes that the courts recognize that partial stays of only the claims subject to reexamination are essentially impossible. See Def.'s Mem. 3 n.1 [Docket No. 27]. Although such circumstances might not present the optimal scenario for granting a stay, there is no obvious better alternative. Id.; see also CNS, Inc. v. Silver Eagle Labs, Inc., 2004 WL 3631121, at *2 (D. Minn.

**II. Analysis**

The authority to grant or deny a motion to stay rests within the sound discretion of the court and is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 254-55 (1936). In order to weight the competing interests of the parties, courts generally consider "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

MTS cites several benefits which would result upon a stay of this matter: (1) any patentability issues relating to the prior art will be addressed by the PTO examination and the PTO will determine the effect of the prior art on the validity of the patents-in-suit; (2) all prior art will have first been considered by the PTO (with its particular expertise) which is a significant advantage in this case considering the highly technical nature of nanotechnology patents, patent claims, and prior art; (3) if the reexamination results in effectively invalidating either patent, the present suit will be dismissed or the claims related to the invalid patent will be dismissed; (4) the outcome of reexamination may encourage a settlement without the further involvement of the court; (5) in the event this case proceeds to trial, the

---

Nov. 29, 2004)(noting lack of "any solutions for an efficient and effective division of the case between" the reexamined claims and the rest); cf. Pacesetter Inc. v. Cardiac Pacemakers, Inc., 2003 WL 23303473, at *1, *3 (D. Minn. Nov. 19, 2003)(rejecting option of a partial stay and proceeding with the two patents that were not in reexamination because "impracticable, if not impossible").

record of the patent reexamination will likely be entered, thereby reducing the complexity and length of litigation and the burden on the parties to clearly set forth all necessary admissible evidence; (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination due to a narrowing of the issues based upon the PTO's reexamination decision; and (7) because of a narrowing of the issues, a streamlined discovery process, and a determination on the validity of the patents-in-suit, both the parties and the court will benefit from reduced costs and expeditious litigation. See Def.'s Mem. 6-7 [Docket No. 27]. In summary, MTS claims a stay of the proceedings will narrow the contested claims and issues, prevent the litigation of irrelevant matters, and expedite the resolution of the matter. Id. at 9.

However, as Hysitron points out, in determining whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, courts consider the effect of the stay in the litigation as well as in the market. IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005); Wayne Auto. Corp. v. R.A. Pearson Co., 782 F. Supp. 516, 519 (E.D. Wash. 1991). Courts will consider the competitiveness of the market and whether a stay will give the moving party an unfair competitive advantage in deciding whether a stay will prejudice the non-moving party in the market. IMAX Corp., 385 F. Supp. 2d at 1033; Wayne Auto. Corp., 782 F. Supp. at 519. Hysitron and MTS are competing for a position in the nanotechnology market-a market that is highly specialized with few competitors. According to Hysitron, MTS is much larger than Hysitron and has the financial strength to sustain an aggressive price reduction strategy to take market share away from Hysitron.

Pl.'s Mem. 6 [Docket No. 30].[2] To succeed, Hysitron must try to compete with MTS on the basis of technical superiority alone. Granting a stay would allow MTS to continue to take market share from Hystitron by continuing to offer a potentially infringing product at a significantly reduced price. Hysitron cannot sustain such market pressure and remain competitive in the market thereby evidencing substantial prejudice to Hysitron.[3]

Moreover, MTS has merely requested *ex parte* reexamination. The results of *ex parte* reexaminations by the PTO are not binding on the parties. See Anascape, Ltd. v. Microsoft Corp., 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007)("[D]ecisions in the [*inter partes* reexamination] cases will be binding on the parties, which will result in simplification. The *ex parte* requests for reexamination...are less likely to clarify the issues.") Even if the PTO rules in Hysitron's favor as to the validity of their claims over the considered prior art, MTS is free to argue to the Court that those very same claims are invalid over the very same prior art. Moreover, the five counts based on trademark infringement cannot be simplified because they are not based on the patent claims that are the subject of the reexamination. Therefore, the Court concludes that, in light of the undue prejudice to Hysitron and the ineffective and non-binding effect of any PTO *ex parte* reexamination would have on only some of the issues presented in this case, MTS Motion to Stay [Docket No. 16] should be denied.

AJB

---

[2]Prior to mid-2006, *in situ* imaging devices were quoted at prices ranging from $200,000 to $300,000. Pl.'s Mem. 6 [Docket No. 30]. In light of the fact that MTS has entered the market, prices have dropped to the range of $100,000 to $225,000. Id.

[3] Given the prejudice to Hysitron, a stay is only proper if MTS demonstrates a clear case of inequity if the stay is denied. See IMAX Corp., 385 F. Supp. 2d at 1032. MTS fails to mention any inequity that would result if the stay were denied.