UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HYSITRON INCORPORATED, a Minnesota corporation, | Civil No. 07-cv-01533 (ADM/AJB) |
| Plaintiff, | |
| v. | **MTS'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES FROM HYSITRON** |
| MTS SYSTEMS CORPORATION, a Minnesota corporation, | |
| Defendant. | |

Defendant MTS Systems Corporation ("MTS") respectfully submits this memorandum of law supporting its motion to compel discovery responses from Plaintiff Hysitron Incorporated ("Hysitron").

## INTRODUCTION

MTS unfortunately finds it necessary to bring this Motion because Hysitron has engaged in discovery tactics which are severely impeding MTS's ability to defend against these patent infringement claims. Even though MTS served its discovery requests on August 1, 2007, Hysitron has largely failed or refused to respond to these discovery requests. It has objected to reasonable and essential document requests and interrogatories, and it has failed to timely fulfill the discovery obligations which it agreed to in the parties' meet and confer sessions. Hysitron refuses to produce such basic documents as communications regarding the patents-in-suit; sales plans and projections of the commercial embodiments of the invention disclosed in the patents-in-suit; license agreements on related technology; and other documents relevant to its claim for damages

and MTS's defenses. Such documents are well within the bounds of reasonable discovery, and Hysitron's refusal to provide this discovery is prejudicing MTS's ability to develop its defenses.

Perhaps even more troubling, Hysitron refuses to provide substantiation for the dramatic and far-reaching statements it made to this Court in convincing it to deny MTS's motion to stay these proceedings pending the patent office's reexamination of the patents-in-suit. Though stays are typical when, as here, the patent office finds that the defendant has raised a substantial question of patentability, Hysitron avoided a stay by asserting in an affidavit from its president that MTS's conduct would "put the future of Hysitron at serious risk." However, Hysitron refuses to respond to requests for documents supporting such allegations; indeed, it refuses to even produce documents showing its annual revenues. Hysitron's reluctance to substantiate its statements not only suggests the need for an order compelling discovery—it also suggests that Hysitron has improperly avoided a stay of these proceedings.

## FACTUAL BACKGROUND

On August 1, 2007, MTS served upon Hysitron its First Set of Interrogatories, Document Requests and Requests for Admission to Plaintiff. (Declaration of Matthew Spohn ("Spohn Decl.") ¶ 2.) After seeking and receiving an extension, Hysitron served MTS with its responses on September 7, 2007. (*Id*. at Ex. A.)

In a letter dated September 25, 2007, counsel for MTS detailed the deficiencies it found in Hysitron's discovery responses. (Spohn Decl., Ex. B.) Counsel for Hysitron responded in writing (*id*. at Ex. C), and then counsel for the parties held a telephonic

2

meet-and-confer that was subsequently confirmed in writing. (*Id*. at Ex. D.) Counsel for Hysitron followed up to resolve a few additional issues. (*Id*. at Exs. E-F.) When it was clear that the parties were unable to resolve their remaining differences, MTS brought the motion at hand.

## ARGUMENT

**I.     HYSITRON HAS NOT PRODUCED THE DOCUMENTS THAT WERE DUE SEPTEMBER 7, 2007.**

Though MTS served its discovery requests on August 1, 2007, Hysitron still has only produced documents showing the prior art in its possession; it has not produced documents responsive to any other request. The outstanding discovery includes important document requests which are typical in a patent infringement action. Such documents should have been produced in early September, 2007, when Hysitron's response to MTS's document request was due. Very simply, Hysitron has failed to produce broad categories of documents which are an essential part of discovery in this or any other patent litigation. There is no justification for Hysitron's *de facto* 6-week extension of its time to respond to MTS's requests. The unjustified refusal to participate in document discovery must end. Hysitron should be ordered to produce all responsive documents.

**II.    HYSITRON HAS NOT PRODUCED THE INFORMATION AND DOCUMENTS IT AGREED TO PRODUCE IN THE PARTIES' MEET-AND-CONFER PROCESS.**

After Hysitron initially refused to respond to many of MTS's requests, the parties met and conferred. As part of that process, Hysitron committed to answering

3

Interrogatory Nos. 1, 3, 4, 7 and 12, and to producing documents in response to Request Nos. 2, 22, 38, 63 and 81. (Spohn Decl. Exs. D & E.) MTS still has not received that promised supplementation, and Hysitron should be ordered to provide it. Again, discovery obstruction and delay cannot continue.

### III. HYSITRON REFUSES TO RESPOND TO REQUESTS FOR BASIC INFORMATION RELEVANT TO THE ISSUES OF THIS CASE.

Even though, as the plaintiff in this case, Hysitron seeks to disrupt a major product line of MTS and recover substantial monetary damages, Hysitron has adopted an unjustifiably narrow interpretation of its discovery obligations by refusing to produce information and documents obviously relevant to critical issues in this case. While Hysitron has sought, and MTS has produced, broad information relating to the accused product, Hysitron so far has used discovery as a one-way street. Below, MTS has grouped the documents requests at issue, with a short discussion of why Hysitron should respond to each.

#### A. Documents Regarding Hysitron's Development Of The Technology At Issue

In assessing the validity of a patent, it is customary to review all of the patent holder's documents relating to their work on the technology at issue before the patent was issued. This review will show whether individuals other than the named inventor had a hand in the inventive process, such that the plaintiff does not possess full rights to sue. In addition, it will help illuminate questions such as the priority date of the invention vis-à-vis prior art. Such documents may also contain statements or admissions about the true nature of the inventions, the significance of prior art, and other matters. Accordingly,

MTS propounded the following document requests to Hysitron, which Hysitron has unreasonably and improperly limited:

> **REQUEST NO. 5:** All laboratory or technical notebooks or other working papers, notes or notebooks of Wayne Bonin and any other person assisting or working with Mr. Bonin, relating to scanned probe microscope apparatuses, microindentation hardness testing, surface imaging, and/or multi-place capacitor systems.
>
>> **RESPONSE TO REQUEST NO. 5:** Hysitron incorporates its General Objections and further objects to this Request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this Request as overbroad and unduly burdensome, as it seeks development of documents that exceed the scope of the technology at issue in this lawsuit. Hysitron further objects to this Request as overbroad and unduly burdensome because it is not limited as to time. Hysitron has developed numerous products after having conceived and reduced-to-practice the inventions claimed in the patents-in-suit. The subsequent development efforts are not relevant to the claims or defenses alleged in this lawsuit. Subject to and without waiving its General and Specific Objections, Hysitron will produce responsive, non-privileged documents relating to the development of the inventions claimed in the patents-in-suit.
>
> **REQUEST NO. 10:** All documents and things relating to any work, research, tests, experiments or studies (whether complete, incomplete, or prematurely terminated) relating to any scanned probe microscope apparatuses, microindentation apparatuses, any surface imaging apparatuses, and/or any multi-plate capacitor systems.
>
>> **RESPONSE TO REQUEST NO. 10:** Hysitron incorporates its General Objections and further objects to this Request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this Request as overbroad and unduly burdensome because it is not limited as to time and seeks documents concerning technology beyond that at issue in this action. Hysitron has developed numerous products after having conceived and reduced-to-practice the inventions claimed in the patents-in-suit. The subsequent development efforts are not relevant to the claims or defenses alleged in this lawsuit. Moreover, to the extent the Request seeks

documents related to "any work . . . related to any . . . scanned probe microscope apparatuses," it would literally encompass every document ever made by a Hysitron employee related to such apparatuses. Subject to and without waiving its General and Specific Objections, Hysitron will produce responsive, non-privileged documents relating to the development of the inventions claims in the patents-in-suit as stated in response to Request No. 7.

**REQUEST NO. 11:** All documents and things relating to any domestic or foreign patents, patent prosecution histories, patent applications or efforts at preparing patent applications that relate to scanned probe microscope apparatuses, microindentation apparatuses, surface imaging apparatuses, and/or multi-plate capacitor systems.

> **RESPONSE TO REQUEST NO. 11:** Hysitron incorporates its General Objections and further objects to this Request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this Request as overbroad and unduly burdensome because it is not limited as to time and seeks documents concerning technology beyond that at issue in this action. Hysitron has developed numerous products after having conceived and reduced-to-practice the inventions claimed in the patents-in-suit. The subsequent development efforts are not relevant to the claims or defenses alleged in this lawsuit. Moreover, to the extent the Request seeks documents related to "any work . . . related to any . . . scanned probe microscope apparatuses," it would literally encompass every document ever made by a Hysitron employee related to such apparatuses. Subject to and without waiving its General and Specific Objections, Hysitron will produce responsive, non-privileged documents relating to any patent applications in the same the family as the patents-in-suit.

Hysitron's response to these discovery requests is unacceptably ambiguous and unreasonably narrow. After offering a litany of objections on the grounds of overbreadth, burdensomeness, etc., Hysitron states that it will produce only certain documents which it deems responsive to a document request which is fundamentally different from the requests served by MTS. For example, in Request No. 5, MTS seeks laboratory or

6

technical notebooks and other documents relating to the field of technology occupied by the patents-in-suit: scanned probe microscopes, microindentation apparatuses, surface imaging apparatuses, and multi-plate capacitor systems. In its response Hysitron obviously purports to narrow this request, but does not disclose with any degree of particularity what documents it will produce or the scope of its document production. Hysitron will only produce documents relating to the development of the inventions that *it determines* are claimed in the patents-in-suit, but will not produce documents relating to its work in the field of technology actually claimed in the patents-in-suit. Thus, Hysitron proposes to shield all of its work in the relevant field of art from MTS, except that work Hysitron itself determines relates to the patents-in-suit. Hysitron would be the unilateral arbiter of what is "relevant" and "discoverable" and would thereby preclude from discovery broad categories of documents, such as laboratory notebooks, which are clearly relevant to this lawsuit.

Hysitron's objections to this discovery are unavailing and should be rejected. First, it should be noted that counsel for MTS offered to limit its requests to the time period of 1990-1996 (the latter being the date the earliest of the patents-in-suit was issued). (Spohn Decl. Ex. F.) This should have resolved Hysitron's objection to the time period of the request. Nevertheless, Hysitron's counsel refused without explanation to respond to even that more narrow and clearly appropriate request. (*Id*. at Ex. G.)

Second, Hysitron's objection that these requests are overbroad ignores the very language of the patents that are at issue in this lawsuit. MTS's requests for documents in the field of "scanned probe microscope apparatuses, microindentation apparatuses, surface

7

imaging apparatuses, and/or multi-plate capacitor systems" comes directly from the titles of the patents-in-suit and Hysitron's own characterization of the products at issue. (*See* Docket Entry No. 1 at Exs. A & B, each titled "Apparatus For **Microindentation** Hardness Testing And **Surface Imaging** Incorporating A **Multi-Plate Capacitor System**" (emphasis added); *see also* Docket Entry Nos. 1 & 21, each at ¶ 7 (discussing the products at issue being "**indentation devices** with a **scanned probe microscope** apparatus").) Thus the scope of MTS's requests are precisely consistent with the field of the claimed invention, and MTS is entitled to obtain documents which pertain to the work Hysitron did in this field before the patents-in-suit issued.

There is no basis for Hysitron's attempt to hide from MTS the documents relating to its work in the field of the patents-in-suit during the time period where they are most relevant to MTS's claims. All responsive documents should be produced.

### B.   License And Other Agreements Relevant To A Reasonable Royalty

Hysitron refuses to clarify whether it is seeking lost profits, a reasonable royalty, or a combination of the two as its damages in this case. Accordingly, MTS propounded the following requests for information that would be relevant to Hysitron's damage claim:

> **REQUEST NO. 23:**   All documents and things relating to any license, contract or other agreement relating to any Hysitron scanned probe, microindentation and/or surface imaging product.
>
> > **RESPONSE TO REQUEST NO. 23:**  Hysitron incorporates its General Objections and further objects to this request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this request as overbroad and unduly burdensome because it is not

limited as to time and seeks documents concerning technology beyond that at issue in this action. Hysitron further objects to this request as overbroad and unduly burdensome because its seeks documents, in part, that are not relevant to the claims or defenses in this action. Subject to and without waiving its General Specific Objections, Hysitron will produce non-privileged documents relating to any license related to any of its scanned probe microscopes.

**REQUEST NO. 24:** All licenses extended by a third party to you regarding any technology or component used in any Hysitron scanned probe, microindentation and/or surface imaging product.

> **RESPONSE TO REQUEST NO. 24:** Hysitron incorporates its General Objections and further objects to this request as overbroad and unduly burdensome because it seeks documents concerning technology beyond that at issue in this action. Subject to and without waiving its General and Specific Objections, Hysitron will produce any licenses related to any of its scanned probe microscopes.

**REQUEST NO. 25:** All licenses extended by you to a third party regarding any technology or component used in any scanned probe, microindentation and/or surface imaging product.

> **RESPONSE TO REQUEST NO. 25:** Hysitron incorporates its General Objections and further objects to this request as overbroad and unduly burdensome because it seeks documents concerning technology beyond that at issue in this action. Subject to and without waiving its General and Specific Objections, Hysitron will produce any licenses it has granted related to scanned probe microscopes.

**REQUEST NO. 26:** All documents and things relating to any agreement, assignment, encumbrance or license relating to the patents-in-suit or any patents or patent applications claiming priority thereto.

> **RESPONSE TO REQUEST NO. 26:** Hysitron incorporates its General Objections and further objects to this request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this request as overbroad and unduly burdensome because it seeks documents, in part, that are not relevant to the claims or defenses in this action. Subject to and without waiving its General and Specific Objections, Hysitron will produce non-privileged documents relating

> to any assignment, license, or encumbrance related to the patents-in-suit or patent applications claiming priority thereto.

With regard to these requests, Hysitron will only produce documents relating to licenses and similar agreements relating to its scanned probe microscopes; it will not produce documents relating to licenses for related technology, such as microindentation or surface imaging products that provide potentially useful data points in considering the amount of a reasonable royalty. Once again, Hysitron's approach to discovery is unduly limited and would exclude broad categories of potentially responsive documents. The requested documents are relevant to Hysitron's claim for a reasonable royalty, as "[c]ourts give weight to the licensing customs in the industry and actual licenses on comparable patents in determining both the reasonably royalty rate and the base for the reasonable royalty." Donald S. Chisum, *Chisum on Patents* § 20.03[3][b][ii] at pp. 20-208 to 20-209 (2007) (collecting authority). Thus, courts often look to royalties for patents in similar and related technologies to determine the value of the invention at issue, and they are not constrained to consider only royalties for the patents-in-suit. Nevertheless, Hysitron refuses to produce documents regarding licenses and other agreements for similar technology.

Hysitron can hardly claim that MTS is defining the relevant scope of technology too broadly, as the language in the request is taken directly out of the title of the patents-in-suit: "Apparatus For **Microindentation** Hardness Testing And **Surface Imaging** Incorporating A **Multi-Plate Capacitor** System." (U.S. Patent Nos. 5,553,486 & 6,026,677) (emphasis added). Royalty or license agreements relating to any one of these

technologies is potentially relevant to a determination of an appropriate royalty for the invention covered by these patents. MTS is entitled to royalty agreements, and any similar agreements, relating to this technology as well—not just relating to scanned probe microscopes.

### C. Communications Regarding The Patents-In-Suit

MTS also propounded standard document requests for patent cases which seek all communications related to the patents-in-suit. Those communications are relevant to the invalidity or enforceability of the patents, and to alleged damages—whether in the form of lost profits or a reasonable royalty.

> **REQUEST NO. 34:** All documents and things relating to any communications with third parties relating to the patents-in-suit or this lawsuit.
>
>> **RESPONSE TO REQUEST NO. 34:** Hysitron incorporates its General Objections and further objects to this request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this request as overbroad and unduly burdensome because it seeks documents, in part, that are not relevant to the claims or defenses in this action. Hysitron further objects to the request because it is not limited as to time. Subject to and without waiving its General and Specific Objections, Hysitron will produce responsive, non-privileged documents concerning this lawsuit or the validity or enforceability of the patents-in-suit.
>
> **REQUEST NO. 35:** All documents and things relating to any internal communications at Hysitron relating to the patents-in-suit or this lawsuit.
>
>> **RESPONSE TO REQUEST NO. 35:** Hysitron incorporates its General Objections and further objects to this request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this request as overbroad and unduly burdensome because it seeks documents, in part, that are not relevant to the claims or defenses in

> this action. Hysitron further objects to the request because it is not limited as to time. Subject to and without waiving its General and Specific Objections, Hysitron will produce responsive, non-privileged documents concerning this lawsuit or the validity or enforceability of the patents-in-suit.

In its ambiguous responses interposing objections and agreeing to produce some limited group of documents, Hysitron only commits to producing communications regarding the patents-in-suit that *it* deems to be relevant to the validity or enforceability of the patents. Given Hysitron's interest in preserving the validity and enforceability of its patents, that approach is plainly unworkable. MTS is entitled to production of *all* non-privileged communications regarding the patents-in-suit so that it can independently determine whether the communications bear on the validity or enforceability of the patents. Hysitron cannot arbitrarily pick and choose among discoverable documents to select which ones will be produced. As to the time limitation issues, the oldest of the patents-in-suit was issued in 1996, so the request is inherently limited as to time, i.e., documents which post-date the issuance of the earliest-issued patent.

Furthermore, communications regarding the patents-in-suit are relevant for purposes other than validity and enforceability. For instance, for Hysitron to claim damages in the form of a reasonable royalty, the parties must engage in the analysis of a hypothetical license negotiation that would have occurred in the past. Donald S. Chisum, *Chisum on Patents* § 20.03[3][a] at pp. 20-181 to 20-182 (2007) (collecting authority). Communications regarding the patents-in-suit should reveal information relevant to undertaking that fact-specific, retrospective analysis.

Hysitron is suing upon these two patents and is seeking to prevent MTS from manufacturing and selling an important product that MTS has been selling for years. Given the significance of these issues, it is surely not too burdensome to ask that it produce all its communications regarding those patents. Full responses to these requests should be ordered.

### D. Sales Projections, Marketing Plans And Similar Documents Relevant To Hysitron's Damage Claim

Hysitron has also refused to produce basic documents relevant to its damage claim against MTS.

> **REQUEST NO. 47:** All projections, forecasts, market share reports and forecasts, marketing acceptance documents, business plans, strategic plans, fiscal plans, marketing strategies and plans, sales strategies and plans and advertising strategies and plans relating to the sale and anticipate sale of scanned probe microscope apparatuses, microindentation apparatuses, surface imaging apparatuses, and/or multi-plate capacitor systems.
>
>> **RESPONSE TO REQUEST NO. 47:** Hysitron incorporates its General Objections and further objects to this request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this request as overbroad and unduly burdensome because it seeks documents concerning technology beyond that at issue in this action. The request is also overbroad and unduly burdensome in the volume of documents it encompasses that do not relate to any claims or defenses in this matter, such as documents concerning anticipated sales. Hysitron also objects to the request as vague and ambiguous, particularly with respect to the terms "strategic plans" and "business plans."

Unless Hysitron drops all claims for damages against MTS, it must comply with this basic request for financial, marketing and sales documents. This request seeks plans, strategies, projections and reports relating to Hysitron's sales of products in the field of

technology covered by the patents-in-suit. The scope of the technological field ("scanned probe microscope apparatuses, microindentation apparatuses, surface imaging apparatuses, and/or multi-plate capacitor systems") is taken directly from the titles of the patents-in-suit. Even so, in the meet-and-confer process, MTS offered to limit the request to commercial embodiments of the patents-in-suit. (Spohn Decl. Ex. D.) Hysitron still refused to respond to this more narrow request. (*Id*. at Exs. D & E.)

Hysitron's position is untenable. The requested documents are components of any competent lost profits analysis as they likely contain information regarding the nature of the market for products covered by the patents-in-suit, the size of the market, competition and competitors in the market, differentiation among competing products, and other similar information. All of this information is highly relevant to a lost profits claim because, in order to prove such a claim, Hysitron must present a market analysis and demonstrate "but for" MTS's infringement, Hysitron would have made the sales made by MTS. The requested documents bear on these issues.

The requested documents are additionally relevant to Hysitron's claim for a reasonable royalty, where one of the factors considered is the state of development and commercialization of the patent's commercial embodiment. Donald S. Chisum, *Chisum on Patents* § 20.03[3][b][viii] at pp. 20-243 to 20-244 (2007) (collecting authority). This analysis likewise requires an analysis of the market for Hysitron's product, which will again require analysis of the requested documents. MTS should not be forced to be unarmed in its defense of Hysitron's damage claim.

The requested documents are also relevant to Hysitron's trademark infringement and related claims. Documents reflecting marketing strategies, advertising strategies and plans, the nature and state of the market, product differentiation, etc., are all relevant to an analysis of actual or potential confusion in the market. Such documents likely contain information about the identity and characteristics of actual and potential purchasers of the products covered by these patents, how purchasers make decisions with respect to which competing product to purchase, how Hysitron and its competitors market their products, etc. Thus, even if the requested documents were somehow not relevant to Hysitron's damage claims arising from the alleged patent infringement, they are discoverable and relevant with respect to Hysitron's trademark claims.

### E. Hysitron Management Notes Referencing MTS

Hysitron has also refused to produce documents that help establish the nature of the competitive relationship between the parties, which is another part of the analysis of Hysitron's damage claim.

> **REQUEST NO. 60:** All minutes or notes from any Hysitron board of directors meetings or other management meetings since January 1, 1996 that refer or relate to MTS, the patents-in-suit, or this lawsuit.
>
>> **RESPONSE TO REQUEST NO. 60:** Hysitron incorporates its General Objections and further objects to this request to the extent it seeks the production of documents subject to the attorney-client privilege or work product protection. Hysitron further objects to this request as overbroad and unduly burdensome because its seeks documents concerning technology beyond that at issue in this action. Hysitron further objects to this request as overbroad and unduly burdensome because it seeks documents that are not relevant to the claims or defenses alleged in this action. Subject to and without waiving General and Specific Objections, Hysitron will produce responsive, non-privileged documents relating to the patents-in-suit.

15

This is a narrow request limited to minutes or notes from any Hysitron board of directors meetings or other management meetings since January 1, 1996. While MTS requests all such documents that refer or relate to MTS, Hysitron will only produce such documents to the extent they relate to the patents-in-suit.

The requested documents are directly relevant to Hysitron's claim for a reasonable royalty, as that analysis requires consideration of the commercial relationship between the parties. Donald S. Chisum, *Chisum on Patents* § 20.03[3][b][iii] at pp. 20-212 to 20-213 (2007) (collecting authority). Of course, that same analysis is required with respect to Hysitron's claim for lost profits, to determine whether sales made by MTS would have otherwise been made by Hysitron. Given how narrow this request is, there is no justification for Hysitron's refusal to fully respond to it.

### F. Documents Substantiating Hysiton's Factual Allegations That Convinced The Court To Forego Staying This Case

Hysitron's stonewalling is perhaps most egregious with respect to MTS's requests for documents substantiating the factual representations Hysitron made to this Court, which the Court relied upon in declining to stay this action pending the United States Patent and Trademark Office's ("USPTO") reexamination of both the patents-in-suit.

By way of background, when Hysitron brought its suit against MTS, MTS quickly determined that Hysitron had obtained the patents-in-suit without disclosing key prior art to the USPTO. Specifically, Hysitron had not disclosed to the USPTO two publications that essentially disclosed the invention Hysitron is claiming in the patents-in-suit, nor had it disclosed two additional patents that further showed how obvious the claimed

inventions were. Accordingly, MTS requested that the USPTO reexamine the patents-in-suit and find them invalid, and also asked this Court to stay this action pending that analysis. (Docket Entry No. 16.)

In opposing MTS's motion for a stay, Hysitron submitted the declaration of its president, Thomas Wyrobek, that described the parade of horribles that would follow if MTS's motion were granted and the case was stayed. Among other things, Mr. Wyrobek claimed that Hysitron was so financially weak that if MTS were allowed to continue its alleged infringement, it "puts the future of Hysitron at serious risk." (Docket Entry No. 32 at ¶¶ 14 & 21.) Likewise, Mr. Wyrobek offered explanations of why Hysitron did not claim that MTS infringed the patents-in-suit earlier. (*Id*. at ¶ 19.) The Court specifically relied upon these fact representations from Mr. Wyrobek in denying MTS's motion to stay this proceeding. (Docket Entry No. 37 at pp. 4-5.)

MTS doubts the veracity of these statements. Accordingly, MTS requested Hysitron's documents that substantiated Mr. Wyrobek's dramatic statements. Tellingly, Hysitron has refused to respond, as set forth below.

> **REQUEST NO. 95:** Documents sufficient to show the annual revenues of Hysitron from 1992 to present.
>
>> **RESPONSE TO REQUEST NO. 95:** Hysitron incorporates its General Objections and further objects to this request because it seeks documents that are not relevant to the claims or defenses alleged in this action.
>
> **REQUEST NO. 96:** All documents and things supporting the statements contained in Paragraph 16 of the June 12, 2007 Declaration of Thomas Wyrobek.

>**RESPONSE TO REQUEST NO. 96:** Hysitron incorporates its General Objections and further objects to this request because it seeks documents that are not relevant to the claims or defenses alleged in this action.

**REQUEST NO. 97:** All documents and things supporting the statements contained in Paragraph 19 of the June 12, 2007 Declaration of Thomas Wyrobek.

>**RESPONSE TO REQUEST NO. 97:** Hysitron incorporates its General Objections and further objects to this request because it seeks documents that are not relevant to the claims or defenses alleged in this action.

**REQUEST NO. 98:** All documents and things supporting the statements contained in Paragraph 21 of the June 12, 2007 Declaration of Thomas Wyrobek.

>**RESPONSE TO REQUEST NO. 98:** Hysitron incorporates its General Objections and further objects to this request because it seeks documents that are not relevant to the claims or defenses alleged in this action.

Hysitron is apparently not comfortable with *any* scrutiny the statements it made to the Court in opposing a stay of this action; otherwise, it is difficult to see why Hysitron would refuse to back up its statements. Apparently, Hysitron is working under the impression that it may make factual assertions to the Court in the context of a non-dispositive motion before discovery, and then need not ever have those factual assertions tested. That is not the law. Fed. R. Civ. P. 26(b)(1) states that parties may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ." Here, the factual basis for Hysitron's statements to the Court is relevant to the provisional remedy regarding MTS's defense that the patents-in-suit are invalid, in light of the USPTO's ongoing reexamination of the patents-in-suit. Likewise, the requested information regarding Hysitron's finances is independently relevant to

18

Hysitron's claim of an entitlement to lost profits and/or a reasonable royalty; such financial information will need to be produced in any event.  Likewise, information regarding Hysitron's delay in filing suit against MTS is relevant to the period for which Hysitron is entitled to claim damages.  Donald S. Chisum, *Chisum on Patents* § 19.05[2] at pp. 19-550 to 20-553 (2007) (collecting authority). .

Furthermore, Rule 26(b)(1) goes on to state that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." MTS's requests certainly fall within the provision:  they are directed to the subject matter of this action, and there is good cause for the production of such information given that Hysitron avoided a stay of this action based on factual assertions it refuses to substantiate.

The issue of a stay of this action is no academic matter.  The USPTO has since granted MTS's request to reexamine both of the patents-in-suit, finding that MTS had raised a "substantial new question of patentability" affecting all the asserted claims of both patents.  (Spohn Decl. Exs. H & I.)  This means that the USPTO could find all of the asserted claims invalid, making all of the proceedings in this matter moot.  There is even a possibility that the USPTO could make that determination *after* the conclusion of this case, leaving the possibility of inconsistent determinations of that question.

Stays of proceedings are typical in these situations, given all the advantages of a stay pending reexamination of the patents in suit.  *See Card Tech. Corp. v. Datacard Corp.*, 2007 WL 551615, at *3-*4 (D. Minn. Feb. 21, 2007) (collecting case law); *VData, LLC v. Aetna, Inc.*, 2006 WL 3392889, at *6-*7 (D. Minn. Nov. 21, 2006) (same).  Given

this background, it is highly suspicious that Hysitron is fighting any scrutiny of the factual assertions it used to avoid a stay in these circumstances. The requested documents should be produced immediately so that the validity and accuracy of Hysitron's assertions can be examined.

## CONCLUSION

For the above-stated reasons, MTS respectfully requests that the Court grant its motion to compel complete discovery responses from Hysiton, as set forth in MTS's proposed order.

Dated: October 31, 2007    WINTHROP & WEINSTINE, P.A.


By: __/s Matthew D. Spohn_____
    David P. Pearson, #84712
    Matthew D. Spohn, #313567
    Kyle J. Kaiser, #0345106
    Brent A. Lorentz, #386865
Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402
Tel: (612) 604-6400
Fax: (612) 604-6800

*Attorneys for MTS Systems Corporation*

**Certification Of Good-Faith Attempt To Resolve Dispute**

Pursuant to L.R. 37.1, the above-signed certifies that before filing this motion, he repeatedly conferred in good faith with Todd Werner, opposing counsel, in an attempt to resolve this matter without Court action.

3454588v3