UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HYSITRON INCORPORATED,                                    CIVIL NO. 07-1533 (ADM/AJB)

PLAINTIFF,

                                                                                              ORDER ON DEFENDANT'S MOTION
V.                                                        TO COMPEL DISCOVERY

MTS SYSTEMS CORPORATION,

DEFENDANT.

      This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on Defendant's Motion to Compel Discovery Responses [Docket No. 52]. A hearing was held on December 10, 2007, in the United States Courthouse, 180 East Fifth Street, Saint Paul, MN 55101. Todd Werner, Esq., represented Plaintiff, Hysitron Incorporated ("Hysitron"). David Pearson, Esq., represented Defendant, MTS Systems Corporation ("MTS").

      Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that:

      For purposes of this discovery order, "patents-in-suit" shall include documents related to an indentation testing device with *in situ* imaging. "Patents-in-suit" shall not include documents concerning any scanned probe microscope apparatuses, micro-indentation apparatuses, surface imaging apparatuses, or multi-plate capacitor systems.

      Defendant's Motion to Compel Discovery Responses [Docket No. 52] is **granted in part, denied in part**, and **moot in part** as follows:

      1.    MTS' motions to compel Hysitron to answer **Document Request No. 5** therein

Dockets.Justia.com

seeking production of "[a]ll laboratory or technical notebooks or other working papers, notes or notebooks of Wayne Bonin and any other person assisting or working with Mr. Bonin, relating to scanned probe microscope apparatuses, microindentation hardness, surface imaging, and/or multi-place capacitor systems"; **Document Request No. 10** therein seeking production of "[a]ll documents and things relating to any work, research, tests, experiments or studies (whether complete, incomplete, or prematurely terminated) relating to any scanned probe microscope apparatuses, microindentation apparatuses, any surface imaging apparatuses, and/or any multi-plate capacitor systems"; and **Document Request No. 11** therein seeking production of "[a]ll documents and things relating to any domestic or foreign patents, patent prosecution histories, patent applications or efforts at preparing patent applications that relate to scanned probe microscope apparatuses, microindentation apparatuses, surface imaging apparatuses, and/or multi-plate capacitor systems" are **granted in part** and **denied in part**, as set forth herein.

MTS claims that Hysitron will only produce documents relating to the development of the inventions that it determines are claimed in the patents-in-suit. See Mem. 7 [Docket No. 54]. MTS maintains that documents relating to Hysitron's work in the field of technology (i.e. scanned probe microscopes, microindentation apparatuses, surface imaging apparatuses, and multi-plate capacitor systems) that are claimed in the patents-in-suit are also relevant and discoverable. Id. MTS' requested field comes directly from the titles of the patents-in-suit and Hysitron's own characterization of the products at issue. See Exs. A & B [Docket No. 1], each titled "Apparatus for Microindentation Hardness Testing And Surface Imaging Incorporating A Multi-Plate Capacitor System"(emphasis added); see also ¶ 7 [Docket Nos. 1 & 21] (discussing the products at issue being "indentation devices

with a scanned probe microscope apparatus")(emphasis added). With respect to Hysitron's timing objections to said requests, MTS offered to limit its request to the time period of 1990-96 (the latter being the date the earliest of the patents-in-suit was issued). See Mem. 7 [Docket No. 54].

Hysitron does not dispute that the information sought in these requests is relevant to the issue of validity "to the extent it concerns Hysitron's development of the claimed invention: indentation testing device with *in situ* imaging." See Mem. 8 [Docket No. 57]. The fact that the patent title and specifications mention indentation apparatuses, surface imaging apparatuses, and/or multi-plate capacitor systems does not render information regarding these apparatuses as relevant to this case. Id. The claims define the invention and the claims limit the scope of the invention to indentation testing devices having *in situ* capabilities. See, e.g., Funai Elec. Co., Ltd. v. Orion Electric Co., Ltd., 2002 WL 1808419 (denying motion to compel the production of documents concerning patentee's products outside the scope of the claims of the asserted patents); Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1111 (Fed. Cir. 2000); Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1312 (Fed. Cir. 1999)("...the purpose of the title is not to demarcate the precise boundaries of the claimed invention but rather to provide a useful reference tool for future classification purposes..."). Hysitron also argues that MTS' Request Nos. 5, 10, and 11 are overly broad because they do not contain a limitation as to time. See Mem. 9 [Docket No. 57]. Furthermore, Hysitron takes great issue with Request No. 11 in that it seeks documents related to patent applications, prosecution histories, etc. unrelated to the patents-in-suit. Hysitron asserts that this information is irrelevant and highly competitive, secret information that it should not be required to disclose to MTS, a direct competitor. See ICU Med., Inc. v. B. Braun Med., Inc., 224 F.R.D. 461, 462 (refusing to compel production of

3

patent applications even though the court deemed them relevant where parties were direct competitors).

The Court orders that Hysitron shall produce non-privileged documents relating to the development of the inventions claimed in the patents-in-suit between 1990 and 1996 responsive to **Document Request No. 5** and **10**. The Court further orders that Hysitron is not required to respond to **Document Request No. 11**.

2. MTS' motion to compel Hysitron to answer **Document Request No. 23** therein seeking production of "[a]ll documents and things relating to any license, contract or other agreement relating to any Hysitron scanned probe, microindentation and/or surface imaging product" is **granted in part** and **denied in part**, as set forth herein.

MTS put forth Document Request No. 23 because it contends that Hysitron refuses to clarify whether it is seeking lost profits, a reasonably royalty, or both with respect to damages. See Mem. 8 [Docket No. 54]. MTS claims that the requested documents are relevant to Hysitron's claim for a reasonable royalty, as "[c]ourts give weight to the licensing customs in the industry and actual licenses on comparable patents in determining both the reasonable royalty rate and the based for the reasonable royalty." Id. at 10. Additionally, MTS argues that Hysitron's agreement to only produce documents relating to licenses and similar agreements relating to its scanned probe microscopes is "unduly limited and would exclude broad categories of potentially responsive documents." Id. MTS also seeks documents relating to licenses for related technology, such as microindentation or surface imaging

products[1]. Id.

Hysitron claims that this request is overbroad in that the request expands beyond the patents-in-suit and seeks "documents relating to microindentation testing devices without *in* situ imaging and surface imaging products." See Mem. 11 [Docket No. 57]. To further this point, Hysitron states that even licenses on comparable patents are "rarely given decisive or even substantial effect due to the generally unique character of patented inventions and of the circumstances under which they are developed and exploited." Id. Additionally, Hysitron maintains that the Court should focus on licenses for the entire device, not licenses on the minor components of the device as MTS seeks. See Tr. 24:1-7 [Docket No. 68]. Any licenses concerning minor components to the larger invention would be irrelevant for purposes of damages analysis because those patents are completely different than the patent for the larger invention. Id. Hysitron does, however, agree to produce "all relevant, responsive documents, namely, licenses and assignments related to its scanned probe microscopes." See Mem. 10 [Docket No. 57]. Any other documents responsive to this request do not relate to any claims or defenses alleged in this lawsuit. Id.*[2]*

The Court orders that Hysitron shall produce non-privileged documents relating to any of its scanned probe microscopes responsive to **Document Request No. 23.**

---

[1] MTS maintains it is entitled to documents related to these additional products because the title of the patents-in-suit is "Apparatus for Microindentation Hardness Testing and Surface Imaging Incorporating a Multi-Plate Capacitor System." See U.S. Patent Nos. 5,553,486 & 6,026,677 (emphasis added).

[2] Counsel for Hysitron indicated at the December 10, 2007, hearing that it did not believe there were any licenses on the products in question (possibly one to the Government). See Tr. 22:8-10.

3. MTS' motions to compel Hysitron to answer **Document Request No. 34** therein seeking production of "[a]ll documents and things relating to any communications with third parties relating to the patents-in-suit or this lawsuit"; and **Document Request No. 35** therein seeking production of "[a]ll documents and things relating to any internal communications at Hysitron relating to the patents-in-suit or this lawsuit " are **granted in part** and **denied in part**, as set forth herein.

MTS claims that all communications related to the patents-in-suit are relevant to the invalidity or enforceability of the patents, as well as to alleged damages (i.e. lost profits or reasonably royalty). See Mem. 11 [Docket No. 54]. MTS interprets Hysitron's objection to this request as agreeing to produce only those communications regarding the patents-in-suit that it deems to be relevant to the validity or enforceability of the patents. Id. at 12. MTS, however, seeks production of all non-privileged communications regarding the patents-in-suit. Id.

Nevertheless, Hysitron has agreed to produce all relevant documents responsive to Document Request Nos. 34 and 35. Pursuant to Federal Rules of Civil Procedure 26(b)(1), parties may only obtain discovery of information relevant to the claims and defenses pled by the parties. Hysitron has agreed to produce communications concerning the lawsuit itself and the validity and enforceability of the patents. See Tr. 24:23-25[3]. According to Hysitron, any other communications concerning the patents would be irrelevant for purposes of this litigation and therefore amount to discovery "fishing"[4].

---

[3] At the December 10, 2007, hearing, MTS argued that Hysitron's agreed to response to these requests were too narrow because there could also be communications relating to transfer, sale, licensing, and other commercialization issues that are relevant to this case. See Tr. 11:22-25.

[4] See Upsher-Smith Labs., Inc. v. Mylan Labs., Inc., 944 F.Supp. 1411, 1444 (D. Minn. 1996)("[S]ome threshold showing of relevance must be made before parties are required to produce a

"[T]here's no reason to believe that [something is] relevant to the validity or enforceability or damages just by referencing the patent number," states Hysitron. See Tr. 26:10-13.

The Court orders that Hysitron shall produce non-privileged documents concerning any communications with third parties relating to the patents-in-suit from 1996 to the present responsive to **Document Request No. 34.** The Court further orders that Hysitron shall produce non-privileged documents concerning any internal communications at Hysitron relating to the patents-in-suit from 1996 to the present responsive to **Document Request No. 35.**

4. MTS' motion to compel Hysitron to answer **Document Request No. 47** therein seeking production of "[a]ll projections, forecasts, market share reports and forecasts, marketing acceptance documents, business plans, strategic plans, fiscal plans, marketing strategies and plans relating to the sale and anticipate sale of scanned probe microscope apparatuses, microindentation apparatuses, surface imaging apparatuses, and/or multi-plate capacitor systems " is **granted in part** and **denied in part**, as set forth herein.

MTS' request seeks plans, strategies, projections, and reports relating to Hysitron's sales of products in the field of technology[5] covered by the patents-in-suit. See Mem. 13-14 [Docket No. 54]. MTS argues that the requested documents are relevant to Hysitron's claims of lost profits because, "in order to prove such a claim, Hysitron must present a market analysis and demonstrate 'but for' MTS's

---

variety of information which does not reasonably bear upon the issues in the case.")(emphasis added).

[5] MTS claims the scope of the technology field is taken directly from the titles of the patents-in-suit, which includes "scanned probe microscope apparatuses, microindentation apparatuses, surface imaging apparatuses, and/or multi-plate capacitor systems." See Mem. 14 [Docket No. 54].

infringement, Hysitron would have made the sales made by MTS." Id. MTS claims that the documents requested are also relevant to Hysitron's claim for a reasonably royalty, where one of the factors considered is the state of development and commercialization of the patent's commercial embodiment. Id. Finally, MTS asserts that the requested documents are relevant to Hysitron's trademark infringement and related claims. See Mem. 15 [Docket No. 54]. MTS states:

> Documents reflecting marketing strategies, advertising strategies and plans, the nature and state of the market, product differentiation, etc., are all relevant to...the identity and characteristics of actual and potential purchasers of the products covered by these patents, how purchasers make decisions with respect to which competing product to purchase, [and] how Hysitron and its competitors market their products. Id.

Hysitron claims that MTS' request is redundant because it agreed to produce damages-related documents (e.g. lost profits) in response to a number of other MTS document requests. See Mem. 14 [Docket No. 57][6]. Furthermore, Hysitron argues that projections, forecasts, plans, and strategies are not relevant to lost profits analysis as a "but for" causation test. Id. at 15. However, Hysitron has agreed to produce market share reports. See Tr. 27:6-8.

Hysitron takes issue with MTS' contention that the requested information is also relevant to the reasonable royalty analysis. The reasonably royalty analysis involves a hypothetical negotiation between the parties that is conducted at the time infringement began. Wang Labs., Inc. v. Toshiba

---

[6] Hysitron agreed to produce documents sufficient to assess the sales, revenues, costs, and profits attributable to its commercial embodiments of the inventions claimed in the patents-in-suit in response to Documents Request Nos. 37, 40-46. Id. Additionally, Hysitron agreed to produce market share analyses from 1992 to the present concerning scanned probe microscope apparatuses in response to Document Request No. 48, as well as communications with all potential purchasers of its products in response to Document Request No. 56. Id. at 14-15.

Corp., 993 F.2d 858, 870 (Fed. Cir. 1993). Hysitron made its first sale of an indentation testing device with *in situ* imaging in 1995 and MTS' invention did not enter the marketplace until 2002. See Mem. 15 [Docket No. 57]. Thus, the hypothetical negotiation of a reasonable royalty between the parties would not occur until 2002 and Hysitron assets that MTS' request would therefore be overbroad because it seeks production of documents outside the scope of the 2002 time frame.[7]

Hysitron also maintains that the information MTS seeks from this request lacks any relevance to the trademark infringement issue. Hysitron has agreed to produce its advertisements, brochures, marketing materials, communications with all potential purchasers of its commercial embodiment of the patents-in-suit, etc. in response to Document Request Nos. 38, 56, 75-78, and 81. Id. at 16. They also agreed to produce documents in response to Document Request No. 2 concerning the distinctiveness, reputation, and recognition of the HYSITRON mark. Id. Hysitron argues that responses to those requests will provide MTS with discovery relevant to the trademark issues, not the projections, forecasts, business plans, etc. sought in Document Request No. 47. Id.

The Court orders that Hysitron shall produce market share reports responsive to **Document Request No. 47.**

5. MTS' motion to compel Hysitron to answer **Document Request No. 60** therein seeking production of "[a]ll minutes or notes from any Hysitron board of directors meetings or other management meetings since January 1, 1996, that refer or relate to MTS, the patents-in-suit, or this

---

[7] Hysitron also states that the market and sales information it has already agreed to produce would confirm that Hysitron had a fully developed and commercialized invention. Id.

9

lawsuit " is **granted in part** and **denied in part**, as set forth herein.

MTS seeks production of Hysitron's management notes referencing MTS "to help establish the nature of the competitive relationship between the parties, which is another part of the analysis of Hysitron's damage claim." See Mem. 15 [Docket No. 54]. MTS limits its request to minutes or notes from any Hysitron board of directors meetings or other management meetings since January 1, 1996. Id. at 16. MTS claims these documents are directly relevant to Hysitron's claims for a reasonable royalty[8] and lost profits[9].

Hysitron does not dispute MTS' argument that this request is relevant to it damages analysis. See Mem. 18 [Docket No. 57]. However, Hysitron does object to MTS' request as being overbroad. See Mem. 17 [Docket No. 57]. MTS and Hysitron sell many different competing products, some of which are not indentation devices. Id. If MTS request was granted, Hysitron would be required to disclose "very confidential, competitive information concerning products sold by MTS that are not involved in this lawsuit." Id. Therefore, Hysitron agrees to produce only those documents responsive to Document Request No. 60 that relate to the patents-in-suit[10].

The Court orders that Hysitron shall produce non-privileged documents relating to the patents-

---

[8] The reasonable royalty analysis considers the commercial relationship between the parties. See Mem. [Docket No. 54].

[9] MTS argues that the same commercial relationship consideration mentioned above is relevant to Hysitron's lost profits claim because it helps to determine whether sales made by MTS would otherwise have been made by Hysitron. Id.

[10] Hysitron also contends that this request is overbroad because it seeks documents since January 1, 1996, and MTS did not begin selling the products accused of infringement until roughly 2002. Id.

in-suit from 2002 to the present responsive to **Document Request No. 60.**

6. MTS' motions to compel Hysitron to **Document Request No. 95** therein seeking "[d]ocuments sufficient to show the annual revenues of Hysitron from 1992 to present"; **Document Request No. 96** therein seeking "[a]ll documents and things supporting the statements contained in Paragraph 16 of the June 12, 2007 Declaration of Thomas Wyrobek"; **Document Request No. 97** therein seeking "[a]ll documents and things supporting the statements contained in Paragraph 19 of the June 12, 2007 Declaration of Thomas Wyrobek"; and **Document Request No. 98** therein seeking "[a]ll documents and things supporting the statements contained in Paragraph 21 of the June 12, 2007 Declaration of Thomas Wyrobek" are **denied**, as set forth herein.

MTS doubts the veracity of the statements made by Mr. Wyrobek.[11] See Mem. 17 [Docket No. 54]. MTS claims that the factual basis for Mr. Wyrobek's statements is relevant to "the provisional remedy regarding MTS' defense that the patents-in-suit are invalid, in light of the USPTO's ongoing reexamination of the patents-in-suit." Id. at 18. MTS asserts that information regarding Hysitron's financials is relevant to its lost profits and reasonable royalty claims. Id. at 19. Furthermore, information regarding Hysitron's delay in filing suit against MTS would be relevant to the period for which Hysitron is entitled to claim damages. Id.

---

[11] By way of background, MTS requested that the Court stay this action pending reexamination by the USPTO. See Mem. 17 [Docket No. 54]. In opposing MTS' motion for a stay, Hysitron submitted the declaration of its president, Thomas Wyrobek, whereby he claimed that Hysitron was so financially weak that if MTS were allowed to continue its alleged infringement it would put Hysitron's financial future at serious risk. Id. Mr. Wyrobek also offered explanations of why Hysitron did not claim that MTS infringed the patents-in-suit earlier. Id. MTS was troubled by these statements in light of the fact that the Court relied upon these factual representations in denying MTS' motion to stay and thereafter sought documents that substantiated Mr. Wyrobek's statements. Id.

On the other side, Hysitron believes that MTS is attempting to re-raise the stay issue in the form of a motion to compel. <u>See</u> Mem. 18 [Docket No. 57]. Discovery is limited to information related to the claims and defenses pled by the parties and Hysitron claims that MTS is desperately trying to tie this request to the reasonable royalty and lost profits analysis. <u>Id.</u> at 19. As previously stated, Hysitron has agreed to produce documents to assist MTS in performing these analyses. <u>Id.</u> More importantly, however, Hysitron maintains that its overall financial condition (not its profitability on the accused products or the market for those products) is irrelevant for purposes of analyzing damages. <u>Id.</u>[12]

The Court orders that Hysitron is not required to respond to **Document Requests Nos. 95-98.**

7. MTS' motions to compel Hysitron to answer **Document Request Nos. 24-26** are **moot.** Pursuant to the December 10, 2007, hearing the parties advised the Court that these requests were no longer at issue.

Dated:   January 29, 2008

  s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

---

[12] Hysitron also argues that Requests 95-98 are also overbroad because they do not focus on financial conditions in 2002-the time MTS allegedly began infringing Hysitron's patents. <u>Id.</u>