IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

|  |  |  |
|---|---|---|
| HYSITRON INCORPORATED, ADM/AJB a Minnesota corporation, | ) ) ) | Civil Action No. 07 CV 1533 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| MTS SYSTEMS CORPORATION, a Minnesota corporation, | ) ) ) | |
| Defendant. | ) ) | |

---

## PLAINTIFF HYSITRON INCORPORATED
## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS

Allen W. Hinderaker #45287
Tong Wu #0288974
Brian Platt *pro hac vice*
MERCHANT & GOULD P.C.
80 South Eighth Street, #3200
Minneapolis, MN 55402-4131
Telephone No.: 612.332.5300
Facsimile No.: 612.332.9081

**ATTORNEYS FOR PLAINTIFF**
**HYSITRON INCORPORATED**

Plaintiff Hysitron Incorporated ("Hysitron") respectfully submits this memorandum of law supporting its Motion to Compel Documents from Defendant MTS Systems Corporation ("MTS").

## INTRODUCTION

In January of this year Hysitron served its Second Set of Requests for Production of Documents to Defendant.  (Declaration of Brian N. Platt ("Platt Decl.") ¶ 4.)  After seeking and receiving an extension, MTS served its responses to Hysitron's document requests on February 22, 2008.  (Id. Ex. 3.)  MTS' discovery responses did not include any substantive response for document requests 5 and 9-42.  (Id. Ex. 3.)

On March 19, MTS and Hysitron held a Rule 37 meet-and-confer telephone conference to resolve these discovery issues.  (Id. ¶ 5.)  In that conference, MTS agreed to identify which requests it contended were too broad, and to further identify requests for which it would provide a response if the request was narrowed.  (Id. ¶ 5.)  The parties held a second Rule 37 meet-and-confer telephone conference on March 27.  (Id. ¶ 6.)  At that conference, MTS agreed to provide responses for Requests for Production Nos. 11, 12, 14, and 15, on condition that the request be narrowed to documents "sufficient to show" instead of "all documents," as applied to MTS' accused products.  (Id. ¶ 6.)  Hysitron agreed to MTS' proposal to resolve those disputes without Court intervention. The attempt to resolve the remaining issues was unsuccessful, however, despite the parties' negotiations in good faith.  (Id. ¶ 6.)  MTS maintained its objection and refusal to provide documents responsive to documents responsive to requests 5, 9-10, 13, and 16-42.  (Id. ¶ 6.)  Pursuant to D. Minn. LR 37.1, Hysitron hereby certifies that the parties

1

have conferred in good faith and have been unable to resolve these matters without the Court's intervention.  (Id. ¶ 6.)

## **BACKGROUND**

Hysitron served its Second Set of Requests for Production of Documents to Defendant on January 4, 2008.  (Platt Decl. ¶ 4.)  Hysitron issued those requests in an effort uncover the full extent of MTS' infringement of Hysitron's patents and trademarks, and to better understand the extent of the damages Hysitron has suffered.

On February 22—the date MTS' discovery responses were due—MTS sent a letter to Hysitron stating that (a) it had unilaterally stopped using the Hysitron trademark; (b) in light of its unilateral cessation, it would now refuse to turn over relevant discovery; and (c) that MTS would move the Court to dismiss Hysitron's claims (without the benefit of discovery) and seek attorney's fees for its trouble.  (Id. Ex. 1.)  Now, while MTS continues to infringe both Hysitron's patents and its trademarks, it is simultaneously refusing to turn over key discovery relevant to both of those claims.  MTS fails to even allege that the documents sought are not relevant to Hysitron's pending claims.  (See id. Ex. 1.)[1]

Hysitron is now forced to bring this Motion to Compel because of MTS' refusal to provide documents in response to *thirty-five* of Hysitron's written requests for production.  Hysitron seeks documents relating to advertising, pricing, customers, and

---

[1] MTS' argument that the absence of "actual confusion" moots a claim of trademark infringement is flatly contradicted by 8th Circuit precedent: the Lanham Act protects Hysitron against the "***likelihood*** of confusion."  See, e.g., SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980) (emphasis added).

competitive relations: discoverable topics relevant in any patent infringement lawsuit. Hysitron also seeks documents relating to MTS' admitted use of the "Hysitron" mark in its advertising.  There is no justification for the refusal to provide documents.

More specifically, MTS has refused to provide documents in response to document requests 5, 9-10, 13, and 16-42, on the hollow promise to stop its acts of trademark infringement.  (Platt Decl. Ex. 3 at 2-3.)  In fact, MTS has <u>not</u> completely stopped using the "Hysitron" mark.  (Platt Decl. Ex. 2.)  More importantly, Hysitron's document requests are relevant to both its patent and trademark claims, <u>and</u>, its trademark claims – including its claim that this is an exceptional case under 35 U.S.C. § 1117(a) – remain pending.  MTS' promise to cease its acts of trademark infringement, even were it true, does not deprive the Court of jurisdiction, or deny Hysitron the right to an injunction along with an award of attorneys' fees and costs.

Hysitron asks the Court to compel MTS to provide full and complete discovery responses.  It further requests an award of attorneys' fees and costs in bringing this motion.  The failure to provide a substantive response to the document requests, while further demonstrating the arrogance of MTS, has no legal justification.

## ARGUMENT

Hysitron seeks the production of documents relating to advertising, marketing, customers, pricing, and the competitive environment surrounding nanomechanical test instrument sales.  Hysitron's requests are also directed toward acts of trademark infringement by MTS.  Most of Hysitron's requests are directed at and relate to issues that span both patent and trademark claims.

MTS refuses to provide responsive documents.  (<u>See</u> Platt Decl. Ex. 3 at 5-17.)  Its basis is a stated intention to stop infringing the "Hysitron" mark.  (<u>See id.</u> Ex. 1.)  MTS ignores the relevance of these requests to the patent claims.  Furthermore, under the Federal Rules of Civil Procedure a promise to cease infringing conduct is not a basis for refusing to provide discovery.  There is no justification for MTS' position.

## I.     THE REFUSAL TO PROVIDE RESPONSES FOR 35 REQUESTS.

### A.     Patent Infringement.

Hysitron is entitled to discovery related to patent infringement.  As part of Hysitron's patent infringement case, Hysitron will necessarily prove its entitlement to lost profits damages.  Lost profits will include lost sales to MTS, price erosion for downward market pressure due to MTS' infringing devices, and decreased productivity due to competition with MTS.

> [T]he general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement.  To recover lost profits damages, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer.

<u>See</u> <u>Rite-Hite Corp. v. Kelley Co.</u>, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (internal citations omitted).  Many of the facts necessary to establish Hysitron's lost profits damages are in the possession and control of MTS.  Accordingly, Hysitron seeks and is entitled to discovery.

MTS' sales information is relevant to Hysitron's claim for lost profits: that MTS stole sales from Hysitron with infringing products.  This relevant information includes

documents regarding pricing, advertising, marketing, market structure, distribution

channels, competition, market share, and consumer preference for accused products.  All

of these facts are relevant to Hysitron's patent damages, and MTS is required under the

Federal Rules to provide relevant discovery.

The issue at trial is whether Hysitron would have made MTS' sales "but for" the

infringement.  See Rite-Hite, 56 F.3d at 1545.  It is well established that "[r]eduction of

prices, and consequent loss of profits, enforced by infringing competition, is a proper

ground for awarding of damages."  Yale Lock Mfg. Co. v. Sargent, 117 U.S. 536, 551

(1886).  "The only question is as to the character and sufficiency of the evidence in the

particular case."  Id.  Hysitron is entitled to discovery so that the evidence can be

presented at trial.

The preferences of customers for the accused products are directly relevant to

patent damages: whether "consumers specifically want a device with [the claimed]

advantages" bears on whether Hysitron is entitled to lost profits for sales by MTS.

Slimfold Manufacturing Co. v. Kinkead Industries, 932 F.2d 1453, 1458 (Fed. Cir. 1991).

Where customers have expressed a preference for Hysitron devices, that will assist the

Court in evaluating whether an MTS product sale should be allocated to Hysitron.  See

id.  The nature of the parties' competitive relationship, whether it is direct and whether it

is in the same market segment, all properly relate to the measure of Hysitron's lost

profits.

Put simply, in considering damages "adequate to compensate" for the

infringement, the Court considers the totality of the competitive circumstances.  See

<u>TWM Mfg. Co., Inc. v. Dura Corp.</u>, 789 F.2d 895, 902 (Fed. Cir. 1986). In <u>TWM</u>, for example, a lost profits award included price erosion, lost sales, and other "special discounts" that resulted from a marketplace that included infringing competition. <u>Id.</u> In <u>Lam, Inc. v. Johns-Manville Corp.</u>, 718 F.2d 1056, 1067-68 (Fed. Cir. 1983), lost profits included lost sales, price erosion, and reduced sales growth. Hysitron is entitled to establish each of these fact patterns: the "totality of the circumstances" surrounding its competitive relationship with MTS. In view of this clear precedent, MTS' refusal to provide sales, advertising, customer, and competitive information is manifestly improper.

**B.    Trademark Infringement.**

**1.    Pending trademark claims.**

Hysitron is entitled to discovery related to trademark infringement. The Federal Rules do not provide for cheat and retreat: Hysitron's claims are <u>pending</u> in this litigation, and MTS must respond. The refusal to produce documents is unjustified and without merit. MTS' proffered intention to stop infringing provides no justification for the refusal to provide discovery. Indeed, if MTS' position were the law, a defendant faced with the prospect of producing a smoking-gun document would just promise "never to do it again." That is not the law. It is well settled that a defendant may not deprive the Court of jurisdiction merely by ceasing its illegal conduct.

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. A controversy may remain to be settled in such circumstances, e.g., a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. For to say that the

case has become moot means that the defendant is entitled to a
dismissal as a matter of right.  The courts have rightly refused to
grant defendants such a powerful weapon against public law
enforcement.

United States v. W. T. Grant Co., 345 U.S. 629, 632 (1953) (internal citations omitted).

"It is well-settled that 'a defendant's voluntary cessation of a challenged practice
does not deprive a federal court of its power to determine the legality of the practice.'"
See Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006) (quoting City of Mesquite v.
Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)); accord Young v. Hayes, 218 F.3d 850,
852 (8th Cir. 2000).  "If it did, the courts would be compelled to allow the defendant to
return to its old practices without fear of reprisal."  Lankford, 451 F.3d at 503 (citing
W.T. Grant Co., 345 U.S. at 632).  The defendant faces a heavy burden of showing that
"the challenged conduct cannot reasonably be expected to start up again."  Id. (quoting
United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)).  Thus,
even if MTS properly discontinued its infringement of the "Hysitron" mark, the
trademark infringement claims remain pending and Hysitron will be entitled to a
permanent injunction.

Hysitron will be entitled to a permanent injunction because MTS' use of the
"Hysitron" mark causes a likelihood of confusion.  The "Hysitron" mark is inherently
distinctive and serves a singular purpose: to identify the source of Plaintiff's goods.  See,
e.g., Two Pesos v. Taco Cabana, 505 U.S. 763, 769 (1992).  "Hysitron" has no meaning
outside the context of Plaintiff's goods, and MTS' decision to use the "Hysitron" mark is

likely to cause confusion.  Because "Hysitron" serves only to identify Plaintiff's goods, MTS' use of the mark can hardly be claimed as accidental or inadvertent.

In the proof of likely confusion, proof of intent "is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [Hysitron,] that fact alone may be sufficient to justify the inference that there is confusing similarity."  See Am. Rice, Inc. v. Producers Rice Mill, Inc., ___ F.3d ___, 2008 U.S. App. LEXIS 3817, *20 (5th Cir. February 22, 2008) (internal citations and quotations omitted).  The intent to trade on the *reputation* of Hysitron provides this Court with strong evidence of a likelihood of confusion.  See id.  Other factors in evaluating the likelihood of confusion include (1) strength of the mark; (2) similarity of the marks; (3) the degree of competition; (4) the alleged infringer's intent; (5) actual confusion; and (6) product type, cost, and the conditions of purchase.  See Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999).  Evidence relevant to these factors is discoverable.

### 2.    Plain language of Rule 26(b)(1) and 37.

Under Rule 26(b)(1), Hysitron is entitled to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . ."  Fed. R. Civ. P. 26(b)(1).  Information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Doubt regarding whether particular discovery is relevant should be decided in favor of relevancy and allowing the discovery sought.  See, e.g., Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024 (1986).  "The spirit of Rule 26(a) . . . is that discovery be self-effectuating, without need to resort to the court, and that its scope be

liberal, extending to all matters reasonably calculated to lead to admissible evidence."
Kramer v. Boeing Co., 126 F.R.D. 690, 692 (D. Minn. 1989).  The discovery rules permit
the court to compel discovery where a party has shown that the requested discovery is
relevant and should be produced.  Fed. R. Civ. P. 26(b)(1), 37.

Nowhere has MTS has claimed that the discovery sought is irrelevant to the issues
in this case.  (See Platt Decl. Exs. 1, 3.)  MTS thus has an obligation to provide complete
responses.  Hysitron's claims are pending, and the Federal Rules simply do not
contemplate a unilateral determination by a party to refuse discovery upon announcement
of an intention to discontinue a course of illegal conduct.

### C.    Exceptional Case.

In addition to Hysitron's claims for patent and trademark infringement, all of the
requested documents are also relevant to Hysitron's assertion that this is an exceptional
case under 15 U.S.C. § 1117(a).  MTS' decision to use "Hysitron" for advertising was a
deliberate and willful choice entitling Hysitron to attorneys' fees and costs.

Generally, trademark infringement is "exceptional" when "infringement is
malicious, fraudulent, deliberate or willful."  United Phosphorus, Ltd. v. Midland
Fumigant, Inc., 205 F.3d 1219, 1232 (10th Cir. 2000).  "[A] finding of bad faith or fraud
is not a necessary precondition."  Tamko Roofing Products, Inc. v. Ideal Roofing Co.,
Ltd., 282 F.3d 23, 32 (1st Cir. 2002).  "Willfulness short of bad faith or fraud will suffice
when equitable considerations justify an award and the district court supportably finds the
case exceptional."  Id.  Hysitron's claim of an exceptional case is based on MTS'

deliberate and intentional usage of the "Hysitron" mark for sponsored link advertising. Use of the "Hysitron" mark to sell MTS products is not accidental.

MTS' intent is relevant to the likelihood of confusion.  See Squirtco, 628 F.2d at 1090-91; Luigino's, Inc., 170 F.3d at 830.  The law will *presume* a likelihood of confusion where a mark is copied "with the intent to derive a benefit from the reputation of another."  Esercizio v. Roberts, 944 F.2d 1235, 1243 (6th Cir. 1991); accord SquirtCo, 628 F.2d at 1091 ("Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion . . . .").  The intent to trade on the *reputation* of Hysitron provides this Court with strong evidence of willful and deliberate conduct.  See Am. Rice, Inc., 2008 U.S. App. LEXIS 3817, *20.

MTS' unilateral decision not to produce these documents is without any legal justification.  There should be no dispute that documents relating to trademark infringement and patent infringement are relevant to pending claims in this case.  The Court should order MTS to immediately produce the responsive documents identified in the requests below.

## II.    HYSITRON'S REQUESTS FOR PRODUCTION

### A.    Trademark Searches or Investigations.

### REQUEST NO. 5:

All Documents referring or relating to any formal or informal trademark searches or investigations that relate to Plaintiff's HYSITRON mark.

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 10:**

All documents relating to any studies, searches, investigations, focus groups, public opinion polls, reports, market research, surveys, or analysis regarding Plaintiff's HYSITRON mark.

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 5.) Hysitron's request for documents relating to MTS' "formal or informal trademark searches," and "studies . . ." relating to the Hysitron mark is relevant to Hysitron's pending trademark claims.  Searches, studies, and surveys may be relied upon to determine whether particular actions are likely to result in confusion.  See, e.g., AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 353-54 (9th Cir. 1979); Luigino's, Inc., 170 F.3d at 829 (noting consideration of survey information on the question of likelihood of confusion).  To the extent MTS has responsive documents, there is no excuse for the failure to produce those documents.  The facts contained in responsive documents would be relevant to whether MTS' use of the "Hysitron" mark to sell MTS products causes a likelihood of confusion.  If responsive documents identified Hysitron as a market leader, or chief competitor, those documents would be relevant in the trademark context.

Any documents relating to searches or studies would also be relevant to Hysitron's claim that this is an exceptional case under 15 U.S.C. § 1117(a). Willful or deliberate infringement supports a finding that this case is exceptional. Evidence that MTS acted in disregard of knowledge relevant to confusion would similarly be relevant to the Court's inquiry. MTS should be ordered to immediately provide responsive documents.

These documents are also relevant to Hysitron's claims for patent infringement. The Court must consider the "totality of the circumstances," which includes the competition in the same market segment. See, e.g., Bic Leisure Prods., Inc. v. Windsurfing Int'l Corp., 1 F.3d 1214, 1218 (Fed. Cir. 1993). Hysitron must establish competition with MTS in the same market segment; as such, Hysitron is entitled to discovery of information relating to competition between the parties. Trademark searches, studies, investigations, polls, and research are all relevant to the parties' competitive relationship. Responsive documents will show that MTS is a direct competitor of Hysitron in the relevant market segment. Such a showing supports Hysitron's entitlement to the full measure of lost profits damages. See, e.g., Lam, 718 F.2d at 1067-68 (holding that lost profits may include lost sales, price erosion, and reduced sales growth).

MTS should be ordered to immediately provide complete responses to these requests that are relevant to both the patent and trademark claims.

### B.      Channels of Trade.

### REQUEST NO. 9

All Documents relating to descriptions of the normal channels of trade for distribution of Defendant's nanomechanical test instruments and related services.

### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 6.) Documents relating to "the normal channels of trade for distribution" of MTS' products are relevant to the patent claims under Bic Leisure.  1 F.3d 1214.  Lost profits may be limited by the Court to infringing activities occurring within the same market segment. See id. at 1218.  While the parties likely will agree that MTS and Hysitron compete in the same market segment, Hysitron is entitled to the discovery and is entitled to prove its case of lost profits.  MTS should be ordered to immediately provide complete responses.

In addition, the normal channels of trade for distribution are akin to "marketing channels," relevant to the Court's likelihood of confusion analysis.  Under Sleekcraft, convergent "marketing channels" increase the likelihood of confusion.  599 F.2d at 353-54; accord Luigino's, Inc., 170 F.3d at 830 (holding that a factor to be considered was the degree of competition between the products).  Hysitron's pending trademark claims will be considered with regard to "normal channels of trade," making this request eminently

relevant to a likelihood of confusion analysis.  There is no basis for MTS' refusal to produce these documents.

Lastly, Hysitron's claim that this is an exceptional case under 15 U.S.C. § 1117(a) is pending.  Evidence of the normal channels for trade and distribution of MTS products bears on intent and willfulness.  Evidence that MTS *intended* to improperly redirect Hysitron customers through use of the "Hysitron" mark (to sell MTS products) would bear on willfulness.  Channels of distribution and related documents are relevant to whether this is an exceptional case.  MTS should be ordered to immediately provide responsive documents.

### C.    Target Market for Misuse of the "Hysitron" Mark.

### REQUEST NO. 13:

Documents sufficient to identify the market Defendant intends to target based on its marketing, promoting, and advertising using the term "hysitron."

### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 7-8.) Documents regarding MTS' target market and customers are explicitly relevant to patent damages.  Under the holding of Bic Leisure, lost profits can be obtained where infringing products compete within the same market segment.  1 F.3d at 1218.  The refusal to

provide documents bearing directly on Hysitron's ability to prove its lost profits damages is improper. MTS should be ordered to immediately provide complete responses.

The target market for MTS' products is also relevant in the trademark context, with regard to consumer confusion. Under Sleekcraft, convergent "marketing channels" are considered in evaluating a likelihood of confusion. 599 F.2d at 353-54; see also Luigino's, Inc., 170 F.3d at 830 (holding that a factor to be considered was the degree of competition between the products). Again, the refusal to provide relevant documents is manifestly improper.

Lastly, the target customers and market bear on intent, willfulness, and whether this is an exceptional case. Just as nefarious intent raises an inference of a likelihood of confusion, SquirtCo, 628 F.2d at 1091, the "market" sought by MTS (through its use of the "Hysitron" mark) will also bear on whether MTS had an improper motive for usurping customers searching for "Hysitron." A document detailing plans to steal Hysitron customers, for example, would be relevant to motive and require production under the Rules.

Responsive documents track Hysitron's theme of this case: MTS traded on the "Hysitron" mark to sell infringing products to Hysitron customers. MTS should be ordered to immediately provide responsive documents.

### D.   Customer Purchasing Decisions.

### REQUEST NO. 16:

All documents relating to the manner in which Defendant's customers or prospective customers come to the decision to purchase Defendant's nanomechanical test instruments, including, but not limited to,

documents identifying the types of people who made these decisions, their job responsibilities, and the procedures and basis under which they made these decisions.

### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 8-9.)

Documents relating to MTS' purchasers, customers, and prospective customers relate directly to whether use of the "Hysitron" mark by MTS causes a "likelihood of confusion."  It further bears on willful, deliberate conduct and the question of intent. Buyer awareness (i.e., consumer care and sophistication) is considered when evaluating whether a course of conduct causes a likelihood of confusion.  Sleekcraft, 599 F.2d at 353-54; accord Luigino's, Inc., 170 F.3d at 832-33 (". . . the court must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods.").

Buyer awareness is also relevant to whether this is an exceptional case under 15 U.S.C. § 1117(a).  If MTS intended to take advantage of quick-click purchasers misdirected to www.mtsnano.com, a case for likelihood of confusion would be established.  Responsive documents will inform the Court regarding MTS' intent.  MTS should be ordered to provide responsive documents.

E.   **Use of the "Hysitron" Mark.**

**REQUEST NO. 17:**

All documents relating to Defendant's actual marketing, promotional, or advertising efforts or activities that use, incorporate, or are generated by Plaintiff's HYSITRON Mark or derivatives thereof.

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 9.)

MTS' use of the "Hysitron" mark forms the basis for Hysitron's trademark claim.  There is no proper basis for refusing Hysitron access to this factual discovery: it informs every aspect of the claim.  In addition, use of the Hysitron mark is relevant to whether this case is exceptional.  The facts and circumstances surrounding MTS' use of the "Hysitron" mark will indisputably be relevant to the Court's evaluation of the trademark claim and whether this is an exceptional case.

MTS' advertising of its infringing products—even absent the trademark infringement—is further relevant in the context of patent damages.  Advertising, marketing, and sales are part of the "totality of the circumstances" considered by the Court in evaluating lost profits, price erosion, and other resulting damages.  See TWM Mfg. Co., 789 F.2d at 902.  Extensive advertising may show that MTS was forced to discount its patented products in order to compete with a deceptively marketed infringing product.  See id.  Alternatively, website advertising of products in the same market

segment will establish another element in Hysitron's entitlement to lost profits damages.

See Bic Leisure, 1 F.3d at 1218 (holding lost profits not appropriate where infringing

products are not sufficiently similar to compete in the same market segment).

Advertising is critical in this case, and relevant to Hysitron's claims.  MTS' failure to

respond in discovery is improper.  MTS should be ordered to provide responsive

documents.

### F.    Consumer Research.

### REQUEST NO. 18:

All documents relating to any consumer research performed in connection with Plaintiff's HYSITRON mark, including, but not limited to, any consumer research to determine whether or not there is a likelihood of consumer confusion caused by Defendant's use of Plaintiff's HYSITRON mark.

### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 9.)

Consumer research performed in connection with Plaintiff's HYSITRON mark is clearly

relevant to the "likelihood of confusion" caused by MTS.   Did research reveal that

customers were actually deceived, or likely to be misled?  The characteristics of

consumers are important in evaluating the likelihood of confusion.  Sleekcraft, 599 F.2d

at 353-54; see also Luigino's, Inc., 170 F.3d at 832-33.  Consumer research also bears on

intent, the issue of willful infringement, and whether this is an exceptional case.  MTS

should be ordered to produce responsive documents.

### G.    Allegations against Hysitron.

### REQUEST NO. 19:

All documents relating to Defendant's Request for Admission No. 1 that "at one time, a website owned or controlled by [Plaintiff] contained the term 'MTS.'"

#### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

### REQUEST NO. 20:

All documents relating to Defendant's Request for Admission No. 2 that "at one time, a website owned or controlled by [Plaintiff] contained the term 'MTS' in the same color as the web page's background."

#### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

### REQUEST NO. 21:

All documents relating to Defendant's Request for Admission No. 3 that "at one time, a website owned or controlled by [Plaintiff] contained the term 'MTS' in the same color as the web page's background, such that a search for 'MTS' would reveal [Plaintiff's] website."

#### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome,

vague, ambiguous, and not reasonably calculated to lead to the
discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 9-10.)

These document requests are responsive to an allegation by MTS that Hysitron's

trademark claims are barred by the doctrine of unclean hands.  See Am. Answer ¶ 77

[Docket No. 41].  Hysitron is entitled to discovery of the facts, evidence, and documents

surrounding MTS' affirmative defenses.  MTS should be ordered to provide responsive

documents.

### H.      Third Party Advertising.

### REQUEST NO. 22:

All documents that relate to Defendant's advertising with search
engine and third party websites, including but not limited to Google.com
and its affiliates, Mapquest.com, AOL.com, Yahoo.com, Info.com,
IXquick.com, Netscape.com, PepeSearch.com, Wondir.com,
Vivisimo.com, Webcrawler.com, About.com, Ask.com, Dogpile.com,
Hotbot.com, Lycos.com, Mamma.com, IWON.com, Aeiwi.com,
Excite.com, Gimenei.com, Sputtr.com, Nanovip.com,
macraesbluebook.com, Azonano.com, Stormingmedia.us, and Clusty.com
(hereinafter "Third Party Websites" (this definition is not limited to the
examples provided)).

### OBJECTION:

See General Objection No. 10.  Defendant objects to this
Request on the grounds it is overly broad, unduly burdensome,
vague, ambiguous, and not reasonably calculated to lead to the
discovery of admissible evidence.

## REQUEST NO. 23:

All Documents relating to contracts, agreements, or other understandings, written and oral, between Defendant and any search engine or third party website concerning advertising and search engine results, including but not limited to Defendant's use of the term "hysitron" in connection with keyword advertising with Third Party Websites.

### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 24:

All documents that relate to the manner in which Defendant's advertisements and search results appears on Third Party Websites.

### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 25:

All Documents sufficient to determine dates on which Defendant placed advertising on Third Party Websites, including but not limited to advertising that related in any way to the term "hysitron."

### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 26:

All Documents sufficient to determine Defendant's target market via Third Party Websites advertising, including but not limited to Defendant's selection of a geographic location in connection with the distribution of advertisements.

### OBJECTION:

See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 27:

All Documents relating to correspondence with Third Party Websites regarding Defendant's advertising on those Third Party Websites.

### OBJECTION:

See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 28:

All documents sufficient to identify the keywords submitted to Third Party Websites in connection with Defendant's advertising with those Third Party Websites.

### OBJECTION:

See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 29:

All documents that relate to statistics provided by Third Party Websites regarding Defendant's advertising with those Third Party

Websites, including but not limited to the number of times the Third Party Websites served an advertisement and the number of visitors who clicked on Defendant's advertisement that was generated from the "hysitron" mark.

**OBJECTION:**

See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 30:**

All documents that relate to statistics maintained by Defendant in connection with Defendant's advertising on Third Party Websites.

**OBJECTION:**

See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 31:**

All Documents from which Plaintiff can determine the amount of money Defendant has expended on advertising with Third Party Websites, including but not limited to advertising using the term "hysitron."

**OBJECTION:**

See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 32:**

All Documents from which Plaintiff can determine the amount of money which Defendant plans to expend on advertising with Third Party Websites, including but not limited to advertising using the term "hysitron."

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 33:**

All documents that relate to Defendant's decision to use the term "hysitron" in connection with keyword advertising on Third Party Websites.

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response to any request beyond its objection.  (Platt Decl. Ex. 3 at 10-14.)  Third party advertising and MTS' use of the "Hysitron" mark to advertise MTS' products is relevant in the patent and trademark contexts.  Advertising, marketing, and sales are part of the "totality" of the circumstances considered by the Court in evaluating lost profits.  Advertising may be shown to have caused price erosion, forcing discounts in Hysitron products as a result of competition from infringing products.  See TWM Mfg. Co., 789 F.2d at 902.  Alternatively, third party website advertising using the "Hysitron" mark is factual evidence that sales by MTS would have gone to Hysitron "but for" MTS' infringement.  See Bic Leisure, 1 F.3d at 1218 (holding lost profits not appropriate where infringing products are not sufficiently similar to compete in the same market segment).

In addition, MTS' use of "Hysitron" is relevant to Hysitron's pending trademark claims.  Indeed, MTS' use of the "Hysitron" mark to sell MTS' infringing products is the basis for Hysitron's trademark claims.  The intentional use of the mark also supports Hysitron's claim that this case is exceptional.  MTS' intentionally chose to use the Hysitron mark to sell its own products.  Hysitron is thus entitled to relevant documents and MTS should be ordered to produce relevant documents.

## I.     Website Marketing.

### REQUEST NO. 34:

All documents that relate to Defendant's advertising, promoting, and marketing of its website mtsnano.com.

### OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

### REQUEST NO. 35:

All documents that relate to Defendant's usage statistics for its website mtsnano.com from one year prior to the first use of the term "hysitron" in connection with search engine advertising, including but not limited to the following:

- Server log files
- Yearly page request reports
- Monthly page request reports
- Weekly page request reports
- Daily page request reports
- Host reports (indicating the host name of the visitors)
- Referring URL reports
- Referring site reports
- Search query reports

- Search word reports

## OBJECTION:

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 14-15.) Advertising, promotion, and marketing of the mtsnano.com website are part of the "totality of circumstances" considered by the Court in evaluating damages "adequate to compensate" Hysitron for MTS' infringement.  See TWM Mfg. Co., 789 F.2d at 902 ("in determining an award 'adequate to compensate' . . . there must be room to take into account the totality of the circumstances.").  Sales or website traffic trends may provide evidence of a change in MTS' website traffic corresponding to a reduction in Hysitron's profits due to infringing sales and deceptive marking.  These factors may combine to support an award of lost profits.  Lam, 718 F.2d at 1067-68.

Website advertising and usage statistics are objective evidence of market presence and sales activities; these objective facts may establish MTS' increased involvement in the industry at a time when Hysitron was experiencing downward price pressure.  Web activities and usage statistics are also directly relevant to Hysitron's trademark claims, which assert the improper use of the "Hysitron" mark to benefit MTS' website.  All of these facts are relevant to Hysitron's patent and trademark claims.  MTS should be ordered to provide responsive documents.

**J.      Purchasing Customers.**

**REQUEST NO. 36:**

All documents that show the degree of care Defendant's customers exercise in purchasing nanomechanical instruments.

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 37:**

All documents that show the level of sophistication of Defendant's customers that purchase nanomechanical test instruments.

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 15.)

MTS' customers and the "degree of care" exercised in purchasing, or the customers'

"level of sophistication," bear directly on the Court's determination of whether MTS'

actions result in a "likelihood of confusion."  It is further relevant to willful or deliberate

actions, and whether this case is exceptional.  Hysitron seeks documents that are closely

related to MTS' intent.  If, for example, a document showed an active plan to deceive an

unsophisticated customer, or class of consumers, that information would bear directly on

whether MTS' use of the "Hysitron" mark is likely to confuse consumers, and

willfulness.  Alternatively, mere commentary on the effectiveness of misusing the

"Hysitron" mark is relevant to willfulness and likelihood of confusion.  Should

responsive documents exist, they should be produced.

Consumer care and sophistication are a further important factor in determining

whether there is a likelihood of confusion, even where expensive goods are involved.

Sleekcraft, 599 F.2d at 353-54; accord Omega Importing Corp. v. Petri-Kine Camera Co.,

451 F.2d 1190, 1195 (2d Cir 1971).  Care and sophistication are relevant to whether this

case is exceptional under 15 U.S.C. § 1117(a).  MTS should be ordered to provide

responsive documents.

### K.    Pricing.

### REQUEST NO. 38:

> All documents that show the price charged to consumers of
> Defendant's nanomechanical test instruments.

### OBJECTION:

> See General Objection No. 10.  Defendant objects to this
> Request on the grounds it is overly broad, unduly burdensome,
> vague, ambiguous, and not reasonably calculated to lead to the
> discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 15-16.)

The failure to provide pricing information is manifestly improper; there is no credible

argument that Hysitron is not entitled to documents showing the price charged for MTS'

infringing products.  Pricing information for MTS' nanomechanical test instruments is

relevant in establishing Hysitron's lost profits associated with infringement.  For

example, in TWM Mfg. Co., the Federal Circuit gave special consideration to the steps

taken by a small patent holder to compete with a large infringer.  789 F.2d at 902.  The

panel noted that "in determining an award 'adequate to compensate' [under] 35 USC § 284, there must be room to take into account the totality of the circumstances."  <u>Id.</u>  The damages award included discounts given by the patent holder of $100 per sale, in order to compete, plus additional lost profits of $100 for each infringing sale, as well as other "special discounts."  <u>Id.</u>

In <u>Lam</u>, the Federal Circuit approved a lost profits damages award measured by lost sales, reduced prices (i.e., price erosion), and reduced sales growth due to sales pressure is attributable to competition from infringing devices.  <u>Lam</u>, 718 F.2d at 1067-68.  The Federal Circuit has been explicit: the totality of the circumstances surrounding infringing sales are relevant, and thus discoverable.

For this Court to adequately consider the measure of lost profits damages, MTS must comply with its discovery obligations or face an evidentiary sanction.  Pricing information is indisputably relevant to the measure of patent damages.  There being no conceivable justification for refusing to produce pricing information, MTS should be ordered to provide responsive documents.

### L.     Enforcement of Trademarks.

### <u>REQUEST NO. 39:</u>

All Documents relating to Defendant's enforcement of its marks against third parties who use Defendant's trademark in connection with keyword advertising.

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 40:**

All Documents relating to Defendant's enforcement of its marks against third parties who use Defendant's trademark in connection with metatags.

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 41:**

All Documents relating to Defendant's enforcement of its marks against third parties who use Defendant's trademark in connection with organic search marketing.  For the purpose of this Request, "organic search marketing" is defined as "obtaining results in a search engine that are not sponsored."

**OBJECTION:**

See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 16-17.)

Documents regarding MTS enforcement of its own trademark rights will inform the

Court regarding MTS' sophistication, and willfulness, in using the "Hysitron" mark to

sell its products.  In addition, MTS' intent is relevant to likelihood of confusion.

Squirtco, 628 F.2d at 1091.

A likelihood of confusion will normally be presumed where a mark is copied

"with the intent to derive a benefit from the *reputation* of another."  Esercizio, 944 F.2d

at 1243 (emphasis added); SquirtCo, 628 F.2d at 1091.  Evidence relating to MTS'

enforcement of its own marks is probative of MTS' intent in deliberately choosing the

"Hysitron" mark for advertising.  Proof that MTS aggressively enforced its own

trademark rights, for example, would provide strong objective evidence of willfulness,

knowledge, and intent.  All of these facts are relevant to Hysitron's trademark claims and

right to an injunction, and to Hysitron's claim that this is an exceptional case under 15

U.S.C. § 1117(a).  Because these facts are relevant to Hysitron's pending trademark

claims, and claim that this case is exceptional, MTS should be ordered to provide

responsive documents.

### M.    Website Expansion Plans.

### REQUEST NO. 42:

All Documents relating to any plans to expand the present use of
keyword advertising to any other search engine or third party website.

### OBJECTION:

See General Objection No. 10.  Defendant objects to this
Request on the grounds it is overly broad, unduly burdensome,
vague, ambiguous, and not reasonably calculated to lead to the
discovery of admissible evidence.

MTS fails to provide a response beyond its objection.  (Platt Decl. Ex. 3 at 17.)

MTS' plans to expand its keyword advertising are relevant to Hysitron's trademark

claims.  Keyword advertising is central to Hysitron's trademark related claims and MTS' expansion plans may help Hysitron prove the effectiveness of MTS' misuse of the "Hysitron" mark.  Moreover, MTS' plans to expand keyword advertising are also relevant to Hysitron's claim for lost profits.  Email, documents, and communications relating to expansion plans for keyword advertising might, for example, discuss the success or failure of MTS' attempts to trade on the "Hysitron" mark, and the competitive relationship between MTS and Hysitron.  All of these facts are relevant in contemplating damages, and MTS should be ordered to provide responsive documents.

## III.   HYSITRON IS ENTITLED TO ITS REASONABLE ATTORNEYS' FEES AND COSTS UNDER FED. R. CIV. P. 37(a)(5)(A).

In accordance with Rule 37(a)(5), Hysitron respectfully requests its reasonable expenses incurred in making this motion to compel, including attorneys' fees.  As set forth in the previous section, MTS' unilateral decision to refuse to provide responsive documents for 35 relevant requests for production was not substantially justified under the Federal Rules of Civil Procedure or relevant precedent.  MTS failed to obtain a protective order; rather, it simply refused to answer the discovery.  As such, Hysitron was forced to bring the instant motion at substantial expense.  The Court should therefore award Hysitron its reasonable expenses, including attorneys' fees, in accordance with Rule 37(a)(5).

## <u>CONCLUSION</u>

For the reasons stated above, Hysitron respectfully urges the Court to Order MTS to produce documents responsive to these requests.  Hysitron further respectfully requests its attorneys' fees and costs associated with this motion, in accordance with Fed. R. Civ. P. 37(a)(5)(A) because MTS' position in refusing to provide a substantive response to 35 requests for production was not substantially justified.


Dated:  April 1, 2008

By: s/ Brian N. Platt
Allen W. Hinderaker #45287
Tong Wu #0288974
Brian N. Platt *pro hac vice*
MERCHANT & GOULD P.C.
80 South Eighth Street, #3200
Minneapolis, MN 55402-4131
Telephone No.: 612.332.5300
Facsimile No.: 612.332.9081

**ATTORNEYS FOR PLAINTIFF
HYSITRON INCORPORATED**