UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| | ) | |
| HYSITRON INCORPORATED, | ) | Civil No. 07-cv-01533 (ADM/AJB) |
| a Minnesota corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DEFENDANT'S** |
| | ) | **MEMORANDUM OF LAW IN** |
| MTS SYSTEMS CORPORATION, | ) | **SUPPORT OF MOTION FOR** |
| a Minnesota corporation, | ) | **PROTECTIVE ORDER, OR IN** |
| | ) | **THE ALTERNATIVE, TO STAY** |
| Defendant. | ) | **DISCOVERY PENDING** |
| | ) | **DISPOSITION OF MOTION FOR** |
| | ) | **PARTIAL SUMMARY** |
| | ) | **JUDGMENT, AND IN** |
| | ) | **OPPOSITION TO PLAINTIFF'S** |
| | ) | **MOTION TO COMPEL** |
| | ) | |

Defendant MTS Systems Corporation ("MTS") respectfully MTS seeks an order

protecting it from the oppression, undue burden, and expense imposed by Plaintiff

Hysitron Incorporated's ("Hysitron") Document Requests No. 5, 9, 13, and 16-17, and

22-42. MTS also opposes Hysitron's Motion to Compel.[1]

## INTRODUCTION

This Motion arises in a somewhat atypical context. Hysitron seeks broad and

costly document discovery regarding its trademark infringement claims even

though: 1) there was never any actual confusion from the alleged infringement; 2) MTS

has discontinued the conduct about which Hysitron complains; and, 3) there is no remedy

available or necessary because Hysitron cannot recover money damages and the claim for

---

[1]     For sake of efficiency, MTS has combined its Motion for Protective Order and its
Opposition to Hysitron's Motion to Compel in this single Memorandum of Law.

Dockets.Justia.com

injunctive relief is moot. Nevertheless, Hysitron proclaims it is "entitled" to proceed with this extremely burdensome discovery, the majority of which is not only unnecessary, but unjustifiable, in light of the real issues in this case.

This is a patent infringement case; however, Hysitron belatedly added trademark claims and it seeks an injunction against a Sponsored Link Internet advertising program that MTS has discontinued. Though Hysitron was aware of the program for over two years, it never complained, much less sought a TRO or preliminary injunction. Hysitron acknowledges that the ad program did not cause any actual confusion in the market, so it is not entitled to money damages. Moreover, MTS has voluntarily discontinued the ad program, so there is no need for an injunction. Curiously, when MTS offered to enter an undertaking further confirming that it has no intent to resume the program, Hysitron declined, instead pressing ahead with this needless litigation.

MTS has moved for partial summary judgment because its discontinued Sponsored Link advertising was not, as a matter of law, "use in commerce" under the Lanham Act and, therefore, did not infringe Hysitron's mark.[2] Moreover, Hysitron cannot recover money damages because there is no evidence of actual confusion. It is also clear that the ad program, when it ran, was not likely to have caused any confusion in the market, so Hysitron is not entitled to an injunction. The fact that MTS has discontinued the ad program and offered to enter an undertaking to that effect further demonstrates that injunctive relief is unwarranted and unavailable. The absence of any

---

[2]     MTS's Motion for Partial Summary Judgment will be heard by Judge Montgomery on May 29, 2008.

damages or legitimate threat of irreparable harm, coupled with Hysitron's refusal of MTS' offer to enter an undertaking, suggests an ulterior purpose for these claims. Hysitron has disclosed that ulterior and improper purpose—it is not pursuing these claims for a substantive purpose; i.e., to recover damages for past injury or to prevent future harm, but rather, to recover attorneys' fees. In these circumstances, Hysitron's far reaching and irrelevant discovery requests can only be intended to oppress MTS and to saddle it with undue burden and expense. Accordingly, the Court should grant MTS's Motion for Protective Order.

Alternatively, should the Court elect not to grant MTS' Motion for Protective Order in its entirety, the Court should stay discovery on these claims until Judge Montgomery has ruled on MTS' Motion for Partial Summary Judgment.

Finally, even if Hysitron's trademark claims had any legitimacy and its related discovery requests had some proper purpose, the vast majority of the requests are duplicative, overbroad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence. And as for those few requests that may arguably be deemed even tangentially relevant, the burden and expense of production far outweighs any possible benefit they could bring to the case. For each of these reasons, MTS opposes Hysitron's Motion to Compel.

## PROCEDURAL BACKGROUND

Hysitron served its Second Set of Requests for Production of Documents and Things to Defendant MTS on January 4, 2008. (Declaration of Brian Platt in Support of Motion to Compel Documents ("Platt Decl.") ¶ 4.) MTS served responses and objections

on February 22, 2008.  (Platt Decl. Ex. 3.)  In relevant part, MTS objected to Document Requests 5, 9, 13, and 16-17, and 22-42 as being overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.[3]

Counsel for MTS met and conferred with counsel for Hysitron on March 27, 2008. (Platt Decl. ¶ 6.)  MTS informed Hysitron that the above identified requests were far beyond the realm of relevant information and that if they were not withdrawn, MTS would seek a protective order.  Hysitron refused to withdraw the requests and indicated it planned to move to compel.  Accordingly, MTS requested that counsel for the parties work together to schedule the respective motions.  Counsel for Hysitron agreed, but then inexplicably obtained a hearing date without informing MTS until the day initial briefs were due.  The parties have since agreed that MTS' Motion for a Protective Order and Hysitron's Motion to Compel will be heard on the same day, May 1, 2008.

## BACKGROUND

### A.  The Relevant Market.

Hysitron and MTS each manufacture and market nanomechanical test instruments. (Compl. at ¶ 18.)  These highly sophisticated research instruments are purchased by university, industry and government research facilities for very specialized nano research and development projects.  (Declaration of Margaret Johns previously filed under seal in

---

[3]     MTS has now agreed to respond to Document Requests 10 and 18-21.  Thus, these Requests are no longer part of this Motion.

Support of Defendant's Motion for Partial Summary Judgment ("Johns Decl.") ¶¶ 4-5.)[4]

Both Hysitron and MTS have established reputations and are well-known in the narrow field of nanomechanical research. (*Id*. ¶ 3.) These instruments cannot be purchased over the Internet. (*Id*. ¶ 4; Affidavit of David P. Pearson previously filed under seal in Support of Defendant's Motion for Partial Summary Judgment ("Pearson Aff.") Ex. A (Pl.'s Resp. to Def.'s First Set of Discovery Reqs. ("Adm. Nos.") 27-30.)[5] The sales cycle for the Nano Vision™ device made by MTS is at least six months long and is often over a year in length. (Johns Decl. ¶¶ 6-7.) During this process prospective purchasers, who are typically persons with advanced degrees in engineering or similar fields, engage in a lengthy due diligence process before buying one of these products. (Johns Decl. ¶ 5.) This process involves substantial, direct contact between the customer and MTS over many months or years during which MTS and the customer determine the features of the instrument that would be appropriate for the customer given its particular research needs. (*Id*. ¶¶ 7-9.) MTS' product information about the Nano Vision™ product contains MTS' name and logo and very clearly identifies MTS as the manufacturer of the device. (*Id*. Ex. 1.) Potential purchasers are well-informed about the source (manufacturer) of the product through substantial direct contact with MTS and through the receipt of MTS' product information and product quote before the product is purchased. (*Id*. ¶¶ 3-10 and Exs. 1, 2.)

---

[4]     Filed under seal.
[5]     Filed under seal.

**B.  MTS' Keyword-Based Sponsored Link Advertising.**

Approximately two years ago, MTS obtained the keyword "hysitron" from Google, which triggered MTS' Sponsored Link advertisement to appear on the search-result page below the label "Sponsored Link" when a user typed the term "hysitron" into the search engine.[6]  (Compl. ¶¶ 32, 34.)  Importantly, a search using the keyword "hysitron" does not simply take a user directly to Hysitron's website or a website authorized by Hysitron.  Rather, it produces an organic search-result list that may include web pages administered by Hysitron, discussing Hysitron, or perhaps even criticizing Hysitron, or any web page with the word "Hysitron" in its text, such as an article or "blog."

---

[6]     Google operates a widely-used Internet search engine through which consumers can search for, among other things, websites offering information about products and services.   Google's "AdWords" service allows customers to arrange for their advertisements to appear on Google's search results page in response to a user's search query.   Internet search engines enable users to locate websites by keying in terms ("keywords") and performing searches on the search-engine database. (Compl. ¶ 25.)  In response to a keyword search, search engines produce both organic- and sponsored-result lists of websites.  (*Id*. ¶ 26.)  Organic-result lists match the user's keyword to data on a particular website.  (*Id*.)  Sponsored-result lists match keywords purchased by advertisers to data on a particular website.  (*Id*. ¶ 27.)

Search engines use sponsored-result lists as a way to generate revenue.   (*Id*.) When a user's keyword matches a keyword purchased by an advertiser, a clearly titled "Sponsored Link" advertisement may appear on the search-result page.  (*Id*. ¶ 29.)  This "Sponsored Link" section appears on the same page, but separate from the organic-result list, and it is generally shaded differently than the organic-result list.  Google's customers may select certain search terms that, if entered by a user, will return search results in a separate section titled "Sponsored Links." The "Sponsored Links" section identifies and provides a link to the customer's website, and provides a limited amount of advertising text.  For additional discussion, *see Int'l Profit Assocs., Inc. v. Paisola*, 461 F. Supp. 2d 672, 676 (N.D. Ill. 2006), and *Government Employees Ins. Co ("GEICO") v. Google, Inc.*, No. 1:04CV507, 2005 WL 1903128, at *2 (E.D. Va. Aug. 8, 2005).

During the period in which MTS utilized a Sponsored Link with the keyword "hysitron," MTS' Sponsored Link advertisement did not display Hysitron's mark in its title, heading, text, or any other portion of the advertisement seen by the user. (Johns Decl. ¶ 12; Pearson Aff. Ex. B (Pl.'s Responses to Def.'s 2d Set of Discovery Reqs.), Adm. Nos. 39-46.) Thus, when a user performed a search under the keyword "hysitron," she or he would be presented with an organic-list of potentially relevant websites and a separate Sponsored Link advertisement of MTS' products that did not display the word "hysitron" in any manner whatsoever. An Internet user observing MTS' Sponsored Link saw only MTS' name and logo, and never saw any reference to "Hysitron" or its products. (Johns Decl. ¶ 12.)

## C. <u>Hysitron's Trademark Claims.</u>

Hysitron's trademark claims are based exclusively on its allegation that MTS former use of the keyword "hysitron" in its Sponsored Link advertising infringed Hysitron's mark. (Compl. At ¶¶ 18-39, 40, 44, 49, 55.) However, a Sponsored Link advertisement that does not depict or display the contested mark in any way cannot constitute trademark infringement. *See* Part II, *infra*.

Earlier this year, MTS voluntarily discontinued the ad program involving the word "hysitron." (Johns Decl. ¶ 12.) It also offered, in good faith, to enter an undertaking agreeing not to resume the "hysitron" keyword Sponsored Link advertising in the future. Although no formal undertaking was entered between the parties, MTS has no plans to resume the "hysitron" keyword Sponsored Link advertising in the future. (*Id.*)

Hysitron has acknowledged that it has no evidence of any actual confusion caused by the Sponsored Link advertisement in the past. (Pearson Aff. Ex. B (Pl.'s Responses to Def.'s 2d Set of Discovery Reqs.), Interr. No. 20.) Similarly, MTS no evidence of actual confusion in the marketplace, and it is unaware of any past likelihood of confusion. (Johns Decl. ¶¶ 10-12.) Notwithstanding the absence of any past confusion or risk of future confusion, Hysitron has persisted with its trademark claims, seeking to enjoin activity that is neither presently occurring nor likely to occur in the future. Hysitron has propounded voluminous, far-reaching discovery requests based solely on these "go-nowhere" claims. Because these claims cannot lead to any meaningful recovery, the discovery requests can only have been propounded to place an undue burden on MTS. Thus, MTS respectfully moves for a protective order and opposes Hysitron's Motion to Compel.

## ARGUMENT

### I. LEGAL STANDARD

#### A. Protective Orders.

The Rules of Civil Procedure provide that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense … ." Fed R. Civ. P. 26(c). "Because of liberal discovery and the potential for abuse, district courts have broad discretion 'to decide when a protective order is appropriate and what degree of protection is required." *Pecarina v. Tokai Corp.,* 2002 WL 1023153, at *8 (D. Minn. May 20, 2002) (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34 (1984)). "Pursuant to Rule 26(c), a court may fashion 'any order which

justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' upon good cause shown.'" *Id.*

**B.  Motions to Stay Discovery.**

As noted, the Court has broad discretion over matters of discovery. *See Kramer v. NCS Pearson, Inc.*, 2003 WL 21640495, at *1 & 3 (D. Minn. June 30, 2003). This includes broad latitude to decide whether, and when, to stay discovery. *See id.* at 3. Where, as here, the expense or hardship of proceeding with discovery is substantial and the potential harm of a delay is minimal, a stay of discovery may be warranted. *See Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, 1998 WL 35253495, at *2 (D. Minn. June 15, 1998).

**C.  Objections to Improper Discovery.**

Even in the absence of a protective order, a party may oppose improper discovery requests by timely serving objections.  Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(C). Thereafter, the Court may limit discovery in the following manner:

> "[o]n motion or on its, own, the court must limit the frequency or extent of discovery otherwise allowed by [the] rules or by local rule if it determines that:
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.
>
> ***
>
>> (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii).

## II. THE COURT SHOULD GRANT MTS'S MOTION FOR PROTECTIVE ORDER

### A. <u>Hysitron's Trademark Claims Are Devoid of Merit and Afford No Remedy.</u>

MTS is entitled to a protective order relieving it of the burden and expense of this needless and onerous discovery. These requests cannot have been propounded for a proper purpose because the underlying claims are clearly defective. Moreover, even if Hysitron could possibly prevail, there is no meaningful remedy to be had at the end of the day. Thus, this is clearly vexatious litigation pursued for an improper purpose.

First, the claims have no merit. MTS' now discontinued Sponsored Link advertisement did not constitute a "use in commerce" as defined by the Lanham Act because it did not display Hysitron's mark in the ad. *See Merck & Co v. MediPlan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 406 (S.D.N.Y. 2006); *Rescuecom Corp. v. Google, Inc.*, 456 F. Supp. 2d 393, 403 (N.D.N.Y. 2006); *Site Pro-1, Inc. v. Better Metal, L.L.C.*, 506 F. Supp. 2d 123 (E.D.N.Y. 2007); *FragranceNet.com, Inc. v. FragrenceX.com, Inc.*, 493 F. Supp. 2d 545 (E.D.N.Y. 2007); *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, No. C02-2420RSM, 2006 WL 3761367 (W.D. Wash. Dec. 21, 2006); *c.f. Hamzik v. Zale Corp.*, No. 3:06-cv-1300, 2007 WL 1174863 at *3 (N.D.N.Y. April 19, 2007) (finding "use" where plaintiff's mark *did* appear on displays associated with the goods ); *and Edina Realty v. The MLSOnline.com*, 2006 WL 737064 (D. Minn. Mar. 20, 2006) (finding use in case where mark appeared in Sponsored Link advertisement).

Second, even if the Sponsored Link advertisement was considered a Lanham Act use, the ad—when it ran—cannot be said to have been likely to have substantially confused an appreciable number of Hysitron's and MTS' highly sophisticated customers. *See Gateway, Inc. v. Companion Prods.*, 384 F.3d 503, 509 (8th Cir. 2004); *Children's Factory v. Benee's Toys*, 160 F.3d 489, 494 (8th Cir. 1998). Under the Eighth Circuit's six-factor likelihood of confusion analysis, *see SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1089 (8th Cir. 1980), purchasers of this highly specialized, expensive test equipment could not have been likely to have been confused by an ad that did not even contain the word "hysitron." *See Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 127 (4th Cir. 1990) ("the sophistication and expertise of usual purchasers can preclude any likelihood of confusion"); *Mars Musical Adv., Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146, 1153 (D. Minn. 2001) (noting that likelihood of confusion is lessened where goods are costly and purchasers expend greater time choosing between competing products). Where, as here, purchasers are sophisticated and knowledgeable, products are extremely expensive, and the sales cycle is months or years long, a claim that confusion is likely cannot be sustained.

Moreover, "when determining whether there exists a likelihood of confusion, weight is given to the number and extent of instances of actual confusion." *Duluth News-Tribune*, 84 F.3d at 1099 (*quoting Life Techs., Inc. v. Gibbco Sci., Inc.*, 826 F.2d 775, 777 (8th Cir. 1987)). The lack of actual confusion is a "strong indicator" of a lack of a likelihood of confusion. *Plus Prods. v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1006 (2d Cir. 1983); *The Nautilus Group, Inc. v. Savvier, Inc.*, 427 F. Supp. 2d 990, 997 (W.D.

Wash. 2006); *Nabisco v. Warner-Lambert Co.*, 32 F. Supp. 2d 690, 699 (S.D.N.Y. 1999). Where, as here, there was no actual confusion whatsoever, it defies reason to suggest that purchasers were, nonetheless, likely to have been confused.

Finally, as noted above, even if MTS' Sponsored Link advertisement was a use under the Lanham Act, and even if the ad could somehow be deemed to have been likely to confuse an appreciable number of consumers when it ran (despite that utter lack of any actual confusion), the sole remedy available to Hysitron would be an injunction. But MTS has voluntarily discontinued the program and has no intent to resume it in the future. Where allegedly infringing conduct has ceased and is unlikely to recur, the need for an injunction is moot. *See Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 207 (7th Cir. 1982) (equitable relief inappropriate were defendant "did not threaten to persist in or resume the allegedly infringing or unfair conduct"). That is the case here. Moreover, when MTS offered to enter an undertaking precluding any future resurrection of the ad program, Hysitron declined, inexplicably perpetuating this needless but expensive litigation.

**B.** **Hysitron's Trademark Claims and This Discovery Have Been Brought for an Improper Purpose.**

Hysitron's persistence in the face of these facts, and particularly, MTS' voluntary discontinuation of the program, raises serious questions about Hysitron's purpose in pursuing these claims. Hysitron has propounded literally dozens of complex discovery requests purportedly in pursuit of a meritless claim that, even if successful, could yield nothing more than an unnecessary injunction against conduct that is not occurring or

likely to occur in the future—and this in the face of MTS' offer to enter an undertaking for Hysitron's benefit.

The reason Hysitron persists in this litigation is not a mystery. Hysitron has admitted its true motive for continuing the litigation and this expansive discovery. In the absence of any actual damages in the past and the impossibility of any actual damages in the future because the Sponsored Link no longer exists, Hysitron says it is "entitled" to pursue the infringement claims to recover attorneys' fees. (Pl.'s Mem. L. Supp. Mot. Compel at 3.) In other words, it wants to continue this costly litigation and send MTS the bill. That strategy does not provide a proper basis for these discovery requests.

Given that astonishing admission, Hysitron's discovery requests can only have been brought to annoy, oppress and cause MTS undue burden and expense, and they cannot be reasonably calculated to lead to the discovery of admissible evidence. A showing that discovery is not relevant satisfies the "good cause" requirement of Rule 26(c)(1) and a protective order may be issued to proscribe the discovery of irrelevant material. *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994) (*citing* Moore's Fed. Pract., ¶ 26.24; *Navel Orange Admin. Committee v. Exeter Orange Co.*, 722 F.2d 449 (9th Cir. 1983)). Under these circumstances, the Court should exercise its inherent power to prevent this needless, wasteful, and expensive discovery by granting MTS's Motion for Protective Order.

## III. ALTERNATIVELY, THE COURT SHOULD STAY THIS DISCOVERY PENDING RESOLUTION OF MTS' SUMMARY JUDGMENT MOTION.

The Rules of Civil Procedure are to be interpreted "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. To effectuate this purpose, the Court has the inherent authority to manage its docket, cases, and interlocutory orders. *See Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, 1998 WL 35253495, at *2 (D. Minn. June 15, 1998) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). The Court has particularly broad discretion over matters of discovery, including the authority to stay discovery. *See Kramer v. NCS Pearson, Inc.*, 2003 WL 21640495, at *1 & 3 (D. Minn. June 30, 2003). "[W]hen ruling on a Motion to Stay, 'the Court must weigh the competing interest: i.e., the possible damage of granting a stay versus the hardship or inequity of forcing a case onward.'" *Intermedics, Inc.*, 1998 WL 35253495, at *3 (quoting *Clintec Nutrition Co. v. Abbott Laboratories*, 1995 WL 228988, at *1 (N.D. Ill. Apr. 14, 1995)); *see also Riehm v. Engelking*, 2006 WL 2085404, at *1 (D. Minn. July 25, 2006) (holding that stay of discovery pending summary judgment would not damage the plaintiff). Courts also generally consider the strength of the moving party's showing that the underlying claims are unmeritorious and the breadth of the requested discovery and the burden of responding to those requests. *See In re Currency Conversion Fee Antitrust Litig.*, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002).

Here, each of these factors weighs in favor of a stay. In *Riehm*, the court found that good cause existed for a stay, stating, "it is likely that the Court's ruling on the

dispositive motions will narrow the issues in this case and obviate the need for some discovery." *Id.* at *2. The court also noted that even if the dispositive motions did not entirely dispose of the case, there was no harm that would result from the stay. *Id.* MTS similarly has a pending motion for partial summary judgment motion on Hysitron's trademark claims. For the reasons discussed above, Hysitron's trademark claims are utterly without merit or any possibility of providing relief. Thus, it is likely that the ruling on MTS' Motion will "obviate the need" for the disputed discovery. *Riehm*, 2006 WL 2085404, at *2. And, as discussed in detail below, the disputed requests are sweeping in scope, creating a substantial burden on MTS. *See In re Currency Conversion Fee,* 2002 WL 88278, at *1. Finally, the Scheduling Order in this case does not require fact discovery to be completed until November 1, 2008. Thus, a stay will result in no harm to Hysitron because there would be ample time to complete this discovery is Judge Montgomery was to deny any part of the Motion for Partial Summary Judgment.

Accordingly, if the Court determines not to grant MTS's Motion for Protective Order, it should stay this discovery pending a resolution of the Motion for Partial Summary Judgment.

## IV. MTS' OPPOSITION TO HYSITON'S MOTION TO COMPEL

In conjunction with its Motion for Protective Order, MTS also opposes Hysitron's Motion to Compel. There are two fundamental bases for MTS's opposition to Hysitron's Motion: 1) the vast majority of the requests are duplicative, overly broad, unduly burdensome or not reasonably calculated to lead to the discovery of admissible evidence;

and, 2) to the extent that any of the requests are even marginally proper, the expense and burden the requests impose far outweighs any probative benefit they may confer with respect to any controverted issue.

**A. Hysitron's Requests Are Overly Broad, Unduly Burdensome, and Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence, and its Purported Justifications for the Requests Fail.**

Hysitron has proffered three broad justifications, albeit in varying textual forms, for the discovery it seeks. First, it claims the discovery is relevant to the purported intent and willfulness of MTS which supports Hysitron's claim that this is an exceptional case. Second, it claims the discovery is relevant to determining their patent damages. Third, it claims the discovery is relevant to the likelihood of confusion analysis. None of these justifications can be sustained.

*1. Hysitron's "Exceptional Case" Justification.*

Hysitron attempts to justify almost every disputed request on the grounds that it is related to its "exceptional case" theory and its attempt to prove "intent" or "willfulness." This argument is specious for multiple reasons. There is no dispute that MTS was aware of Hysitron and intentionally purchased the term "hysitron" for its Sponsored Link advertisement. Thus, MTS' intent to obtain this term as a keyword for its Sponsored Link advertisement is not a disputed issue.

Moreover, documents concerning MTS' "intent" and/or "willfulness" are not relevant because, as a matter of law, MTS' conduct could not constitute an exceptional case. Numerous courts around the country have held that use of another's mark in connection with a Sponsored Link advertisement is permissible, where the trademark

does not appear in ad.  (*Supra, Part II*.)  These cases provide ample legal justification for MTS' conduct, necessarily defeating any suggestion that this is an "exceptional case." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65-66 (5th Cir. 1992); *Buca di Bacco, Inc. v. Buca di Bacc', Inc.*, 828 F. Supp. 31, 32 (S.D. Tex. 1993).  Thus, Hysitron cannot show that these requests are relevant to either MTS's intent or a theory of willful infringement and the requests are not reasonably calculated to lead to the discovery of admissible evidence.

### 2.  Hysitron's "Market Information" and "Patent Damages" Justifications.

Hysitron broadly asserts that most of the disputed requests are germane to its alleged patent infringement damages and the market for the alleged infringing product. This is a curious explanation, since Hysitron previously propounded multiple requests seeking vast amounts of information on this very subject.  In response, MTS has already produced more than enough information for Hysitron to determine the characteristics of the marketplace and to analyze its alleged patent damages.  Moreover, as Hysitron has admitted, there is no real dispute about the relevant marketplace.  (*See* Hysitron's Mem. Supp. Mot. Compel at 13.)  Undeterred by these facts or the cumulative, burdensome nature of its requests, Hysitron asserts that it is entitled to "prove its case" by forcing MTS to respond to this unnecessary discovery.  (Hysitron Mem. Supp. Mot. Compel at 13.)  This is nothing more than an abuse of the discovery process.  And despite Hysitron's attempt to justify the requests on that basis, the majority of the disputed requests are not related to its alleged "patent damages" in any case.

### a.) MTS has already produced documents sufficient to identify the relevant market and analyze any alleged patent damages.

Hysitron's purports to justify its overbroad discovery requests as somehow remotely related to the "totality of the circumstances" relevant to patent damages. This fails because in response to previous requests, MTS has already produced or agreed to produce more than sufficient documents for Hysitron to analyze its alleged patent damages. Hysitron previously served 29 discovery requests encompassing all of the information necessary for its patent claims. (Affidavit of Brent A. Lorentz in Opposition of Plaintiff's Motion to Compel ("Lorentz Aff") Ex. 1 (Def. Resp. Pl. First Set of Req. Prod. Doc.)) These earlier requests sought, among other things:

(1) a specimen of each advertisement, marketing and promotional materials;

(2) documents sufficient to identify every sale of the allegedly infringing devices;

(3) documents sufficient to show the gross, operating, and net revenues relating to MTS' sales of the allegedly infringing devices;

(4) documents sufficient to show the gross, operating, and net profits relating to MTS' sales of allegedly infringing devices;

(5) documents sufficient to show costs relating to MTS' manufacture and sale of the allegedly infringing devices;

(6) documents and things relating to market share analysis, including but not limited to analysis of the market size, numbers of products in the market, number of competitors in the market, market share per product or competitor, or market growth; and

(7) documents sufficient to identify all products available on the market that compete with the allegedly infringing devices.

(*See id.*, MTS' Resp. Hysitron's First Set of Doc. Req. Nos. 5-6, 13, 17-22.))  These documents are more than ample to calculate Hysitron's lost profits claim.

### b)  *MTS has agreed to produce additional documents in response to Hysitron's Second Set of Document Requests.*

Additionally, in response to Hysitron's Second Set of Document Requests, MTS agreed during the meet and confer to produce documents sufficient to show (1) "the characteristics of Defendants' customers and prospective customers to which MTS markets or plans to market" the accused devices; (2) documents sufficient "to identify and describe the target or intended customers of" MTS' accused devices; (3) documents sufficient "to identify the classes of persons who make the decisions to purchase" MTS' accused devices; (4) documents sufficient to show "the types of purchasers, end users, expected purchasers, or expected end users" of MTS' accused devices.  (*See* Hysitron's Mem. Supp. Mot. Compel at 1, Hysitron's Second Set of Document Req. Nos. 11, 12, 14, and 15.)  Even though Hysitron agrees there is no dispute about the market or the customers, MTS has agreed to respond to this discovery.  Clearly, the documents that MTS has already produced and agreed to produce are sufficient to identify the market for the product at issue in the patent case, the customers for that product and other relevant information related to patent damages.  MTS objects to further duplicative and unnecessary discovery on the same issues.

### c)  *Hysitron's demand for this discovery is inconsistent with the position it took in objecting to MTS' discovery requests.*

Hysitron itself already limited the scope of relevant discovery when it opposed MTS's earlier Motion to Compel.  That motion was heard on December 10, 2007.  MTS

sought, among other things, the production of any documents concerning "[a]ll projections, forecasts, market share reports and forecasts, marketing acceptance documents, business plans, strategic plans, fiscal plans, marketing strategies and plans relating to the sale and anticipated sale of scanned probe microscope apparatuses, microindentation apparatuses, surface imaging apparatuses, and/or multi-plate capacitor systems." (Order on Def. Mot. Compel Disc. ("Order"), Doc. No. 72, at 7-9.) MTS made arguments very similar to those advanced by Hysitron here, specifically, that such documents were relevant to Hysitron's damages claims for patent infringement. *Id.*

In opposing that motion, Hysitron argued the request was "hopelessly overbroad." (Hysitron Mem. Opp'n MTS Mot. Compel at 14.) Hysitron specifically argued that it had already agreed to produce "documents sufficient to assess the sales, revenues, costs, and profits attributable to Hysitron's commercial embodiments of the inventions claimed in the patents-in-suit," market share analyses from 1992 to the present for scanned probe microscope apparatuses, and communications with all potential purchaser of its products. (*Id.* at 14-15.) In Hysitron's words, the limited information it had agreed to produce would "fully enable MTS to perform" the lost profits analysis. (*Id.* at 15.) MTS has already produced or agreed to produce this same category of documents. Nothing more is required.

Hysitron also argued that the only discovery necessary for its trademark claim were "advertisements, brochures, marketing materials, documents sufficient to identify its targeted market, and communications with all potential purchasers of its commercial embodiment of the patents-in-suit" and documents concerning the "distinctiveness,

reputation, and recognition" of the HYSITRON mark. (*Id.*) The Court accepted Hysitron's position. (Order at 7-9.) Hysitron cannot have it both ways. MTS has produced documents and information comparable in kind and scope to the documents Hysitron successfully argued were sufficient for the damages analysis. The Court has already narrowed the scope of this discovery and its ruling should apply here as well.

### 3. Hysitron's "Likelihood of Confusion" Justification.

As discussed more fully above, Hysitron has persisted with this litigation despite the acknowledged absence of any actual confusion, and despite the discontinuation of the Sponsored Link advertising. Even if Hysitron was entitled to some discovery on its fatally defective trademark claims, it cannot be entitled to discovery that goes far beyond the narrow issue that the trademark claims present. The only even remotely relevant trademark issue is whether an appreciable number of Hysitron's and MTS's customers, were likely to have been confused by MTS's Sponsored Link advertisement when it was in place.

Courts traditionally apply a six-factor test to determine whether allegedly infringing conduct may be likely to cause confusion. *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1089 (8th Cir. 1980). These include: 1) whether the degree of purchaser care can eliminate any likelihood of confusion which would otherwise exist; 2) the strength of the owner's mark; 3) the similarity between the owner's mark and the alleged infringer's mark; 4) the degree to which the products compete with each other; 5) the alleged infringer's intent to pass off its goods as those of the trademark owner; and, 6) incidents of actual confusion. *Id.*

Hysitron asserts that virtually all of the disputed requests are relevant to this analysis, but in reality, almost none of them are probative of the *Squirtco* factors. Indeed, the most of these factors require no document discovery at all. For example, the degree of purchaser care, the strength of the mark in question, the similarity between the Hysitron's mark and the MTS's mark, the degree of competition between them, and the lack of intent of MTS to "pass off its goods" are clearly undisputed issues. Thus, Hysitron's broad and overreaching discovery requests cannot be justified on this basis and its Motion to Compel should be denied.

**B.** **Any Requests That Are Not Overbroad or Unduly Burdensome or May Be Marginally Calculated to Lead to the Discovery of Admissible Evidence Must Be Limited to the Extent the Cost and Burden They Impose Outweighs the Likely Benefit of Production.**

Pursuant to Rule 26(b)(2)(C), the Court *must* limit the scope of discovery otherwise allowed where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the action, and the importance of the discovery resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). "[E]ven though the standard of relevancy for discovery purposes is a liberal one the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might become so." *Smith v. Dowson*, 158 F.R.D. 138, 142 (D. Minn. 1994).

In this case, Hysitron seeks unfettered freedom to explore the "shadow zone." In light of the discovery undertaken to date and the true issues in the case, Hysitron's

current requests bear little relationship to any truly disputed matter. Given the marginal relationship of these requests to the issues needing resolution, the burden of producing responses far outweighs any conceivable benefit they may confer. As noted, MTS has already produced vast amounts of information and reams of documents. Further, MTS has agreed to produce additional documents, more than sufficiently address the disputed issues in the case. Many of the disputed requests are duplicative or cumulative and others simply cannot advance the ball.

By way of example, in its Document Request No 22, Hysitron seeks:

> All documents that relate to Defendant's advertising with search engine and third party websites, including but not limited to Google.com and its affiliates, Mapquest.com, AOL.com, Yahoo.com, Info.com, IXquick.com, Netscape.com, PepeSearch.com, Wondir.com, Vivisimo.com, Webcrawler.com, About.com, Ask.com, Dogpile.com, Hotbot.com, Lycos.com, Mamma.com, IWON.com, Aeiwi.com, Excite.com, Gimenei.com, Sputtr.com, Nanovip.com, macraesbluebook.com, Azonano.com, Stormingmedia.us, and Clusty.com (hereinafter "Third Party Websites" (this definition is not limited to the examples provided)).

This Request has virtually nothing to do with the analysis of alleged damages, such as potentially lost sales or sales of the allegedly infringing product, product cost, or the nature of the market. Moreover, the Request, which seeks "all documents" that relate to MTS' advertising with search engines and Third Party Websites, is "hopelessly overbroad." It is not reasonably tailored to the issues it purportedly addresses. It is not limited to keyword advertising or the term "hysitron." The probative and relevant documents have already been produced, and the cost and burden of responding to this Request far outweighs any benefit the discovery could possibly provide, particularly in

light of the documents MTS has already produced.  Many other requests suffer this very same flaw.

Therefore, to the extent that the Court does not grant MTS' Motion for Protective Order or for a Stay, and it deems any of these requests to be allowable under the Rules, MTS respectfully requests that the Court limit their scope to information that might legitimately help to resolve a material issue that is legitimately in dispute.  Fed. R. Civ. P. 26(b)(2)(C)(iii).

### C.  The Specific Requests in Dispute.

**REQUEST NO. 5:**
All Documents referring or relating to any formal or informal trademark searches or investigations that relate to Plaintiff's HYSITRON mark.
**OBJECTION:**
See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims this Request is relevant to the trademark claims because it relates to likelihood of confusion and willful or deliberate infringement and is relevant to patent damages.  (Hysitron's Mem. Supp. Mot. Compel at 11-12.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. This Request is not probative at all of the likelihood of confusion issue and says nothing about willfulness because Hysitron has already admitted that it does not own any trademark registrations for the HYSITRON mark, thus a trademark search would not have produced anything.  Additionally, "trademark searches and investigations" are not probative of Hysitron's patent infringement damages (lost profits claim) which is based on actual lost sales.

**REQUEST NO.9:**

All Documents relating to descriptions of the normal channels of trade for distribution of Defendant's nanomechanical test instruments and related services.

**OBJECTION:**

See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims this Request is relevant to patent damages because it relates to the market segment in which Hysitron and MTS compete, that it is relevant to its trademark claims because the claims need to be considered with regard to "normal channels of trade," and willfulness. (Hysitron's Mem. Supp. Mot. Compel at 13-14.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. Hysitron's patent damage justification fails because MTS has already produced, among other things, documents sufficient to show "the types of purchasers, end users, expected purchasers, or expected end users" of MTS' accused devices." (*See* Hysitron's Mem. Supp. Mot. Compel at 1, Hysitron's Second Set of Document Req. Nos. 15.) The Request is thus duplicative. To the extent "normal channels of trade" could be interpreted to include more than what MTS has already produced, it is overbroad. Hysitron does not explain how "descriptions of normal channels of trade" could conceivably contain evidence of MTS' intent. Further, the cost and burden of responding far outweighs any probative value of this information, particularly in light of the documents MTS has agreed to produce.

**REQUEST NO. 13:**

Documents sufficient to identify the market Defendant intends to target based on its marketing, promoting, and advertising using the term "hysitron."

**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims this Request is relevant to its patent damages and likelihood of confusion analysis because it will establish that MTS and Hysitron compete in the same market segment, and because it relates to willfulness. (Hysitron's Mem. Supp. Mot. Compel at 14-15.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. This Request is duplicative because MTS has already produced or agreed to produce documents sufficient to show the characteristics of Defendants' customers and prospective customers to which MTS markets or plans to market the accused devices, and documents sufficient to identify and describe the target or intended customers of MTS' accused devices. (*See* Hysitron's Mem. Supp. Mot. Compel at 1, Hysitron's Second Set of Document Req. Nos. 11, 12.) To the extent Request No. 13 could be interpreted to include more than what MTS has already produced, it is overbroad. Further, the intended market has nothing to do with willfulness. Finally, there is really no dispute that MTS and Hysitron compete in the same market. Hence, the cost and burden of responding to this Request outweighs the likely benefit.

**REQUEST NO.16:**
All documents relating to the manner in which Defendant's customers or prospective customers come to the decision to purchase Defendant's nanomechanical test instruments, including, but not limited to, documents identifying the types of people who made these decisions, their job responsibilities, and the procedures and basis under which they made these decisions.

**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that this Request is relevant to the likelihood of confusion, ostensibly because it relates to the market. (Hysitron's Mem. Supp. Mot. Compel at 16.) Hysitron also claims that this Request is relevant to whether this is an exceptional case because it may demonstrate that MTS intended to take advantage of "quick-click purchasers." (*Id.*)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. This Request is duplicative. MTS has already agreed to produce documents sufficient to identify actual and intended customers. With respect to the willfulness justification, Hysitron's assertion that MTS may have intended to take advantage of "quick-click purchasers" is entirely irrelevant to the current case because it is undisputed that MTS and Hysitron do not sell there products online. Moreover, the nature of the products at issue make "quick-click purchasing" a facially absurd argument. This isn't "Amazon.com;" these precision scientific instruments cost tens to hundreds of thousands of dollars and are purchased in a sales process lasting months or years. Hysitron has admitted that the purchasers of these instruments are sophisticated individuals. Thus, beyond what MTS has already agreed to produce, this Request is not likely to lead to the discovery of admissible evidence.

**REQUEST NO. 17:**
All documents relating to Defendant's actual marketing, promotional, or advertising efforts or activities that use, incorporate, or are generated by Plaintiff's HYSITRON Mark or derivatives thereof.

**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron argues in conclusory fashion that this Request "informs every aspect of the trademark claim." (Hysitron's Mem. Supp. Mot. Compel at 17-18.) Hysitron also claims that it is relevant to the "totality of the circumstances" for evaluating lost profits. (*Id.*)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. This Request is duplicative because MTS has already agreed to produce, among other things, a specimen of each advertisement, marketing and promotional material. (*See* Lorentz Aff. Ex. 1, MTS' Resp. Hysitron's First Set of Doc. Req. Nos. 6.) Further, Hysitron presumably has MTS' Sponsored Link and website advertising. To the extent Request No. 17 could be interpreted as requiring more, it is overbroad. Additional documents not seen by Internet users are not probative of the likelihood of confusion issue. As to the patent damages justification, MTS has, as discussed, produced or agreed to produce documents sufficient to enable Hysitron to determine its damages, i.e., its lost profits.

**REQUEST NO. 22:**
All documents that relate to Defendant's advertising with search engine and third party websites, including but not limited to Google.com and its affiliates, Mapquest.com, AOL.com, Yahoo.com, Info.com, IXquick.com, Netscape.com, PepeSearch.com, Wondir.com, Vivisimo.com, Webcrawler.com, About.com, Ask.com, Dogpile.com, Hotbot.com, Lycos.com, Mamma.com, IWON.com, Aeiwi.com, Excite.com, Gimenei.com, Sputtr.com, Nanovip.com, macraesbluebook.com, Azonano.com, Stormingmedia.us, and Clusty.com (hereinafter "Third Party Websites" (this definition is not limited to the examples provided)).

**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron justifies this Request on the grounds that advertising is part of the "totality of circumstances" relevant to patent damages. It also seeks to justify this Request on the basis of willfulness. (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. MTS has produced or agreed to produce documents sufficient to enable Hysitron to calculate and determine its damages, as discussed previously. Hence this Request is overly broad and duplicative. Further, this Request has little or nothing to do with the damage issue itself, i.e., the number of sales of the allegedly infringing product, the cost of the product, the nature of the market, etc., topics about which MTS has agreed to produce documents.

This Request, which seeks "all documents" that relate to MTS' advertising with search engines and Third Party Websites, is "hopelessly overbroad." This Request is not reasonably tailored to the issues in this case, and is not even limited to keyword advertising, let alone keyword advertising employing the term "hysitron." Hysitron has a copy of MTS' Sponsored Link and MTS' website. Other documents never seen by Internet users have no probative value concerning either damages or alleged confusion in this market. Therefore, the probative and relevant documents have been produced, and this Request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Finally, the cost and burden of responding to this

Request far outweighs any benefit, particularly in  light of the documents MTS has already agreed to produce.

**REQUEST NO. 23:**
All Documents relating to contracts, agreements, or other understandings, written and oral, between Defendant and any search engine or third party website concerning advertising and search engine results, including but not limited to Defendant's use of the term "hysitron" in connection with keyword advertising with Third Party Websites.
**OBJECTION:**
See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron tries to justify this Request on the grounds that it is relevant to patent damages and the issue of willfulness.  (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above, i.e., MTS has produced documents fully sufficient to enable Hysitron to calculate and determine its damages, and it is beyond the scope of discovery to which Hysitron itself has agreed.  Documents relating to contracts or agreements between MTS and any search engine or third party website are not probative of damages, willfulness, or the likelihood of confusion in the market.  Further, this Request is not limited to keyword advertising or keyword advertising employing the term "hysitron."  Hysitron has a copy of MTS' Sponsored Link and MTS' website.  Other documents, and particularly contracts, have no probative value.  Thus this Request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 24:**
All documents that relate to the manner in which Defendant's advertisements and search results appears on Third Party Websites.

**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron uses the same justifications for this Request as for most of the requests in dispute here, i.e., Hysitron claims the Request is relevant to patent and trademark damages, the issue of willfulness, and confusion in the marketplace. (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above, i.e., MTS has produced or agreed to produce documents fully sufficient to enable Hysitron to calculate its damages. Further, Hysitron has a copy of MTS' Sponsored Link and MTS' website. The truly germane documents are in Hysitron's possession. Other documents never seen by Internet users have no probative value concerning alleged likely confusion in the market. Hence this Request, which asks for "all documents" that relate to the manner in which MTS' advertisements appear on Third Party Websites, is overly broad and unduly burdensome. Further, this Request, like other requests, is not limited to keyword advertising with the term "hysitron," and is overbroad for that reason.

**REQUEST NO. 25:**
All Documents sufficient to determine dates on which Defendant placed advertising on Third Party Websites, including but not limited to advertising that related in any way to the term "hysitron."
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that this Request is relevant to the patent damages and Hysitron's claim of willful infringement. (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above.

MTS has produced documents or agreed to produce documents sufficient to enable

Hysitron to calculate its lost profits damages. This damage claim is based on actual sales

of the alleged infringing product in the market place. Given that there was no actual

confusion in the market place and no lost sales resulting from actual confusion, the time

period during which MTS placed advertising on Third Party Websites is irrelevant to the

damage calculation. Further, this Request is also not at all probative of willfulness.

**REQUEST NO. 26:**
All Documents sufficient to determine Defendant's target market via Third Party
Websites advertising, including but not limited to Defendant's selection of a geographic
location in connection with the distribution of advertisements.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is
overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to
lead to the discovery of admissible evidence.

Hysitron claims that this Request is relevant to patent damages and MTS'

intentional use of Hysitron's mark. (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above.

MTS has already agreed to produce documents sufficient to identify the relevant markets

for the products in which MTS and Hysitron compete. This Request is, therefore,

duplicative. Moreover, the relevant market in this lawsuit is not reasonably open to

dispute. Given this, this Request is duplicative and not reasonably calculated to lead to

the discovery of admissible evidence. Further, as with other requests, the cost and burden

of responding to this Request outweighs the potential benefit.

**REQUEST NO. 27:**
All Documents relating to correspondence with Third Party Websites regarding Defendant's advertising on those Third Party Websites.
**OBJECTION:**
Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that this Request is relevant to patent damages and MTS' intentional use of Hysitron's mark. (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. Further, this Request is not probative of any damages issue and MTS' production on this topic is sufficient. Correspondence with Third-Party Websites is not related to any of the factors for likelihood of confusion. Documents never seen by Internet users have no probative value concerning alleged confusion in this market. Moreover, this Request is not limited to keyword advertising or "hysitron." Accordingly, this Request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 28:**
All documents sufficient to identify the keywords submitted to Third Party Websites in connection with Defendant's advertising with those Third Party Websites.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that this Request is relevant to patent damages and MTS' intentional use of Hysitron's mark. (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. MTS' keyword advertising with words other than "hysitron" does not have any relevance to the question of whether MTS use of "hysitron" in keyword advertising was likely to

cause confusion in the relevant marketplace. The use of other keywords in website advertising is not probative of damages (lost profits) here, and Hysitron has acknowledged it lost no sales from actual confusion in the market. Accordingly, this request is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 29:**
All documents that relate to statistics provided by Third Party Websites regarding Defendant's advertising with those Third Party Websites, including but not limited to the number of times the Third Party Websites served an advertisement and the number of visitors who clicked on Defendant's advertisement that was generated from the "hysitron" mark.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 30:**
All documents that relate to statistics maintained by Defendant in connection with Defendant's advertising on Third Party Websites.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that Requests 29-30 are relevant to patent damages and MTS' intentional use of Hysitron's mark. (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. The patent damage justification fails because MTS has agreed to produce documents to enable Hysitron to conduct its lost profits analysis. In addition, the mere clicking on a web-link has no logical correlation to whether or not an appreciable number of consumers were confused as to the source of MTS and Hysitron's respective products. This is particularly true in the present case, where it is undisputed that MTS and

Hysitron's customers cannot purchase the nanomechanical test instruments over the Internet, and it is undisputed that MTS' sponsored link did not contain the term "hysitron" in its heading or body. Again, absent confusion, an increase in web traffic generated by use of the keyword "hysitron" is not infringement. Given this, website statistics are not probative of any issue relating to likelihood of confusion or damages. Thus this Request is not reasonably calculated to lead to the discovery of admissible evidence. Finally, this Request, if relevant at all, is so tangential to any issues in this action that the cost and burden of responding clearly outweighs any benefit.

**REQUEST NO. 31:**
All Documents from which Plaintiff can determine the amount of money Defendant has expended on advertising with Third Party Websites, including but not limited to advertising using the term "hysitron."
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 32:**
All Documents from which Plaintiff can determine the amount of money which Defendant plans to expend on advertising with Third Party Websites, including but not limited to advertising using the term "hysitron."
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that Requests 31-32 are relevant to patent damages, MTS' intentional use of Hysitron's mark, and confusion in the market. (Hysitron's Mem. Supp. Mot. Compel at 24-25.) (*Id.*)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above.

MTS has produced or agreed to produce documents fully sufficient to enable Hysitron to

calculate its alleged lost profits. These Requests are thus unnecessary and burdensome. Further, they are not at all probative of the damage issue. The expenditure or planned expenditure of funds on advertising are not probative of Hysitron's alleged damages. In addition, MTS' actual or planned internet advertising expenditures are not probative of whether an appreciable number of consumers were likely to be confused by MTS' use of the keyword "hysitron" in past sponsored link advertising. Advertising expenditures are not relevant to any of the likelihood of confusion factors. Further, MTS has ceased using "hysitron" in Sponsored Link advertising. MTS should not be required to respond to this request because it is not reasonably calculated to lead to the discovery of relevant and admissible evidence.

**REQUEST NO. 33:**
All documents that relate to Defendant's decision to use the term "hysitron" in connection with keyword advertising on Third Party Websites.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that this Request is relevant to patent damages and MTS' intentional use of Hysitron's mark. (Hysitron's Mem. Supp. Mot. Compel at 24-25.)

In response to the patent damages justification, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. Further, MTS' knowledge that it was using "hysitron" as a search word for keyword advertising is not a disputed issue. Accordingly, this discovery request is not likely to lead to the discovery of admissible evidence.

**REQUEST NO. 34:**
All documents that relate to Defendant's advertising, promoting, and marketing of its website mtsnano.com.

**OBJECTION:**
See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

MTS' marketing of its own website has absolutely no bearing on whether or not an appreciable number of consumers were likely to be confused by MTS' use of the keyword "hysitron" in past sponsored link advertising.  MTS should not be required to respond to this request because it is not reasonably calculated to lead to the discovery of relevant and admissible evidence.  Further, the demand for "all documents" is so expansive that, given the tangential relevance (at best) of this request, the cost and burden of responding far outweighs any benefit.

**REQUEST NO. 35:**
All documents that relate to Defendant's usage statistics for its website mtsnano.com from one year prior to the first use of the term "hysitron" in connection with search engine advertising, including but not limited to the following:
• Server log files
• Yearly page request reports
• Monthly page request reports
• Weekly page request reports
• Daily page request reports
• Host reports (indicating the host name of the visitors)
• Referring URL reports
• Referring site reports
• Search query reports
• Search word reports
**OBJECTION:**
See General Objection No. 10.  Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that this Request is relevant to patent damages and relates to evidence of "market presence and sales activities' which is somehow germane to likelihood of confusion.  (Hysitron's Mem. Supp. Mot. Compel at 26.)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. Web traffic is not probative of damages (lost profits) which is based on actual lost sales, so the patent damage justification fails. This justification further fails because Hysitron and MTS agree there was no actual confusion by an actual purchaser. As to potential confusion, the mere clicking on a web-link has no logical correlation to whether or not an appreciable number of consumers were confused as to the source of MTS and Hysitron's respective products. This is particularly true in the present case, where it is undisputed that MTS and Hysitron's customers cannot purchase the nanomechanical test instruments over the Internet, and it is undisputed that MTS' Sponsored Link did not contain or display the term "hysitron." Thus, website statistics are not probative of any issue relating to likelihood of confusion or damages. Thus, this discovery request is not reasonably calculated to lead to the discovery of admissible evidence.

Further, this is an extremely broad request and the burden of responding is substantial. The Court should not compel the discovery because the cost and burden far outweighs any real benefit to the issues being litigated.

**REQUEST NO. 36:**
All documents that show the degree of care Defendant's customers exercise in purchasing nanomechanical instruments.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 37:**
All documents that show the level of sophistication of Defendant's customers that purchase nanomechanical test instruments.

**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that Requests 36-37 are relevant to trademark claims because they bear on the characteristics of the customers and are thus relevant to likelihood of confusion. (Hysitron's Mem. Supp. Mot. Compel at 27.) Hysitron also argues that these documents are relevant to willful or deliberate actions. (*Id.*)

In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above. MTS has agreed to produce documents concerning communications between MTS and customers relating to their purchase of allegedly infringing devices (*See* Lorentz Aff. Ex. 1, MTS' Resp. Hysitron's First Set of Doc. Req. Nos. 14.) MTS also agreed to produce documents sufficient to identify the classes of persons who make the decisions to purchase MTS' accused devices and documents sufficient to show the types of purchasers, end users, expected purchasers, or expected end users of MTS' accused devices. (*See* Hysitron's Mem. Supp. Mot. Compel at 1, Hysitron's Second Set of Document Req. Nos. 14 and 15.) This Request is thus duplicative, and to the extent Request No. 37 could be interpreted as requiring more, it is overbroad.

In addition, there is no conceivable basis for stating that documents showing the degree of care and the level of sophistication of customers (third parties) could have any probative relationship to MTS' own intent.

**REQUEST NO. 38:**
All documents that show the price charged to consumers of Defendant's nanomechanical test instruments.

**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims this request is relevant to lost profits. (Hysitron's Mem. Supp. Mot. Compel at 27.)

In response, MTS incorporates the arguments presented in Sec. II(B)(ii)-(iii) above. MTS has already agreed to produce documents sufficient to identify every sale of the allegedly infringing devices; documents sufficient to show the gross, operating, and net revenues relating to MTS' sales of the allegedly infringing devices; and documents sufficient to show the gross, operating, and net profits relating to MTS' sales of allegedly infringing devices. (*See* Lorentz Aff. Ex. 1, MTS' Resp. Hysitron's First Set of Doc. Req. Nos. 13, 17, 18.) To the extent Request No. 38 could be interpreted as requiring more, it is overbroad. The price MTS charged for its

**REQUEST NO.39:**
All Documents relating to Defendant's enforcement of its marks against third parties who use Defendant's trademark in connection with keyword advertising.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO.40:**
All Documents relating to Defendant's enforcement of its marks against third parties who use Defendant's trademark in connection with metatags.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO.41:**
All Documents relating to Defendant's enforcement of its marks against third parties who use Defendant's trademark in connection with organic search marketing. For the purpose of this Request, "organic search marketing" is defined as "obtaining results in a search engine that are not sponsored."
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims that Requests 39-41 are relevant to MTS' sophistication and willfulness in using Hysitron's mark. (Hysitron's Mem. Supp. Mot. Compel at 30-31.) Hysitron also claims that these requests are relevant to likelihood of confusion. (*Id.*)

In response, MTS incorporates the arguments presented in Sec. II(B)(i) and (iii) above. MTS' own trademark enforcement activities concerning parties, trademarks, words and/or and terms with no relation to "hysitron" are not relevant to the limited question of whether or not an appreciable number of consumers would be confused by MTS' use of the term "hysitron" in keyword advertising. Moreover, meta-tags and organic search marketing are distinctly different from keyword advertising. This case does not involve meta-tags nor organic search marketing, as Hysitron has admitted, and thus these Requests are not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO.42:**
All Documents relating to any plans to expand the present use of keyword advertising to any other search engine or third party website.
**OBJECTION:**
See General Objection No. 10. Defendant objects to this Request on the grounds it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

Hysitron claims this request is to its trademark claim because it could apparently be probative of MTS' intent and the likelihood of confusion. (Hysitron's Mem. Supp. Mot. Compel at 32.) Hysitron also claims that these requests are relevant to likelihood of confusion because they demonstrate MTS' intent. In response, MTS incorporates the arguments presented in Sec. II(B)(i)-(iii) above.

MTS has discontinued use of its Sponsored Link, and has no plans to and does not intend to use "hysitron" in Sponsored Link advertising in the future. Further, any future plans for keyword advertising cannot be relevant to whether or not a likelihood of confusion existed during the discrete period in time in the past when MTS used keyword advertising with the term "hysitron." MTS should not be required to respond to this request because it is not reasonably calculated to lead to the discovery of relevant and admissible evidence.

## CONCLUSION

For the reasons discussed above, MTS respectfully requests that its Motion for Protective Order be granted, or in the alternative, that the Court stay discovery of these issues pending a resolution of its Motion for Partial Summary Judgment. MTS further urges the Court to deny Hysitron's Motion to Compel.

Respectfully submitted,

Dated:  April ___, 2008          WINTHROP & WEINSTINE, P.A.


                                 By: _____
                                    David P. Pearson, #84712
                                    William A. McNab, #320924
                                    Brent A. Lorentz, #0386865
                                 Suite 3500
                                 225 South Sixth Street
                                 Minneapolis, Minnesota 55402
                                 Tel:     (612) 604-6400
                                 Fax:     (612) 604-6800
                                 *Attorneys for MTS Systems Corporation*

3737830v4