IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HYSITRON INCORPORATED,<br>a Minnesota corporation, | Civil Action No. 07 CV 1533 ADM/AJB |
| Plaintiff, | |
| v. | |
| MTS SYSTEMS CORPORATION,<br>a Minnesota corporation, | |
| Defendant. | |

**PLAINTIFF HYSITRON INCORPORATED'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER, OR IN THE ALTERNATIVE, TO STAY DISCOVERY PENDING DISPOSITION OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Allen W. Hinderaker #45287
Tong Wu #0288974
Brian Platt *pro hac vice*
MERCHANT & GOULD P.C.
80 South Eighth Street, #3200
Minneapolis, MN 55402-4131
Telephone No.: 612.332.5300
Facsimile No.: 612.332.9081

**ATTORNEYS FOR PLAINTIFF HYSITRON INCORPORATED**

Plaintiff Hysitron Incorporated ("Hysitron") respectfully submits this memorandum of law in opposition to Defendant MTS Systems Corporation's ("MTS") motion for protective order, or in the alternative, to stay discovery.

**INTRODUCTION**

Hysitron seeks evidence and information in MTS' possession to prove Hysitron's patent and trademark claims. The discovery at issue is relevant to both. And, with respect to the trademark claims specifically, the Rules do not permit MTS to make use of the HYSITRON mark for its own commercial gain while simultaneously refusing discovery on the same subject. Furthermore, and contrary to its representations, MTS continues to use the HYSITRON mark even after the filing of this motion for protective order, and after advising Hysitron and the Court that it had ceased use of the mark.[1]

As stated, the discovery sought by Hysitron relates to Hysitron's pending patent and trademark claims. Additionally, MTS' motion for partial summary judgment directed at the trademark claims is pending. MTS refuses to provide discovery directly relevant to the trademark claims while simultaneously contending it should be granted summary judgment, an absolutely untenable position. Hysitron respectfully requests that the motion for protective order, or in the alternative a stay, be denied and that MTS be compelled to produce the requested documents.

This opposition memorandum responds only to MTS' motion for protective order, or in the alternative, for a stay of discovery. Pursuant to D. Minn. LR 7.1(a), Hysitron

---

[1] MTS' continued use of the HYSITRON mark was noted in Hysitron's Memorandum of Law in Support of Motion to Compel, and the Platt Declaration, filed April 1, 2008.

makes no reply to MTS' opposition to Hysitron's motion to compel, which was included in MTS' combined filing.

## PROCEDURAL BACKGROUND

Hysitron served its Second Set of Requests for Production of Documents to Defendant on January 4, 2008. (Declaration of Brian N. Platt in Support of Motion to Compel Documents ("Platt Decl.") ¶ 4.) MTS served its responses on February 22, 2008. (Id. Ex. 3.) MTS' discovery responses did not include any substantive response for document requests 5 and 9-42. (Id. Ex. 3.)

On March 19, MTS and Hysitron held a Rule 37 meet-and-confer telephone conference to resolve these discovery issues. (Id. ¶ 5.) The parties held a second Rule 37 meet-and-confer telephone conference on March 27, in which MTS agreed to provide responses for Request Nos. 11, 12, 14, and 15.

On April 17, 2008, more than two weeks after the filing of Hysitron's Motion to Compel Documents, MTS agreed to provide documents responsive to Request Nos. 10 and 18-21. (Declaration of Brian N. Platt in Opposition to Motion for Protective Order ("Supp. Platt Decl.") Ex. 1.) At issue now are document requests 5, 9, 13, 16, 17, and 22 – 42. MTS continues to use the HYSITRON mark to sell MTS products through sponsored link advertising. (Supp. Platt Decl. Ex. 2.)

## BACKGROUND

MTS purchased the keyword HYSITRON for use as a sponsored link from Google. (See Johns Decl. ¶ 12.) That purchase triggers advertisements to appear on Google's search results based on the key terms purchased. A purchase of the key term

2

"hysitron" will return an advertisement when a user searches for that term. Purchasing an advertisement from Google, however, does not in any way limit the search results to Google.com. Rather, advertisements triggered by key terms purchased through Google also displayed on numerous third party websites.

These third party websites are not bound to a specific format in which to display the advertisements. The third party websites may re-format the Google advertisements and display them in a manner that matches other non-sponsored search results, or incorporate the advertisements within the content of their own websites. Consequently, Internet users searching for "Hysitron" are presented with links to MTS' website in a variety of formats. Many of those links are embedded within the results pages of third-party websites. Examples showing MTS' advertisements on Google, as well as a few third-party websites, are shown below:



(Am. Compl. ¶ 34 (www.google.com)).



(Supp. Platt Decl., Ex. 3 (www.webcrawler.com).)



(Supp. Platt Decl., Ex. 4 (www.excite.com).)



(Supp. Platt Decl., Ex. 6 (www.dogpile.com)).)

These references are mere examples of the numerous ways MTS has taken Hysitron's trademark and generated advertisements based on Hysitron's coined trademark. Moreover, as shown in the Webcrawler, Excite, and Dogpile examples, the MTS advertisement is not distinguished as a sponsored link: the advertisements on these websites are incorporated within the regular search results. Moreover, these results show that the key term "hysitron" is "sponsored by" the website located at www.mtsnano.com, creating the impression that MTS is in some way affiliated or connected with Hysitron.

The intent behind MTS's use of the "hysitron" mark to generate its advertisements can only be to get consumers to click on the advertisement. Because the format in which the ads are displayed creates the impression that MTS is connected to the search term "hysitron," consumers are likely to click on the advertisement to learn more information about MTS. At that point, MTS has effectively confused the consumers into avoiding Hysitron's official website, and caused the consumers to visit MTS' website. The

consumers may never know the parties are not related. Moreover, MTS has used Hysitron's mark to gain a customer or potential customer. The documents showing the extent to which this activity occurs are solely in MTS' possession. MTS should not be allowed to hide behind the facts of its misconduct.

MTS' conduct continues, causing a likelihood of consumer confusion. Despite MTS' false statement that it had stopped using the HYSITRON mark in connection with sponsored link advertising (as shown above), (see Platt Decl. Ex. 1), Hysitron's investigation revealed continued use. MTS had <u>not</u> stopped using the HYSITRON mark for sponsored link advertising. (Platt Decl. Ex. 2; Am. Compl. ¶ 34.) Continued investigation shows MTS' ongoing use of the HYSITRON mark. (Supp. Platt Decl. Ex. 2.) MTS should be required to provide discovery to show the extent of its infringement, and to detail its process of presenting MTS' advertisements based on Hysitron's trademark.[2]

## ARGUMENT

**I. MOTION FOR PROTECTIVE ORDER.**

Consideration of a motion for protective order, or to stay discovery, is a matter wholly within the discretion of the Court. Sanden v. Mayo Clinic, 495 F.2d 221, 228 (8th Cir. 1974) ("[T]he granting or denial of a protective order is within the discretion of the trial court . . . ."). The Court's discretion is guided by Rule 26, which grants the right to discovery of "any matter, not privileged, that is *relevant* to the claim or defense of any

---

[2] Except as discussed during the unsuccessful settlement negotiations mediated by the Court, MTS has offered no assurances, let alone made a binding commitment, regarding its future use of Internet advertising. (See Platt Decl., Ex. 1.)

party." Fed. R. Civ. P. 26(b)(1) (emphasis added). A party seeking a protective order must show "good cause" for its issuance. Fed. R. Civ. P. 26(c).

"Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003). Even when "good cause" is shown, the Court should balance the relative burden on the parties. See, e.g., In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 623 (10th Cir. 1982).

Nearly all of the document requests are relevant to Hysitron's proof of patent damages. All of the document requests are also relevant to Hysitron's proof of its trademark claims. Furthermore, MTS cannot not be permitted to stonewall on discovery while simultaneously contending Hysitron's trademark claims should be dismissed on summary judgment. MTS' legal challenge to the trademark claims is simply wrong. Indeed, precedent in this judicial district (Tunheim, J.), and other districts, rejects MTS' position. (See infra, at 8-12.) Hysitron's motion to compel should be granted in full.

**A.    Patent Infringement.**

Hysitron's pending claims for infringement of U.S. Patent Nos. 6,026,677 ("the '677 patent") and 5,553,486 ("the '486 patent") provide substantial basis for the requested discovery. MTS ignores the patent claims and their relevance in its motion for protective order. (See MTS' Mem. Law Supp. Mot. Prot. Ord. at 1-15.) Because the requested protective order would preclude discovery relevant to Hysitron's claims for patent infringement, the Court should decline its entry.

### 1. Nearly All of Hysitron's Requests are Relevant to Patent Damages.

The following requests are relevant to Hysitron's patent damages. The discovery is directed to issues of lost profits, price erosion, and the competitive relationship between the parties. Hysitron is entitled to present the jury with the facts that make the proof of its contentions compelling.

- **Request No. 5. Trademark Searches or Investigations.** The relevant market for products, including competitive relationship based on the "totality of the circumstances," is relevant to patent damages. Bic Leisure Prods., Inc. v. Windsurfing Int'l Corp., 1 F.3d 1214, 1218 (Fed. Cir. 1993).

- **Request No. 9. Channels of Trade.** The normal channels of trade for distribution are relevant to patent claims. Bic Leisure, 1 F.3d at 1218.

- **Request No. 13 Target Market.** Lost profits patent damages are available where infringing products compete in the same market. Id.

- **Request No. 17 Use of "Hysitron".** Advertising, marketing, and sales are part of the "totality of the circumstances" considered in evaluating lost profits damages. TWM Mfg. Co., Inc. v. Dura Corp., 789 F.2d 895, 902 (Fed. Cir. 1986).

- **Request Nos. 22-33. Third Party Advertising.** Third party advertising by MTS using the "Hysitron" mark is part of the "totality of the circumstances" considered in evaluating lost profits damages. See id.

- **Request Nos. 34, 35. Website Marketing.** MTS' efforts to market its website www.mtsnano.com in competition with Hysitron is part of the "totality of the circumstances" considered in evaluating lost profits damages. See id.

- **Request No. 38. Pricing.** MTS' pricing, and Hysitron's competition with a larger infringer, is relevant to lost profits damages. Id. at 902.

- **Request No. 42. Keyword Advertising Plans.** MTS' plans to expand keyword advertising, as part of a plan to compete in the marketplace, are relevant to lost profits damages, and to Hysitron's burden competing with MTS. See id.

(See Hysitron Mem. Law Supp. Mot. Compel at 10-32).

The requested protective order would unfairly limit Hysitron's access to discovery relevant to its patent claims. It should be denied.

Indeed, MTS implicitly concedes the relevance of these requests to the patent claims, but contends it has (or will) produce documents sufficient for Hysitron's needs. Based on seven document requests, MTS contends it has produced documents which "are more than ample to calculate Hysitron's lost profits claim." (See MTS Mem. Law Supp. Mot. Prot. Ord. at 18-19). MTS does not have the right to arrogate to itself the scope of Hysitron's discovery. Nor is MTS entitled to cherry-pick its documents for selective production, while withholding documents that damage its case. MTS ignores the fact that the lost profits determination must be made in the light of the totality of the circumstances between the parties. TMW Mfg. Co., 789 F.2d at 902. Refusing to provide discovery because MTS thinks it has produced "ample" documents is self-serving and improper.

### B. Trademark Infringement.

MTS' allegation that Hysitron's trademark claims are "vexatious," while MTS makes use of the HYSITRON mark, shows chutzpah. See Dainippon Screen Mfg. Co. v. CFMT, Inc., 142 F.3d 1266, 1271 (Fed. Cir. 1998) (describing as "chutzpah" the "behavior of a person who kills his parents and pleads for the court's mercy on the ground of being an orphan"). Furthermore, its contention that it has a defense to these claims is insufficient grounds to resist discovery. See, e.g., Bruckelmyer v. Ground

9

Heaters, Inc., Case. No. C 02-1761 DWF/RLE, 2003 U.S. Dist. LEXIS 11024, *5-6 (D. Minn. June 5, 2003) (declining to stay discovery in favor of dispositive motions).

### 1. The Scope of Requests Relating to Trademark Claims is Appropriately Broader than Patent-related Requests.

MTS defined the scope of trademark discovery by using the HYSITRON mark to market its directly competing products. (Supp. Platt Decl., Exs. 2-5). The scope of MTS' use of the Hysitron mark extends beyond the subject matter of Hysitron's patent claims. Discovery related to trademark infringement puts at issue MTS' marketing of all of its products and services. That discovery is appropriately broader in scope: MTS defined the scope of this discovery by its decision to use the HYSITRON mark to promote its own products. MTS' suggestion that Hysitron wants to "have it both ways," and that Hysitron's position is "inconsistent with the position it took in objecting to MTS' discovery requests" is wrong. (MTS' Mem. Law Supp. Mot. Prot. Ord. at 19-21.) The discovery related to the patent claims is appropriately limited to the asserted patents and embodiments thereof. (Order, docket no. 72, at 2-4).

### 2. Hysitron's Right to Relevant Discovery.

Hysitron's claims for trademark infringement remain pending. MTS continues to trade on the renown and reputation of HYSITRON to sell MTS products. (Platt Decl., Ex. 2; Supp. Platt Decl., Ex. 2.) A promise (even when not hollow) to cease infringement does not unilaterally stop the discovery process: Hysitron has a right to seek discovery to prove its claims and obtain a permanent injunction.

MTS' (false) contention that it has ceased use of the HYSITRON mark is meaningless. Nothing restricts MTS' future conduct. Indeed, in its brief, MTS characterizes an injunction as "unnecessary" against conduct that is not "*likely* to occur in the future." (MTS' Mem. Law Supp. Mot. Prot. Ord. at 12-13 (emphasis added).) With due respect, not "likely" to occur is not good enough. The law is clear:

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.

United States v. W. T. Grant Co., 345 U.S. 629, 632 (1953). The "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." See Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006) (internal quotations omitted).

Furthermore, MTS' statement that it has stopped using the term "hysitron" is false. (See Johns Decl. ¶ 12; see also Supp. Platt Decl., Ex. 2.) The law recognizes that a promise to stop infringing conduct is worth little. A permanent injunction, and the subsequent enforcement powers of the Court, is the appropriate remedy for infringing conduct. The purpose of Hysitron's discovery is proper.

MTS turns Hysitron's motivation on its head, arguing that Hysitron pursues trademark claims not "for a substantive purpose . . . but rather, to recover attorneys' fees." (MTS' Mem. Law Supp. Mot. Prot. Ord. at 3.) Hysitron is neither so imprudent, nor wealthy, to pursue discovery for discovery's sake; neither is Hysitron so imprudent as to pursue its trademark claims on the prospect that the Court will find this case "exceptional" and award attorneys' fees under 15 U.S.C. § 1117(a). Rather, Hysitron

seeks what it is entitled to under the law: injunctive relief forbidding MTS from trading on the renown and reputation of HYSITRON. It will also seek an award of attorneys' fees because MTS' infringement is "exceptional."

Notably, MTS has propounded one-hundred and one separate Requests for documents. Some requests are breathtaking in scope. By contrast, MTS proposes that Hysitron's twenty-nine requests provide "more than ample" discovery. (See MTS Mem. Law Supp. Mot. Prot. Ord. at 18-19). The unfairness in the suggestion is self-evident.

### 3. There is "Use In Commerce" of the HYSITRON Mark As a Matter of Law.

The facts that MTS concedes demonstrate "use in commerce":

> Approximately two years ago, MTS obtained the keyword "hysitron" from Google, which triggered MTS' Sponsored Link advertisement to appear on the search result page below the label "Sponsored Link" when a user typed the term "hysitron" into the search engine.

(MTS' Mem. Law Supp. Mot. Prot. Ord. at 6; Johns Decl. ¶ 12.) As a matter of law, that is "use in commerce" within the meaning of the Lanham Act. As held by Judge Tunheim, "Based on the plain meaning of the Lanham Act, *the purchase of search terms is a use in commerce.*" Edina Realty, Inc. v. TheMLSonline.com, 80 U.S.P.Q.2D (BNA) 1039, *9-10 (D. Minn. 2006) (emphasis added).[3]

---

[3] MTS proffers an incorrect interpretation of Edina Realty, distinguishing on the purported presence or absence of use of the mark in the sponsored link. (MTS' Mem. Law Supp. Mot. Prot. Ord. at 10-11.) This interpretation is wrong:

> The advertising text has changed over time. In spring 2005, plaintiff persuaded Google to forbid defendant from using the phrase Edina Realty in its advertising, which Google allowed for the two previous years.

Other Courts have reached a similar result on the question of "use in commerce." Buying for the Home, LLC v. Humble Abode, LLC, 459 F. Supp. 2d 310, 324 (D.N.J. 2006) ("[T]he alleged purchase of the keyword was a commercial transaction that occurred 'in commerce,' trading on the value of Plaintiff's mark."); Google Inc. v. Am. Blind & Wallpaper Factory, Inc., 2007 U.S. Dist. LEXIS 32450 (N.D. Cal. Apr. 18, 2007) ("This Court thus concludes, as did the courts in GEICO, 800-JR Cigar, Humble Abode, Edina Realty, and Wentworth, that the sale of trademarked terms in the [Google] AdWords program is a use in commerce for the purposes of the Lanham Act."); see also Brookfield Communs., Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1064 (9th Cir. 1999) (finding Internet metatags to be a use in commerce).

There can be no dispute: "the purchase of search terms is a use in commerce." Edina Realty, 80 U.S.P.Q.2D (BNA) 1039, at *9-10.[4] MTS purchased HYSITRON as a search term: it is a "use in commerce." Id.

---

Edina Realty, 80 U.S.P.Q.2D (BNA) 1039, *4 n.1 (emphasis added). The opinion specifically noted "Edina Realty" was not used in the sponsored link at the time of decision. See id. How the trademark is used (or not) in the sponsored link bears on the issue of likelihood of confusion. It is irrelevant to the issue of "use in commerce." The metatag cases, on which Judge Tunheim relied, underscore this conclusion. Misleading metatags are invisible to the web surfer, but are visible (and misleading) to search engines. Brookfield Communs., 174 F.3d at 1064.

[4] Judge Tunheim rejected defendant's argument that "its purchase of search terms is not a 'use in commerce' because there is no public promotion of the mark during the search transaction." Edina Realty, 80 U.S.P.Q.2D (BNA) 1039, at *9-10.

### 4. MTS' Confuses the Question of Confusion.

The question is not, as MTS contends, whether a "likelihood of confusion" existed at the *time of sale*. The issue in a case of "initial interest confusion" is whether a "defendant uses [a] plaintiff's trademark in a manner calculated to capture initial consumer attention." Conversive, Inc. v. Conversagent, Inc., 433 F. Supp. 2d 1079, 1093 (C.D. Cal. 2006) (citing Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1018-19 (9th Cir. 2004)). The Lanham Act protects against initial interest confusion regardless of whether there is confusion at the time of purchase. Grotrian, Helfferich, Schulz. TH. Steinweg NACHF. v. Steinway & Sons, 523 F.2d 1331, 1342 (2d. Cir. 1975).

Initial interest confusion may constitute trademark infringement even in the absence of a consummated sale transaction. Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1405 (9th Cir. 1997) (finding initial interest confusion where use of the mark "capture[s] initial consumer attention, even though no actual sale is finally completed."). Moreover, it is not obviated by the "sophistication and expertise" of purchasers, as MTS would suggest. For example, in Grotrian, the Court commented on the thought processes of potential buyers of "Steinweg" pianos:

> Misled into an initial interest, a potential Steinway buyer may satisfy
> himself that the less expensive Grotrian-Steinweg is at least as good,
> if not better, than a Steinway.

365 F. Supp. at 717. The Court then further commented on the harm of initial interest confusion:

14

> Deception and confusion thus work to appropriate [Steinway's] good will. This confusion, or mistaken beliefs as to the companies' interrelationships, can destroy the value of the trademark which is intended to point to only one company. Thus, the mere fact that purchasers may be sophisticated or discriminating is not sufficient to preclude the likelihood of confusion.

Id.

Moreover, the Courts have held that the "use of the Internet as a marketing tool exacerbates the likelihood of confusion," given that "entering a web site takes little effort – usually one click from a linked site or a search engine's list . . . ." PACAAR Inc. v. TeleScan Technologies, LLC, 319 F.3d 243, 252 (6th Cir. 2003) (overruled on other grounds) (quoting Brookfield, 174 F.3d at 1057). Accordingly, "[w]eb surfers are more likely to be confused" than would traditional "brick-and-mortar store" customers. Id.

The likelihood of confusion analysis in this initial interest confusion case is complicated by MTS' refusal to provide relevant discovery. Evidence of initial interest confusion exists: if a user searches HYSITRON, but selects the "MTS Nano" link, it is evidence of initial interest confusion. MTS, at a minimum, should have records from Google detailing the number of clicks on its advertisements, when those clicks occurred, and general information relating to where the clicks originated. MTS should also have internal website statistics detailing information about who entered its website from clicking on the Google advertisements, including the third party websites where the Google advertisements appeared.

Information related to third party websites is just as relevant as the Google statistics, because MTS' advertisements are triggered on those third party websites based

15

on the HYSITRON mark. Document Request No. 22 lists examples of the third party websites where Hysitron has located MTS' advertisements. MTS should have the records that show any other third party website. MTS' refusal to provide the information is inexcusable.

### 5. MTS' Evidence of Confusion.

Notwithstanding its refusal to produce relevant information that bears directly on proof of confusion, MTS argues that Hysitron's failure to prove actual confusion (while MTS steadfastly withholds evidence) should be given substantial weight. (MTS' Mem. Law Supp. Mot. Prot. Ord. at 11-12.) Ordinarily, "[b]ecause of the difficulty in garnering . . . evidence [of actual confusion], the failure to prove instances of actual confusion is not dispositive." E.g., AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 353 (9th Cir. 1979).

In this case, any evidence of actual confusion is in MTS' possession. It should be required to respond to Hysitron's discovery requests without further delay. To stonewall discovery and then contend there is no proof is untenable.

### 6. MTS' Intent Argument Misses the Mark.

MTS' argument on "intent" is misdirection. Undoubtedly it "intended" to purchase HYSITRON as a keyword from Google. (MTS' Mem. Law Supp. Mot. Prot. Ord. at 16.) But, the relevant intent is the intent to derive a benefit from the reputation of another. Escercizio v. Roberts, 944 F.2d 1235, 1243 (6th Cir. 1991); accord SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980) ("Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion . . ."). The documents in the possession of MTS, including internal MTS

16

communications, will be directly relevant to proving the "nefarious" or "bad" intent that is probative in a trademark case. E.g., Tdata Inc. v. Aircraft Tech. Publrs., 411 F. Supp. 2d 901, 912 (S.D. Ohio 2006) ("nefarious" intent); Conversive, 433 F. Supp. 2d at 1093 ("bad intent").

MTS use of the HYSITRON mark "is not in a good faith, descriptive sense, but is in a bad faith, bait-and-switch, create-initial-confusion sense." Tdata, 411 F. Supp. 2d at 912. "[W]here the alleged infringer knowingly adopts a mark similar to another's, there is a presumption that the public will be deceived." Conversive, 433 F. Supp. 2d at 1093. HYSITRON is a coined term and has no meaning other than as a trademark: the symbol of the renown and reputation of Hysitron. Documents that bear on MTS' subjective intent when it purchased the HYSITRON mark from Google are absolutely key: those documents should be produced. MTS' motion for a protective order or, in the alternative, a stay should be denied.

## II. ALTERNATIVE MOTION TO STAY PROCEEDINGS.

In the alternative, MTS moves to stay these proceedings pending the outcome of its dispositive motion. The power to stay proceedings is incidental to the Court's power to manage its docket, conserve judicial resources, and provide a just determination. Kemp v. Tyson Seafood Group, Inc., 19 F. Supp. 2d 961, 964 (D. Minn. 1998). The Court should decline to enter a stay: MTS continues to infringe, Hysitron seeks a valid remedy, and MTS' position on the merits is untenable. See Bruckelmyer, Case. No. C 02-1761 DWF/RLE, 2003 U.S. Dist. LEXIS 11024, *5-6 (declining to stay discovery in favor of dispositive motions).

MTS' proffered grounds for refusing discovery is its view of the merits: this is legally insufficient. Moreover, MTS has failed to show likely success on the merits, or a likely narrowing of issues. MTS continues to infringe the HYSITRON mark—even <u>after</u> filing these motions. Its past and present use of the HYSITRON mark is a "use in commerce," and document discovery, including that directed at MTS' bad intent, relates directly to proof of likely confusion. <u>See</u> <u>Edina Realty</u>, 80 U.S.P.Q.2D (BNA) 1039, *9-10. MTS' allegation that Hysitron's claims are "without merit" is simply incorrect. (MTS' Mem. Law Supp. Mot. Prot. Ord. at 15.) MTS infringes. Hysitron is entitled to an injunction.

MTS also notes the discovery period and suggests there is "ample time" for discovery after summary judgment. (<u>See</u> MTS' Mem. Law Supp. Mot. Prot. Ord. at 15.) This suggestion ignores the ongoing burden of delaying discovery, and the relevance of this discovery to MTS' pending dispositive motions. If MTS' dispositive motion is not denied outright, further discovery under Rule 56(f) seems likely. <u>See</u> Fed. R. Civ. P. 56(f). A stay of discovery might work to delay consideration of the motion for partial summary judgment, by preventing discovery of the relevant facts.

The Court should deny MTS' requested stay. MTS fails to proffer any basis for staying discovery. MTS has already put off—through May—discovery propounded in January. The Court should exercise its discretion to allow discovery to proceed.

## **CONCLUSION**

For the reasons stated, Hysitron respectfully urges the Court to deny MTS' motion for protective order and deny MTS' alternative motion to stay discovery.

Dated: April 24, 2008

By: /s/ Brian N. Platt
Allen W. Hinderaker #45287
Tong Wu #0288974
Brian N. Platt *pro hac vice*
MERCHANT & GOULD P.C.
80 South Eighth Street, #3200
Minneapolis, MN 55402-4131
Telephone No.: 612.332.5300
Facsimile No.: 612.332.9081

**ATTORNEYS FOR PLAINTIFF HYSITRON INCORPORATED**