UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HYSITRON INCORPORATED,<br>a Minnesota corporation,<br><br>Plaintiff,<br>v.<br><br>MTS SYSTEMS CORPORATION,<br>a Minnesota corporation,<br><br>Defendant. | Civil No. 07-cv-01533 (ADM/AJB)<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR STAY PENDING PATENT REEXAMINATION** |

## INTRODUCTION

The Court denied MTS' initial motion for a stay pending patent reexamination for two main reasons. First, the Court was uncertain whether the reexamination would proceed and, if it did, whether the reexam would have any substantive impact on the issues in this case. Second, Hysitron's trademark infringement claims would be unaffected by the reexam and the Court was concerned that this alleged wrongful conduct would continue during the pendency of the stay. Neither reason is now valid because the "world has changed" since the Court denied MTS' initial motion for a stay. These changes justify this renewed motion and the grant of a stay.

When the Court denied MTS' initial Motion, MTS had merely filed *ex parte* reexamination petitions seeking reexamination of the patents-in-suit in this case, and the United States Patent and Trademark Office ("USPTO") had not yet acted on MTS' petitions. The Court was uncertain that the reexams would bear upon the merits of this case. It is now clear that they will. The USPTO granted MTS' reexam petitions for both

U.S. Patent No. 5,553, 486 (the "'486 Patent") and U.S. Pat. No. 6,026,677 (the "'677 Patent"). More importantly, the USPTO recently issued a significant interpretation that limits the scope of the '486 Patent and which is likely dispositive in MTS' favor on the issue of infringement. The '677 Patent reexam is still underway, but it is likely that the outcome will have the same important impact regarding the scope of that patent.

Other events have also significantly altered the motion landscape. The alleged trademark infringing Sponsored-Link Internet advertising has ceased.[1] To the extent the Court denied MTS' prior motion based on concerns that a stay would delay the adjudication of those claims and allow allegedly wrongful advertising to continue (though Hysitron never sought preliminary injunctive relief), that concern has been alleviated. Finally, MTS has sold its entire MTS Nano Instruments division, which developed and sold the allegedly infringing product. As a consequence, this case is now largely about past damages, not future infringement.

The USPTO's recent limitation of the '486 Patent in light of previously undisclosed prior art demonstrates that in this case the patent reexam process is critically important. If a stay is not granted and the reexam process unfolds in tandem with the *Markman* process, various undesirable, wasteful or prejudicial scenarios are likely to follow. First, if this lawsuit proceeds, the parties and the Court will not benefit from the important expertise which the USPTO brings to bear on claim construction issues. Second, the reexam may be completed during or after the *Markman* process in this

---

[1] *See* Defendant's Memorandum of Law In Support of Motion For Partial Summary Judgment, Defendant's Memorandum of Law in Opposition to Hysitron's Motion to Compel Discovery, and supporting affidavits of Margaret Johns and Brandon Rochelle. (Docket Nos. 90, 92, 97, and 105.)

lawsuit, in which case the entire claim construction process may have to begin anew, resulting in a substantial waste of the parties' and the Court's time, money and resources. Claim construction will benefit from a USPTO determination of the true scope of the patents in light of the prior art. Third, the case is now in the awkward posture in which one of the two patents-in-suit has been reexamined, the other patent has not, leaving the parties and the Court to speculate about the outcome of that process. Fourth, the final reexam certificate may not be issued until after the trial, which would be highly unfair to MTS because as the recent USPTO decision demonstrates, the reexam will likely limit the scope of these patents, precluding a finding of infringement.

Given the significant changes in the posture of this case, a stay of this litigation pending completion of the reexam process is warranted.

## STATEMENT OF FACTS

### I. Posture Of The Case.

Hysitron filed its Amended Complaint on May 29, 2007. Hysitron alleges patent infringement and unfair competition based on trademark infringement. (Am. Comp. at ¶¶ 6-59.) The patents-in-suit relate to an apparatus that generates an atomic level image of the topography of a specimen sample following micro-indentation hardness testing. The claimed invention is used in conjunction with well-known prior art in the field: the scanned-probe microscope (either the AFM or STM electron microscope) and micro-indentation hardness testing apparatus.

With respect to the trademark infringement claims, Judge Montgomery has taken MTS' Motion for Partial Summary Judgment under advisement. (Docket Nos. 87, 88.)

Significantly, the allegedly infringing conduct has ceased. MTS has submitted sworn testimony showing that the Sponsored-Link ad in question has been discontinued. (*See* Declaration of Margaret Johns In Support Of Defendant's Motion For Partial Summary Judgment, ("Johns Decl.") (Docket No. 92) at ¶ 12; Declaration of Brandon Rochelle ("Rochelle Decl.") (Docket No. 105) at ¶ 5.) The Internet ad on which this claim is based no longer appears in a Google search or otherwise on the Internet. (Rochelle Decl. at ¶ 5.) If one conducts an Internet search on Google today using the keyword "hysitron," the search does not generate any link to MTS or its Sponsored-Link ad.

This lawsuit is still in the document discovery phase. The parties produced documents related to the patent claims. However, no depositions have been taken. The *Markman* hearing has not yet been scheduled, and a *Markman* briefing schedule has not been established.

## II.     Reexamination Proceedings Before The USPTO.

On May 30, 2007 and June 3, 2007, MTS filed requests for *ex parte* reexamination of the '486 Patent and the '677 Patent. (Declaration of Brent Lorentz in Support of Renewed Motion For Stay ("Lorentz Decl.") Exs. 3 and 4.) MTS sought reexamination of all the claims encompassed in this lawsuit. (*Id*.) In August 2007, the USPTO granted the requests for reexamination after determining that the *ex parte* requests raised substantial questions of patentability. (*Id*.) Both patents have been in reexam since August 2007. (*Id*.)

One of the significant prior art references submitted to the USPTO in support of the reexam petition is a 1989 research article entitled A Shear Model for STM Imaging of

<u>Layered Materials</u> by J.D. Todd and J.B. Pethica, published in the Journal of Physics: Condensed Matter, Vol. 1, pp. 9823-9831 (1989) (the "Todd Reference") (Lorentz Decl. <u>Ex. 6</u>). The Todd reference was published five years before the filing of the original application ultimately resulting in the patents-in-suit. The Todd reference disclosed a device which included an indentation device used with an STM microscope and which generated atomic level images of the sample surface in conjunction with the indentation process. (*See id.*)

Figure 1 of the article disclosed a schematic depiction of the device:



FIGURE 1

(Todd Reference at p. 9825, Lorentz Decl. <u>Ex. 6</u>.)

The Todd reference brought together electron microscopy electronics and nano-indenter technology to conduct in situ imaging during indentation, just like the invention claimed here. ('486 Patent at col.1 ln.14-18, Lorentz Decl. Ex. 1.) The text describing the device disclosed in the Todd reference demonstrates the significance of this prior art to the patents-in-suit: the device is a "nano-indenter" which is "modified for STM" for "imaging" materials. In sum, the Todd reference disclosed a scanned probe microscope apparatus having a probe and a scanning head operably arranged for generating an image of the sample in conjunction with indentation. (*See* Todd Reference at p. 9823 and Fig. 1 at p. 9825, Lorentz Decl. Ex. 6.) This is the essence of the inventions claimed in the patents-in-suit.

In its May 5, 2008 Notice of Intent to Issue Ex Parte Reexamination Certificate for the '486 Patent (the "Notice") (Lorentz Decl. Ex. 5), the USPTO recognized the importance of the Todd reference. Although the Notice did not invalidate the '486 Patent, it established a specific and important limitation on the scope of the Patent's claims. This limitation related to the location of the "spring means" in the invention covered by the '486 Patent. The examiner distinguished the Todd reference by concluding that it did not position the leaf springs of the central plate within the "pick-up" plate. (*Id.* at 3.) The USPTO determined that the Todd reference actually "taught away" from the claimed invention because it disclosed leaf springs that were outside, not "within," the pick-up plate. (*Id.*) As depicted in Figure 1, the "leaf springs" of Todd's "model for STM imaging" are outside the 3-plate capacitor and are not integral to or within the central plate of the capacitor. This is distinct from the '486 Patent in which the

leaf spring mechanism is integral to and within the center or pick-up plate of the capacitor. (*See* '486 Patent at col.5 ln.46-49, Figure 1, Lorentz Decl. Ex. 1.)

The limitation resulting from the USPTO's distinction between the prior art Todd reference and the '486 Patent is likely dispositive of Hysitron's '486 Patent infringement claims. Hysitron asserts that MTS infringed only one independent claim of the '486 Patent -- Claim 1. Claim 1 contains the following express limitation: "said pick-up plate further including a conductive central plate suspended by spring means between said drive plates." ('486 Patent at col.15 ln.44-46, Lorentz Decl. Ex. 1.) In other words, the pick-up plate of the capacitor element includes a central plate directly suspended by a "spring means." (Notice at 2-3, Lorentz Decl. Ex. 5.) In the MTS device, leaf springs, or spring means, are not suspended by or contained "within" the pick-up plate. Hysitron has acknowledged this in its claim charts. (*See* Hysitron Incorporated's Amended Claim Charts at 4-5, Lorentz Decl. Ex. 7.) Indeed, MTS' "spring means" design is the same as the design disclosed in the Todd reference, a design which the USPTO has now expressly distinguished from Hysitron's '486 Patent. (*Id*.) Thus, the reexam has conclusively differentiated the Todd design (and consequently, MTS' device) from the patented invention, thereby placing MTS' device outside the scope of the '486 Patent.

While the reexamination of the '677 Patent has not yet been completed, the Todd reference is equally relevant there. The Specification and the Figures of the '677 Patent are identical to those of the '486 Patent, and, most importantly, the description and figures pertaining to the central pick-up plate of the force sensor element are identical in each patent. The patented invention in both the '486 and the '677 Patents pertains to and

includes a "force sensor" element, i.e., a capacitor, in which in the central plate is suspended on spring-like members which are four relatively thin L-shaped springs. ('677 Patent, Figure 1, col.5 ln.42-50; *see* '486 Patent, Figure 1, col.5 ln.42-50.) The configuration of this element of the invention is identical in each patent. Further, the '677 Patent claims asserted against MTS include limitations similar, and in some instances identical, to those in the '486 Patent. Independent Claim 7 requires "a pair of capacitive transducers, each transducer including a separate drive plate and a shared pick-up plate movably suspended between the drive plates." (*Id*. at col.15, ln.63-65.) Independent Claim 16 contains the following claim limitations: "... said pick-up plate further comprising a conductive central plate suspended by spring means between said drive plates… ." ('677 Patent, Claim 16.) The Todd reference thus has the same critical relevance to the '677 Patent as it did to the '486 Patent. Assuming consistency in the USPTO's analysis of prior art, then the scope of the '677 Patent claims, just like the scope of the '486 Patent claims, will be significantly impacted by the reexamination. Thus, it is reasonable to expect that the '677 Patent will also be limited by the reexam process.

### III. MTS' Previous Motion For A Stay.

MTS previously filed a motion for a stay pending reexamination of the aforementioned patents on June 6, 2007. (Docket No. 16.) The Court denied the motion, in part because it believed the reexamination would not be determinative of any issues in this case. (Docket No. 37 at 5.) However, the Court's Order predated both the USPTO's grant of MTS' reexam petitions and the USPTO's substantive decision regarding the '486

Patent. As noted above, it is now apparent that the reexam process will be determinative of issues in this case considering the previously undisclosed prior art. While in some cases patent reexamination is merely a ministerial exercise of no import, that is not the case here. Instead, the reexam has had and will have an important substantive impact on the merits of this case.

## ARGUMENT

### I. Legal Standard.

District courts have inherent power to manage their dockets, and the decision to stay a pending case is within the court's sound discretion. *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). To decide a motion to stay, a court considers: (1) whether the stay would simplify the issues of the case; (2) whether discovery is complete and/or a trial date has been set; and (3) whether the stay will result in prejudice or a clear tactical disadvantage to the nonmovant. *In re Cygnus Telecommunications Tech., LLC v. United World Telecom, L.C.,* 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). In addition, where the stay being requested is in connection with a USPTO reexamination, courts also consider the USPTO's technical expertise evaluating patents and prior art. *See Bausch and Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. (BNA) 886, 887 (W.D. Okla. 1985).

Courts have recognized the following benefits resulting from a stay of patent litigation pending the outcome of a USPTO reexamination proceeding:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise. 2. Many

> discovery problems relating to prior art can be alleviated by PTO reexamination. 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed. 4. The outcome of the reexamination may encourage a settlement without the further use of the Court. 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation. 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination. 7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q.2d (BNA) 1889, 1890 (N.D. Ill. 1987). Likewise, when Congress enacted 35 U.S.C. § 301 *et seq.* it "noted its approval of district courts liberally granting stays within their discretion … ." *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 62 (D.N.J. 1992) (quoting 1980 U.S.C.C.A.N. 6460, 6463). The reason for this is the well-recognized benefits that the reexam can bring to the claim construction process of patent litigation.

**II. The Parties And This Court Will Benefit From A Stay Of This Action Until The Re-exam Process Is Concluded.**

A primary reason for granting a stay pending reexamination is that the process will bring clarity and certainty to the claim construction. Where, as here, significant prior art issues are raised, the true scope and meaning of the claims is in flux and in doubt until the reexam is completed. *Target Therapeutics, Inc. v. Scimed Life Sys., Inc.,* 33 U.S.P.Q.2d (BNA) 2022, 2023 (N.D. Cal. 1995). As the *Target* court aptly noted, "The final form of the claims … will remain uncertain until the conclusion of the reexamination procedure. It makes sense to ascertain the ultimate scope of the claims before trying to figure out whether defendants' products infringe the patents-in-suit." *Id*. The reexam process, which allows the USPTO to evaluate the claims in light of previously undisclosed prior

art, results in a more precise definition of the scope of the claims, and the scope of the claims is, of course, critical in every infringement action. *Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 442 (D.N.H. 1997) (granting a stay pending patent reexamination because the reexamination would "more precisely define the scope of [the disputed claim] . . . [which] is central to the resolution of this case"). In addition, the record from the reexamination may be admitted as evidence, providing a "richer prosecution history upon which to base necessary claim construction determinations or reconsideration." *In re Cygnus*, 385 F. Supp. 2d at 1024.

The results of the reexamination can significantly streamline the issues by narrowing or modifying claims. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983), *cert. denied* 464 U.S. 935 (1983); s*ee also Gonnocci v. Three M Tool & Mach., Inc.*, 68 U.S.P.Q.2d (BNA) 1755, 1758-59 (E.D. Mich. 2003) (granting motion to stay and concluding that "the PTO's determination will be beneficial to the efficient resolution of this action."). The court and the parties often benefit from the USPTO's determination of the significance of prior art and whether and how it effects the claims. *Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q. 2d 1633, 1635 (S.D.N.Y. 2000).

The USPTO's reexamination of the '486 Patent has significantly impacted this litigation and similar results can be expected with respect to the '677 Patent. It is now apparent that the record of reexamination will be essential to the claim construction process. *See In re Cygnus*, 385 F. Supp. 2d at 1024. While the USPTO's interpretation and allowance of the claims of the '677 Patent are still pending, it is not in the interests of

the litigants and the Court to invest time and resources in the claim construction process until that process is complete.  *See Softview*, 56 U.S.P.Q.2d at 1635 (finding it "a serious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.").

Hysitron previously opposed a stay by arguing that the reexam would not have any real substantive effect on the lawsuit because infringement and invalidity issues would remain following the reexamination.  Hysitron argued that claims and issues would still remain.  (Docket No. 30 at 11-12.)  Hysitron could not have been more wrong.  The results of the '486 Patent reexamination clearly demonstrate the critical importance of these reexam proceedings to this case.  The USPTO has reviewed an important prior art reference and has issued a substantive decision regarding claim construction that is likely case dispositive.  In short, the reexamination of the '486 Patent has resulted in a prosecution history establishing that the "spring means" contained in MTS' accused product is outside the scope of the '486 Patent, and therefore, MTS' device does not infringe.

### III. The Parties And This Court Will Benefit From The Expertise Of The USPTO.

The parties and the Court will also benefit from the USPTO's technical expertise.  The Court of Appeals for the Federal Circuit has emphasized that one of the intended benefits of the reexam procedure is that it "would allow courts to refer patent validity questions to the expertise of the Patent Office."  *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985).  In providing for reexamination procedures, "[t]he rationale...

[was] to increase the reliability of the PTO's action in originally issuing the [patent-in-suit] by providing for the reexamination of those patents thought doubtful." *Emerson Elec. Co. v. Davoil, Inc.*, 907 F. Supp. 1303, 1304 (E.D. Mo. 1995), rev'd in part on other grounds, 88 F.3d 1051 (Fed. Cir. 1996).[2]

Accordingly, courts overseeing patent infringement litigation have consistently looked to the USPTO's expertise in evaluating the validity of patents and reviewing the prior art. *See GPAC*, 144 F.R.D. at 63 ("In fact, the patent reexamination procedure was clearly intended to provide the federal courts with the expertise of the PTO."); *Bausch & Lomb*, 914 F. Supp. at 953 (same). The PTO's expertise is of particular value here given the highly technical nature of the devices at issue and the plethora of claim terms in dispute. *See, e.g.*, *Lenteck Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1363 (M.D. Fla. 2001) ("[I]n view of the complexity of the underlying issues, the Court and the parties are better served by receiving the technical expertise provided by the PTO.").

It is in the best interests of the parties and the Court to allow the USPTO to finish its expert review of the prior art cited in the reexamination proceedings before undertaking a duplicative review here. The USPTO's review will, at the very least, provide the added benefit of a "richer prosecution history upon which to base necessary claim construction determinations or reconsideration." *In re Cygnus*, 385 F. Supp. 2d at 1024.

---

[2] In its Order granting a stay, the district court in *Emerson* required the patentee to submit some of the accused infringer's court filings to the PTO in connection with the pending reexamination; that portion of the order was subsequently reversed as an impermissible expansion of the district court's powers. *See Emerson Elec. Co., v. Davoil Co.*, 88 F.3d 1051, 1053 (Fed. Cir. 1996).

### IV. Hysitron's Previous Claims Of Undue Prejudice Do Not Favor Denial Of MTS' Motion For A Stay In The Present Circumstances.

In opposing MTS' earlier motion for a stay, Hysitron also argued that: (1) a stay would not simplify the issues in question; (2) the length of time for the reexamination and the uncertainty concerning the reexamination justified denial of the stay; and (3) it would be prejudiced and tactically disadvantaged by a stay. (*See* Docket No. 30 at 8-9, 13-15.) These arguments now have no merit.

#### A. The USPTO's Decision With Respect To The '486 Patent Clearly Demonstrates That The Reexamination Will Simplify The Issues.

Earlier, Hysitron argued that the reexaminations would not simplify the issues in this case, and that there was a substantial likelihood that its infringement counts would remain. (Docket No. 30 at 10.) The reexamination of the '486 Patent has illustrated the importance of the reexamination process and the lack of merit in Hysitron's argument. As discussed above, it is highly unlikely that the allegedly infringed claims of the '677 Patent will emerge from reexamination unscathed. It is of benefit to both the parties and the Court to await the ultimate resolution of the reexamination. Proceeding forward with one patent reexamined and one not invites conflicting or contradictory results, particularly in view of the identity between the specification, figures and claims of the two patents.

#### B. The Remaining Time For The Reexam And The Uncertainty Surrounding It Have Been Significantly Reduced.

Hysitron also cited the early stages of the reexamination proceedings and uncertainty concerning the ultimate timing and results of the reexamination as factors weighing against a stay. (Docket No. 30 at 13-14.) For example, Hysitron argued that

"[t]he PTO has not granted MTS' request for reexamination, much less identified any claims at issue. Indeed, the parties are unlikely to know whether the request will be granted for over two months and are unlikely to know what claims are at issue for over six months." (*Id*. at 14.) These arguments are surely no longer valid. The USPTO has granted the requests for reexamination and has included within its analysis all the claims which MTS has allegedly infringed. Moreover, there is no longer uncertainty concerning whether or not the reexamination will simplify the issues in this case. As demonstrated by the results of the '486 Patent reexamination, the reexamination proceedings have had and will have a substantial effect on this litigation.

>   **C.    Hysitron's Empty Claims Of Commercial Prejudice Do Not Justify The Costs Of Duplicative Litigation While Hysitron's Patent Rights Remain Indeterminate.**

In an effort to establish that Hysitron was suffering a disadvantage in the marketplace, Hysitron presented the Declaration of Thomas Wyrobek. (Docket No. 32.) Hysitron argued that MTS was undercutting Hysitron's prices and garnering market share by offering an infringing product. (*Id*. at ¶ 12-15.)

Despite these claims of market subversion and catastrophic consequences for Hysitron, Hysitron never sought a preliminary injunction. Accordingly, this argument rings hollow. *See, e.g., Magna Donnelly Corp. v. Pilkington N. Am., Inc.,* 2007 U.S. Dist. LEXIS 17536 (W.D. Mich. Mar. 12, 2007) (Lorentz Decl. Ex. 9); *Emhart Indus.*, 3 U.S.P.Q.2d at 1891 (holding that plaintiff's contention concerning the destruction of its business resulting from a stay was unpersuasive, in part, because plaintiff had never sought preliminary injunctive relief).

Moreover, given the status of the reexamination, serious doubt has been cast on Hysitron's claims that MTS was garnering market share through "infringing" activity. In light of the status of the reexamination, the obvious benefits it has brought and will bring to this case, and the hollowness of Hysitron's market disadvantage claims, it is clear that the relatively minimal delay while awaiting the results of the reexamination for the '677 Patent would not "unduly" prejudice Hysitron. *See Softview*, 56 U.S.P.Q.2d at 1636 (rejecting the argument that purchasing market share unfairly prejudiced the plaintiff because (1) the plaintiff could obtain damages (perhaps treble damages) for *all* infringing mechanisms; and (2) if defendants were found to have infringed, plaintiffs could obtain injunctive relief which would entirely eradicate defendants' market share with respect to infringing products). Additionally, MTS has sold its Nano division and this lawsuit is really about past, not future, damages, and thus claims of injury during the stay have no merit.

> **D.** **Hysitron's Trademark Infringement Claims Should Not Be A Barrier To Granting A Stay Because The Alleged Infringing Conduct Has Ceased.**

The Court's prior decision declining to enter a stay of these proceedings pending the patent reexamination was apparently based, in part, on the Court's concern about Hysitron's trademark infringement claims. These claims are based on the fact that approximately two years ago MTS obtained the keyword "hysitron" from Google, which triggered MTS' Sponsored-Link advertisement to appear on the search-result page when a user typed the term "hysitron" into the search engine.

The alleged infringing Internet advertising has now ceased. On or about February 25, 2008 MTS removed "hysitron" as a keyword search term. (Johns Decl. at ¶ 12, Rochelle Decl. at ¶ 5.) Because MTS has discontinued use of "hysitron" as a keyword search term, if an Internet user types the term "hysitron" into a search engine today, MTS' Sponsored-Link advertising does not appear. (Rochelle Decl. at ¶ 5.) Further, earlier this year MTS offered in good faith to enter into an undertaking agreeing not to continue its "hysitron" keyword-triggered Sponsored-Link advertising, and MTS has no plans to resume this advertising in the future. (Johns Decl. at ¶ 12.) Hysitron has not presented any evidence tending to show that any consumers were actually confused as to the source of MTS' products as a result of the Sponsored-Link advertisement when it was in place, nor has Hysitron presented any evidence that it has lost any sales as a result of the advertisement. (Plaintiff's Answers to Defendant's Interrog. No. 21, Lorentz Decl. Ex. 9.) In fact, Hysitron has acknowledged it is not seeking monetary damages in connection with its trademark infringement claims, implicitly recognizing that there has been no actual confusion in this case. (Plaintiff's Answers to Defendant's Interrog. No. 20, Lorentz Decl. Ex. 9.)

MTS has asked the Court to render summary judgment in its favor on Hysitron's trademark claims. There is no legally viable basis for Hysitron's claims. In essence, Hysitron seeks to enjoin conduct which is neither presently occurring or will occur in the future, and which, when it did occur, did not cause any actual confusion about the source, origin or affiliation of MTS' goods. Because MTS has discontinued the Sponsored-Link advertisement using the keyword "hysitron," Hysitron cannot demonstrate that it has

suffered, or is likely to suffer, irreparable injury. It therefore cannot meet the requisite standards for injunctive relief, and for these reasons, among others, MTS has urged that the trademark claims be dismissed. *See* e.g., *Gater.com v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129-1131 (9th Cir. 2005).

Regardless of the outcome of MTS' Motion for Summary Judgment, there is no dispute about the fact that the conduct giving rise to Hysitron's trademark infringement claims has ceased. Therefore, Hysitron cannot argue that it will suffer any injury (to the extent it ever suffered any injury) to justify denial of a stay. Therefore, this justification, which prompted the Court to deny MTS' initial motion for a stay, no longer exists.

## **CONCLUSION**

In light of the foregoing, MTS respectfully requests that its Renewed Motion for Stay Pending Patent Reexamination be granted.

Respectfully submitted,

Dated: July 15, 2008　　　　　　　　WINTHROP & WEINSTINE, P.A.


By: s/ Brent A. Lorentz
　　David P. Pearson, #84712
　　William A. McNab, #320924
　　Brent A. Lorentz, #0386865

225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800

*Attorneys for MTS Systems Corporation*

3802156v2