UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HYSITRON INCORPORATED, a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>MTS SYSTEMS CORPORATION, a Minnesota corporation,<br><br>Defendant. | Civil Action No. 07 CV 1533 ADM/AJB<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO STAY LITIGATION PENDING REEXAMINATION OF PLAINTIFF'S PATENTS** |

## I. INTRODUCTION

Plaintiff Hysitron Incorporated ("Hysitron") submits this response in opposition to Defendant MTS Systems Corporation's ("MTS") renewed motion to stay this litigation pending the remaining *ex parte* Reexamination of one of the Hysitron patents-in-suit. MTS' motion is yet another attempt to unduly delay the resolution of this case. No circumstance has changed that would justify reversing the Court's previous refusals to stay the case. Indeed, the substantial progress of the case to date and the substantial risk of losing evidence as a result of a stay coupled with the insubstantial outcome of the *ex parte* Reexamination of the other Hysitron patent-in-suit compel the Court to again deny MTS' request for a stay.

### A. Procedural Posture

In its Amended Complaint, Hysitron includes two counts of patent infringement and five counts of unfair competition based on trademark infringement. (Amended

Complaint at ¶¶ 6-59 (May 29, 2007) (D.I. 21).) Hysitron asserts U.S. Patent No. 5,553,486 ("the '486 patent) and U.S. Patent No. 6,026, 677 ("the '677 patent") against MTS. (*Id.* at ¶¶ 6-16.) Both patents are directed to a device capable of *in situ* topographical imaging in conjunction with nanomechanical indentation testing. (the '486 patent at col. 3, ll. 59-64 (D.I. 120-2 & 120-3); the '677 patent at col. 3, ll. 59-64 (D.I. 120-4).) Hysitron asserts that MTS infringes those patents by offering *in situ* imaging as part of its nanomechanical indentation testing devices and as a separate upgrade to those devices. (Amended Complaint at ¶¶ 7, 13.) Hysitron's unfair competition counts are based on the same competitive relationship that gives rise to its patent infringement counts. (*Id.* at ¶¶ 18-24, 40, 44, 49, 55.)

In response to Hysitron's patent infringement allegations, MTS asserts affirmative defenses that Hysitron's patents are invalid or unenforceable. (Answer to Amended Complaint at ¶¶ 20-29 (June 18, 2007) (D.I. 35).) Specifically, MTS argues that the patents-in-suit are anticipated or rendered obvious by prior art. (*Id.* at ¶¶ 22-25.) MTS also argues that the patents are invalid for failure to comply with the requirements of 35 U.S.C. § 112, are invalid for failure to comply with one or more of the conditions for patentability specified in 35 U.S.C. § 101, and are unenforceable because Hysitron has unclean hands in its efforts to enforce the patents. (*Id.* at ¶¶ 20-21, 26-29.) MTS also reasserts all of its affirmative defenses as a Counterclaim, seeking a declaration that the patents-in-suit are invalid and not infringed. (*Id.* at ¶¶ 30, 34-36.)

On May 25, 2007, MTS filed requests for *ex parte* Reexamination of both of Hysitron's patents with the United States Patent and Trademark Office ("PTO"). MTS

moved to stay the case, but its motion was denied. (Order on Def.'s Mot. for a Stay Pending Reexamination (June 26, 2007) (D.I. 37).) The Requests for *Ex Parte* Reexamination were granted.[1] (Decision Granting Ex Parte Reexamination of the '486 patent (D.I. 120-5); Decision Granting Ex Parte Reexamination of the '677 patent (D.I. 120-6).)

During the course of reexamining the '486 patent, the PTO considered every reference MTS relies upon in this case to support its invalidity arguments. (*Compare* Def.'s Prior Art Statement (Ex. A[2]), *with*, Information Disclosure Statement from the Reexamination of the '486 patent (Ex. B).) On May 5, 2008, the PTO issued its Notice of Intent to Issue Ex Parte Reexamination Certificate ("NIRC"), stating that every asserted claim of the '486 patent will issue from the Reexamination without amendment. (D.I. 120-7.) Indeed, every claim subjected to Reexamination (being more than the asserted claims) will issue unchanged. The '486 patent, and each of its claims, is valid. The Reexamination of the '677 patent is by a different Examiner and remains pending.

Specific to all of the claims of unfair competition, MTS moved for partial summary judgment. (Def.'s Mot. for Partial Summ. J. (D.I. 87).) That motion is pending

---

[1] That the PTO granted MTS' Requests for Reexamination does indicate that Hysitron's patents are not patentable. The PTO grants 91% of Requests for Reexamination, but only cancels all the claims of 10% of patents. (*Ex Parte* Reexamination Filing Data – June 30, 2006 (Ex. G to Declaration of Allen Hinderaker (June 13, 2007) (D.I. 31)).) Indeed, the PTO granted the request to reexamine the '486 patent, but confirmed every claim of the '486 patent without amendment.

[2] "Ex. __" refers to exhibits to the "Declaration of Joshua Graham in Opposition to Defendant's Renewed Motion to Stay Litigation Pending Reexamination of Plaintiff's Patents," attached hereto.

decision by Judge Montgomery. MTS' motion to stay discovery pending Judge Montgomery's decision on the motion for partial summary judgment was denied by this Court. (Order (May 13, 2008) (D.I. 112).) MTS was also Ordered to produce documents relating to the unfair competition claims, which issued on May 13, 2008. (*Id.*) MTS has not yet complied with that Order.

As of June 30, 2008, it was announced that MTS sold the Nano division of its company. (Agilent Technologies Acquires Nano Instruments Business of MTS Systems Corp., http://www.mtsnano.com/news (accessed on July 21, 2008) (Ex. C).) That sale purportedly transferred the right to make, use, and sell the nanomechanical indentation testing component of the accused devices to a non-party, Agilent Technologies, Inc.[3] (Letter from Agilent Technologies to counsel for Hysitron (June 30, 2008) (Ex. D).) Significantly, MTS retained the right to make, use, and sell the *in situ* topographical imaging component of the accused devices. (*Id.*) Only future discovery will reveal the extent to which MTS continues to induce and contribute to the infringement of the patents-in-suit by selling its *in situ* imaging capability to its past indenter customers and the future indenter customers of its buyer.

After more than a year of litigation, and in conjunction with the additional complexity introduced into the discovery process by the sale of its Nano division, MTS again seeks to stay the case. It seeks the stay pending the outcome of the *ex parte*

---

[3] The documentation relating to this sale has not been produced in discovery or disclosed by MTS in conjunction with its recent motion practice. Hysitron's knowledge of the terms and scope of the sale is based on publicly available information and the June 30, 2008 and letter from Agilent Technologies, Inc. (Exs. C & D).

4

Reexamination of the '677 patent knowing that the '486 patent will reissue unchanged over every prior art reference at issue in this case.

## II. ARGUMENT

Management of a court's docket requires "the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 229 U.S. 248, 254-55 (1936). To maintain an even balance when considering a stay of litigation pending the Reexamination of asserted patents, this district typically weighs the following three factors: (1) whether a stay will simplify the issues in question; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (3) whether discovery is complete and a trial date has been set. *Ecolab, Inc. v. FMC Corp.*, 05-CV-831, 2007 U.S. Dist. LEXIS 39189, *4 (D. Minn. May 29, 2007) (Ex. E). These were the elements the Court applied in denying MTS' previous motion to stay pending Reexamination. (Order on Def.'s Mot. for a Stay Pending Reexamination at 3.) Again, the balance of these factors weighs against a stay; there is no reason to reverse course now.

### A. A Stay Will Not Simplify the Issues in Question.

A core argument of MTS' Renewed Motion is that the PTO's comments are dispositive on claim construction and, hence, infringement. They are not. Far from being dispositive, the PTO's comments are not applicable. The law of the Federal Circuit is clear: PTO comments do not limit claim scope. *Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005). Furthermore, while PTO comments become part of the prosecution history, it is error for a court to adopt a PTO claim construction because the

5

PTO applies a different standard of claim construction than a court. *Thermoplastics Co., Inc. v. Faytex Corp.*, 970 F.2d 834, 846 (Fed. Cir. 1992).

A motion to stay is not the occasion to construe claim terms. In the *Markman* process it will also be clear that MTS misstates the PTO comments. Any fair reading of those comments reveals they were not directed to the position of the "spring means," the limitation MTS erroneously claims was dispositively interpreted. The PTO comments were directed at the position and composition of the "pick-up plate." Furthermore, the "spring means" limitation is not an element of any asserted claim in the '677 patent.

Additionally, the PTO comments themselves are wrong. They contradict the established, legal definition of "including" and the description of "central plate" and "pick-up" plate in the '486 patent specification.

Reexaminations are limited in scope, directed solely to the question of patentability. 35 U.S.C. § 301. MTS' other defenses, that the patents are invalid under Sections 112 and 101 and that Hysitron's claims must be dismissed by reason of unclean hands, are beyond the scope of the re-examination. The entire process of claim construction is, in fact, beyond their scope. Here, the PTO confirmed the patentability of the '486 patent without amendment over *every reference* asserted by MTS in this case. Still, MTS is not bound by the PTO's determination of validity and is free to prosecute all of its defenses. Nothing will be resolved by granting a stay.

1. **The PTO Comments Do Not Simplify the Issues in Question.**

   a. **The Unilateral Comments by the PTO Do Not Limit Claim Terms.**

PTO comments do not limit the scope of a claim term. *Salazar*, 414 F.3d at 1347 ("An examiner's statement cannot amend a claim. Consequently, the district court clearly erred in finding that claim 1 was 'amended.'"); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1556 (Fed. Cir. 1997). By confirming a claim without requiring amendment, the PTO confirms that the claim language does not require additional limitation to sufficiently distinguish the prior art. *Eastman Kodak*, 114 F.3d at 1556. Although, the PTO's comments become part of the prosecution history, they do not "enlarge, diminish, or vary" the scope of a claim in litigation. *Id.*; *see Salazar*, 414 F.3d at 1347 ("[U]nilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant . . . .")

Courts review the prosecution history of a patent to determine whether the patentee narrowed a claim by clearly and unmistakably surrendering subject matter in distinguishing the prior art. *Salazar*, 414 F.3d at 1347. PTO comments evidence such a surrender only when they simply repeat the patentee's arguments. *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003). When PTO comments contradict the patentee's arguments, however, they do not evidence a clear and unmistakable surrender of subject matter and, thus, do not affect the meaning of a claim term. *Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1373 (Fed. Cir. 2002). In this case, Hysitron expressly disagreed with the PTO's comments.

(Comment on Statement of Reasons for Patentability and/or Confirmation (Ex. F).) The PTO's comments do not limit the claim scope of the '486 patent as a matter of law.

### b. The PTO's Claim Interpretation Is Not Applicable to the Court's Claim Construction.

The Federal Circuit distinguishes between the standard of claim interpretation for patentability before the PTO from the standard for claim construction for validity and infringement before the court. *Thermoplastics*, 970 F.2d at 846. On the one hand, the PTO gives claim terms their broadest reasonable meaning; on the other hand, the court must construe claims consistently with the specification, prosecution history, prior art, and other claims. *Id.* Given these differing standards, the PTO's interpretation of a claim term is inapplicable to the construction of that term by the court.[4] *Id.* Indeed, it is error for a court to adopt a PTO claim interpretation that violates the litigation standard of claim construction.[5] *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006); *Eastman Kodak*, 114 F.3d at 1556.

---

[4] MTS references various cases for the proposition that the Reexamination may "streamline" the issues in this case, suggesting the PTO is engaged in claim construction. (MTS Memo. at 11.) It is not. None of the cases cited by MTS discuss PTO claim interpretation. Rather, these cases focus on cancelling, amending, or narrowing claims in light of the prior art and patentability concerns. *See, e.g.*, *Target Therapeutics, Inc. v. Scimed Life Sys., Inc.*, 33 U.S.P.Q.2D 2022, 2023 (N.D. Cal. 1995) ("The claims of the patent will likely be amended or narrowed during reexamination."). We know that all of the claims of the '486 patent are valid and will issue from reexamination unchanged.

[5] MTS touts "the important expertise which the USPTO brings to bear on claim construction issues" throughout its Brief. (MTS Memo. at 2.) MTS invites clear legal error.

8

### c. MTS Misinterprets the PTO's Comments

In addition to being inapplicable as a matter of law, the PTO comments are not directed to the construction of the term "spring means." MTS' arguments exclusively focus on the last sentence of the PTO's comments, taking the sentence out of its context, and present an inaccurate interpretation. The PTO comments are:

> **Statement Of Reasons For Patentability And/Or Confirmation**
>
> 5. The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding.
>
> With regard to independent claims 1, 12, and 25, the prior art (Todd, Pethica, Oliver, Hansma, and Sikorra) does not teach or make obvious a pick-up plate between further including a conductive central plate suspended by spring means wherein the pickup plate is between drive plates in conjunction with the other features of the claims.
>
> Please note that the closest prior art (Todd) teaches away from a pick-up plate *including* a conductive central plate (USP5553486, fig. 1, #20) suspended by spring means (USP5553486, fig. 1, #18) wherein the pick-up plate is located between two drive plates (USP553486, fig. 1, #8 and #12). Todd's 'pick-up plate' in figure 1 would be the plate between the disclosed CAPACITOR PLATES. Absent a specific disclosure stating otherwise, one of ordinary skill in the art (e.g., an Applied Physicist) would not conclude the 'pick-up plate' of Todd would *include* a central plate. Therefore, it would not have been obvious to position the LEAF SPRINGS on the central plate *within* the 'pick-up' plate.

MTS argues that "[the PTO] distinguished the Todd reference by concluding that it did not position the leaf springs on the central plate *within* the 'pick-up' plate." (MTS Memo. at 6.) But, the PTO did not comment on the position of the leaf springs; it distinguished the prior art based on the composition and position of the pick-up plate.

The examiner's statement that "[T]he prior art . . . does not teach or make obvious a pick-up plate between further including a conductive central plate suspended by spring means" is directed to the composition and positioning of the pick-up plate in the '486 patent, not the position of the spring means. The spring means merely suspends "a pick-up plate including a conductive central plate." The location of that "spring means" is not an element of the claim. MTS' reliance of the PTO comments to limit the position of the spring means of the '486 patent is entirely misplaced.

Furthermore, MTS' "spring means" arguments are irrelevant to any of the asserted claims of the '677 patent. Hysitron asserts against MTS claims 1-4, 7-9, and 11-15 of the '677 patent. (Hysitron Inc.'s Am. Claim Chart (D.I. 120-9).) None of these claims include a "spring means" element.[6] Any PTO comments on the meaning of "spring means" simply have no bearing on the Court's future claim construction of the terms of the asserted claims of the '677 patent. They give no support for a stay of this case.

### d. The PTO's Comments Misinterpret the Claim Terms.

In the NIRC, the PTO commented on the relationship between the "central plate" and the "pick-up plate" in the '486 patent. These comments misapply and contradict the established, legal definition of "including." They also directly conflict with the description of "central plate" and "pick-up" plate in the '486 patent specification.

The term "including" is an open-ended transitional term. *Burke, Inc. v. Everest & Jennings*, 29 U.S.P.Q.2D 1393 ("As a general rule, "comprising" and "including" are

---

[6] Claim 16 of the '677 patent does include the "spring means" element. While MTS relies on claim 16 to advance its argument (MTS Memo. at 8), claim 16 is not one of the asserted claims.

open-ended terms which cover the structural elements recited plus additional elements.").
An open-ended transitional term neither excludes nor mandates additional, unrecited elements. *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements *may* be added and still form a construct within the scope of the claims." (emphasis added)). The PTO erroneously applied the transition word "including" in the limitation "said pick-up plate further including a conductive central plate" to require the pick-up plate to be something more than the central plate. The PTO comment improperly interpreted the term "including." Giving "including" its proper meaning in patent law, the "pick-up plate" can be the "central plate."

Furthermore, the specification of the '486 patent repeatedly describes the pick-up plate and the central plate as being co-extensive. For example, the specification states, "[a] central plate **20** is mounted on an appropriate suspension system **18** to provide for desired relative motion of the central plate **20** *or pick-up plate* on the third substrate layer **16**." (the '486 patent at col.9, ll. 22-24 (emphasis added).) The specification further states, "the central plate (pick-up plate) provides an output." (*Id.* at col. 6, ll. 2-3.) The interpretation of "central plate" as requiring something other than the "pick-up plate" directly contradicts the specification of the '486 patent. In addition to being inapplicable to claim construction, the PTO's comments are wrong. It would be error to rely on them. *See SRAM Corp.*, 465 F.3d at 1359; *see also Eastman Kodak*, 114 F.3d at 1556.

## 2. The Reexamination Will Not Address Many of the Issues in Question.

Many issues in this case are beyond the scope of reexamination. Hysitron's Amended Complaint includes two counts of patent infringement and five counts of unfair trade practices based on trademark infringement.[7] (Amended Complaint at ¶¶ 6-59.) In denying MTS' previous motion to stay, the Court found that the five counts of trademark infringement and unfair competition cannot be simplified by reexamination of the patents. (*See, generally*, *id.* at ¶¶ 17-59.)

The Court's prior reasoning that these counts cannot be simplified by the Reexamination remains sound. (Order on Def.'s Mot. for a Stay Pending Reexamination at 5.) Hysitron's unfair competition counts are still based on its trademark, not the patents being reexamined. Nothing has changed.

Furthermore, the Court has refused to stay this case pending a decision on MTS' motion for partial summary judgment and its promise not to infringe Hysitron's trademark. (Order at 1.) Much like MTS' present motion, its previous motion to stay focused on the merits of Hysitron's unfair competition counts. (*Compare* MTS Memo. at 17-18 *with* Def.'s Memo. of Law in Supp. of Mot. for Protective Order, or in the Alternative, to Stay Discovery Pending Disposition of Mot. for Partial Summ. J., and in Oppo' to Pl.'s Mot. to Compel at 14 (Apr. 17, 2008) (D.I. 97).) MTS has cited no circumstances that have changed since the previous motion to stay. The legal arguments, now pending decision before Judge Montgomery, regarding the merits of Hysitron's

---

[7] Hysitron's trademark infringement allegations arise from the same competitive relationship that gives rise to Hysitron's claims of patent infringement.

unfair competition counts and the consequences from MTS' promise not to infringe no more justify a stay now than they did then.

Additionally, MTS' answer includes defenses that Hysitron's patents are invalid under 35 U.S.C. §§ 101, 102, 103, and 112, and are unenforceable as being asserted with unclean hands. (Answer to Amended Complaint at ¶¶ 20-29.) During reexamination, the PTO only considers validity under 35 U.S.C. § 102 (anticipation) and § 103 (obviousness). 35 U.S.C. § 301. The defenses of invalidity under § 101 and § 112 and the defense of unenforceability cannot be simplified because they will not be considered by the PTO. 37 C.F.R. § 1.552.

### 3. MTS Is Not Bound by the PTO's Patentability Determination.

MTS incorrectly argues that "[i]t is in the best interest of the parties and the Court to allow the USPTO to finish its expert review of the prior art cited in the Reexamination proceedings before undertaking duplicative review here." (MTS Memo. at 13.) To the contrary, the Court's previously stated concern that "[e]ven if the PTO rules in Hysitron's favor as to the validity of their claims over the considered prior art, MTS is free to argue that those very same claims are invalid over the very same prior art" has come to fruition. (*See* Order on Def.'s Mot. for a Stay Pending Reexamination at 5.) The PTO has concluded that the '486 patent is valid, stating that it will issue from Reexamination without amendment over all the prior art submitted by MTS in this litigation. Nevertheless, the very same prior art remains at issue in the case. (Def.'s Prior Art Statement at 1-2.)

The Reexamination of the '677 is likely to yield the same result. The '486 and the '677 patents cover the same subject matter, and MTS asserts the same prior art references in both Reexaminations.[8] (*Compare*, the '486 patent at cols. 1-15, *with*, the '677 patent at cols. 1-15.) Furthermore, Hysitron submitted all of the prior art at issue in this case to the PTO. Given that the '486 patent will emerge from Reexamination unchanged by MTS' prior art, the '677 will likely also emerge unchanged. The Court will be called upon to extensively review all prior art MTS relies upon regardless of the Reexaminations. The Court's concern that a stay will give MTS a second bite at the apple continues to be justified.

**B.    A Stay Will Unduly Prejudice and Present a Clear Tactical Disadvantage to Hysitron.**

The fact that MTS has sold its Nano division argues against a stay, contrary to MTS' position. (MTS Memo. at 16.) The market prejudice that caused the Court to deny MTS' previous motion to stay still exists, and now that prejudice is compounded by the additional complexity the sale infuses into the discovery process. MTS retained the rights to the critical *in situ* imaging component of the accused device. Furthermore, MTS' sale has made time of the essence because many necessary, relevant sources of information may have been or may be in the process of being transferred to a non-party.

---

[8] MTS submitted five references in each Reexamination. (Request for Reexamination of U.S. Patent No. 5,553,485 (Exs. E, part 1 and F, part 1 to Declaration of Allen Hinderaker (June 13, 2007) (D.I. 31)). Four of the five references are the same. (*Id.*)

Any loss or diminution of evidence will prejudice Hysitron. A stay will prejudice Hysitron.[9]

### 1. Hysitron Will Still Suffer Market Prejudice by a Stay.

Although MTS has sold its Nano division, it retained the right to make, use, and sell NANO Vision. (Letter from Agilent Technologies to counsel for Hysitron.) NANO Vision is the add-on component that enables a nanomechanical indentation testing device to perform *in situ* imaging. (Nano Vision Brochure (Ex. G).) The combination of *in situ* imaging, which MTS enables with NANO Vision, with an indenter is what Hysitron's patents claim and what makes Hysitron competitive in the market. (Declaration of Thomas Wyrobeck at ¶ 2-4 (June 13, 2007) (D.I. 32) ) Thus, as the Court found in its denial of MTS' previous motion to stay, "[g]ranting a stay would allow MTS to continue to take market share from Hysitron by offering a potentially infringing product at a significantly reduced price."[10] (*See* Order on Def.'s Mot. for a Stay Pending Reexamination at 5.)

### 2. Hysitron Will Suffer Prejudice by Loss of Evidence.

"When a party moves to stay litigation pending PTO Reexamination, the non-moving party may be unduly prejudiced by the lapse of time during Reexamination,

---

[9] The discovery process has even become "more cumbersome" for MTS as a result of the sale. (Letter from counsel for MTS to counsel for Hysitron dated July 21, 2008 (Ex. H).)

[10] Given the immediacy of MTS' sale of its Nano division, there has been no discovery regarding that subject. While it appears that MTS will no longer make, use, or sell the nanomechanical indentation testing device, it will be liable for inducing and contributing to infringement of the '486 and '677 patents through the sale of its NANO Vision to be used with those devices. 35 U.S.C. § 271(a)(b). This case is about both future and past damages.

which could result in the loss of evidence and the fading of witness memory." *Alltech, Inc. v. Cenzone Tech, Inc.*, 06-0153, 2007 U.S. Dist. LEXIS 19989, *8 (S.D. Cal. March 21, 2007); s*ee also*, *U.S. v. Eight Thousand Eigth Hundred & Fifty Dollars*, 461 U.S. 555, 569 (1983) ("The primary inquiry [whether a claimant has been prejudiced by a delay] is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence.").

The loss of witnesses and evidence from a delay in this case is especially likely given that MTS sold the division of its company that makes, uses, and sells critical components of the accused devices. Because of this sale, necessary, relevant information may be transferred to the custody and control of a non-party. There is no way to know how, where, or if the non-party will maintain information relevant and necessary to this litigation. The continuing custody of MTS' documents and the continuing employment of (former) MTS fact witnesses relating to the nanomechanical indentation testing devices with *in situ* imaging are unknown. In all likelihood, discovery will now be more arduous and the need to capture all relevant information as quickly as possible becomes critical. (*See* Letter from counsel for MTS to counsel for Hysitron dated July 21, 2008 (Ex. H).)

**C.      The Stage of the Proceeding Support Denying a Stay.**

A trial date is set and discovery is well under way. In its previous motion to stay, MTS argued a stay should be granted because the litigation was in its early stages. (MTS' Memo in Support of Motion to Stay at 7-9 (D.I. 27).) Despite the early stage of the proceedings, the Court denied MTS' motion. Now, the case has progressed for over a year, giving additional reason to deny a stay.

## III.   CONCLUSION

The case should not be stayed. The Reexamination of the '677 patent will not simplify this case. The PTO confirmed every claim of the '486 patent without amendment over every prior art reference that MTS has asserted in this case. The '677 patent, which covers the same subject matter as the '486, will likely meet with the same success.

While the PTO commented on certain terms of the '486, they do not change the scope of any claim because they are not the comments of the patentee. Furthermore, these PTO comments were made using a different standard of claim interpretation than must be applied by the Court and those comments are inapplicable as a matter of law. As a matter of fact, MTS takes the PTO comments out of context to argue a meaning they do not have. Even then, the argument is of no moment because none of the asserted claims of the '677 patent have the claim limitation upon which MTS relies. At the *Markman* hearing, Hysitron will demonstrate that, properly construed, the PTO comments must be rejected for the additional reason they are wrong.

A stay of this case will prejudice Hysitron. MTS has retained the right to make, use, and sell its NANO Vision product and can continue to induce and contribute to the infringement of Hysitron's patents to Hysitron's marketplace prejudice. Additionally, Hysitron now faces significant litigation prejudice from the risk of the loss of evidence because of the sale MTS' Nano division.

More than a year has passed since the Court denied MTS' first motion to stay pending reexamination. This substantial progress coupled with the unlikelihood that the

Reexamination will simplify this case and the likelihood that a delay will prejudice Hysitron heavily weighs against a stay. Hysitron respectfully requests that MTS' renewed motion for stay be denied.

Dated: July 24, 2008                     MERCHANT & GOULD P.C.

                                                    By:     s/Allen W. Hinderaker
                                                    Allen W. Hinderaker, #45287
                                                    Tong Wu, MN Reg. #0288974
                                                    Joshua P. Graham, MN Reg. #0386716
                                                    Brian N. Platt, *pro hac vice*
                                                    80 South Eighth Street, Suite 3200
                                                    Minneapolis, MN 55402-4131
                                                    Telephone: (612) 332-5300
                                                    Facsimile: (612) 332-9081

                                             ATTORNEYS FOR PLAINTIFF