# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Hysitron Incorporated,

            Plaintiff,

    v.

MTS Systems Corporation,

            Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 07-01533 ADM/AJB

_____

Allen W. Hinderaker, Esq., and Brian N. Platt, Esq., Merchant & Gould P.C., Minneapolis, MN, argued on behalf of Plaintiff.

David P. Pearson, Esq., and William A. McNab, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, argued on behalf of Defendant.
_____

## I. INTRODUCTION

On May 29, 2008, the undersigned United States District Judge heard oral argument on Defendant MTS Systems Corporation's ("MTS") Motion for Partial Summary Judgment [Docket No. 87] on Counts III through VII of Hysitron Incorporated's ("Hysitron") Amended Complaint [Docket No. 21]. Counts I and II assert patent infringement claims unaffected by MTS's Motion. Counts III through VII arise from Hysitron's assertion that MTS infringed Hysitron's HYSITRON trademark when MTS purchased the term "hysitron" so that a link to MTS's website would appear when a user typed the term into an internet search engine. Accordingly, Hysitron brings claims under the federal Lanham Act, 15 U.S.C. § 1125(a), analogous Minnesota trade statutes, Minn. Stat. §§ 325D.15 and 325D.44, common law trademark infringement, and common law unfair trade practice. For the reasons set forth below, Defendant's Motion is denied without prejudice.

## II. BACKGROUND[1]

Since 1995, Hysitron has sold nanomechanical test devices and related services under the common law trademark and trade name HYSITRON. Am. Compl. ¶ 21. At the time of the alleged infringement, MTS competed with Hysitron in the market for nanomechanical test devices and related services. Id. ¶ 20. The nanomechanical testing devices sold by Hysitron and MTS are highly sophisticated research instruments sold to university, industry, and government research facilities engaged in nano research and testing projects. Johns Decl. [Docket No. 92] ¶ 4. The nanomechanical testing devices cost tens of thousands of dollars per unit and, fully configured, can cost upwards of $400,000. Id. ¶ 6. Nanomechanical testing devices are not available for immediate purchase through the Hysitron or MTS website; rather a visit to either firm's website typically represents the beginning of a lengthy sales process. Id. ¶¶ 4, 7.

After Hysitron began use of its HYSITRON trademark, MTS, as part of its internet marketing strategy, purchased the term "hysitron" to generate a sponsored link through Google, Inc.'s ("Google") AdWords program. Am. Compl. ¶ 32; Johns Decl. ¶ 12. When a user types a term into Google or another internet search engine, the search engine provides links to websites that include the term searched. Am. Compl. ¶ 25. Search engines produce two types of links: sponsored and organic. Id. ¶ 26. Organic links are generated when the user keys in a term that matches data from a website. Id. In contrast, a sponsored link is generated when a user keys in a term that an advertiser has purchased. Id. ¶ 27. When the user keys in the purchased term, the search engine generates a link to whatever content the advertiser desires. Id. These sponsored

---

[1]On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

links are typically displayed above or to the side of organic links. Id. ¶ 29.

As a result of MTS's sponsored-link advertising, when a user typed the term 'hysitron' into a search engine, a sponsored link to MTS's website would appear along with the normally generated organic links, which included links to Hysitron's website. Platt Decl. [Docket No. 108] Exs. 1-3. MTS's sponsored link did not contain the trademark HYSITRON or any other Hysitron trademarks. Id. MTS asserts that on February 25, 2008, it ceased using the term "hysitron" to generate a sponsored link, and MTS claims to have no plans to use the term in the future. Johns Decl. ¶ 12. In Counts III-VII, Hysitron seeks a permanent injunction preventing MTS from using the HYSITRON mark to generate advertisements, sponsorships or displays.

### III. DISCUSSION

**A.      Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

3

MTS argues that summary judgment is appropriate for three reasons. First, MTS asserts that, as a matter of law, buying the HYSITRON mark for use in Google's AdWords program does not violate the Lanham Act because it does not constitute a "use in commerce" as contemplated by the Lanham Act. In the alternative, MTS asserts that, even if buying the HYSITRON mark for use in the AdWords program is a use in commerce of Hysitron's trademark, there is no trademark infringement because the sponsored link did not cause and was not likely to cause consumer confusion. Finally, MTS asserts that summary judgment is appropriate because Hysitron cannot demonstrate actual or potential harm entitling it to injunctive relief.

**B.     Hysitron's Lanham Act Claim**

   **1.     "Use in Commerce"**

As a threshold matter, for its Lanham Act claim to proceed, Hysitron must show that MTS's use of the HYSITRON mark was a "use in commerce." See DaimlerChrysler AG v. Bloom, 315 F.3d 932, 939 (8th Cir. 2003). "Use in commerce" is defined in the Lanham Act as:

>   the bona fide use of a mark,
>
>>   (1) on goods when-
>>
>>>   (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sales, and
>>>
>>>   (B) the goods are sold or transported in commerce, and
>>
>>   (2) on services when it is used or displayed in the sale or advertising of

services and the services are rendered in commerce[.]

15 U.S.C. § 1127.

MTS argues that it has not used the HYSITRON mark in the manner contemplated by the Lanham Act because it has not placed the mark on any MTS goods and has not reproduced or displayed the HYSITRON mark in its sponsored link. MTS cites case law from the Second Circuit holding that there is no "use" when the trademark is not placed on goods or communicated to the public. These decisions reason that using a trademark to generate sponsored links or other advertising is an internal utilization of the mark and that, "a company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark." 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 409 (2nd Cir. 2005) (finding no use in commerce where the defendants generated internet pop-up ads by including another plaintiff's trademark in an unpublished directory of terms); see also Rescuecom Corp. v. Google, Inc., 456 F. Supp. 2d 393, 403 (N.D.N.Y. 2006) (finding no use in commerce where a company used another company's trademark for sponsored link advertising in internet search engine).

The majority of courts that have addressed the issue have disagreed with the Second Circuit's reasoning and found that using a competitor's trademark to create a sponsored link or other advertising does constitute a "use in commerce." See e.g. N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1219 (11th Cir. 2008); Playboy Enters., Inc. v. Netscape Commc'n Corp., 354 F.3d 1020 (9th Cir. 2004); Boston Duck Tours, LP v. Super Duck Tours, LLC, 527 F. Supp. 2d 205, 205 (D. Mass. 2007); Edina Realty, Inc. v. The MLSonline.com, No. Civ. 04-4371, 2006 WL 737064 at *3 (D. Minn. March 20, 2006)(Tunheim, J.). These cases

reason that a company's use of a trademark to generate advertising is a "use in commerce," even when the customer never sees the mark.

This Court adopts the majority view that using a trademark to generate advertising constitutes a "use in commerce" under the Lanham Act. This approach adheres to the plain meaning of the Lanham Act's definition of "use in commerce." The language used in the definition suggests that a "use in commerce" is not limited to affixing another's mark to one's own goods but also encompasses any use of another's mark to advertise or sell one's own goods and services. MTS used the HYSITRON mark to generate a sponsored link as part of its effort to advertise and sell its own goods over the internet. Johns Decl. ¶ 12. Under the plain language of the Lanham Act, MTS used the HYSITRON mark in commerce.

### 2. Consumer Confusion

MTS next argues that summary judgment is appropriate because Hysitron cannot demonstrate that MTS's sponsored link caused consumer confusion. To prevail under the Lanham Act, Hysitron must show that MTS's sponsored link would "likely cause confusion among an appreciable number of consumers." Gateway Inc. v. Companion Product, Inc., 384 F.3d 503, 509 (8th Cir. 2004). The factors to be considered in evaluating a likelihood of confusion are: 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and the defendant's mark; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential consumers, and 6) evidence of actual confusion. Davis v. Walt Disney Co., 430 F.3d 901, 903 (8th Cir. 2005). Hysitron's counsel has filed a Rule 56(f) Declaration [Docket No. 109] explaining that Hysitron needs further discovery to fully

6

determine MTS's intent, the degree of consumer care, and incidents of actual confusion. Hinderaker Decl. [Docket No. 109] ¶¶ 5-7.

Hysitron has demonstrated that additional discovery is necessary on the issue of consumer confusion. Significantly, after MTS filed its Motion for Summary Judgment, Magistrate Judge Arthur J. Boylan partially granted Hysitron's requests for discovery of data related to MTS's use of the HYSITRON trademark. May 13, 2008, Order [Docket No. 112]. These materials could provide evidence demonstrating a likelihood of confusion. Accordingly, at this stage in the litigation, summary judgment on the likelihood of consumer confusion is inappropriate.

### 3. Actual or Potential Harm

Finally, MTS asserts that summary judgment is appropriate because Hysitron cannot demonstrate any actual or potential harm entitling it to injunctive relief. MTS re-asserts that Hysitron cannot demonstrate any actual harm resulting from the sponsored link advertising because there was no consumer confusion. However, for the reasons discussed above, further development of the record is necessary on the consumer confusion issue.

MTS also asserts that there is no longer a likelihood of future harm because MTS discontinued sponsored link advertising using the HYSITRON mark on February 25, 2008. Johns Decl. ¶ 12. Thus, MTS asserts, there is no basis for the Court to grant injunctive relief to address potential harm. Hysitron disputes whether MTS has actually stopped using the HYSITRON mark. In support of this assertion, Hysitron relies on a February 27, 2008, email in Google's internet Gmail service in which the word "hysitron" is the only text and the MTS sponsored link appears. Platt Decl. Ex. 6. MTS has submitted a declaration asserting that

7

Gmail's association of "hysitron" with MTS did not result from MTS's use of the HYSITRON trademark. Rochelle Decl. [Docket No. 105] ¶¶ 7-9. At oral argument, MTS submitted May 29, 2008, web page printouts reflecting that the term "hysitron" in Gmail and in Google's search engine did not trigger sponsored links to MTS. Judge Boylan has ordered that MTS produce materials regarding its use of the term "hysitron" for sponsored link advertising on the internet. May 13, 2008, Order at 3. Those materials are not in the record. At this stage of the litigation, the Court finds there is a genuine issue of material fact regarding whether MTS has stopped using the HYSITRON mark. Accordingly, summary judgment based on Hysitron's inability to demonstrate potential harm is inappropriate.

**C.     MTS's State and Common Law Claims**

Counts IV through VII of Hysitron's Amended Complaint allege that MTS's use of the HYSITRON mark in MTS's sponsored link advertising constitutes unfair competition and trademark infringement under Minnesota statutory and common law. The parties agree that for the purposes of MTS's Motion for Summary Judgment, the analysis of the state law claims should be identical to the analysis of the Lanham Act claim. Accordingly, MTS's Motion for Partial Summary Judgment on Counts IV-VII is denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant MTS Systems Corporation's Motion for Partial Summary Judgment [Docket No. 87] is **DENIED.**

BY THE COURT:


_s/Ann D. Montgomery_
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 1, 2008.