## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

HYSITRON INCORPORATED,

       PLAINTIFF,

V.

MTS SYSTEMS CORPORATION,

       DEFENDANT.

CIVIL NO. 07-1533 (ADM/AJB)

**ORDER OPINION**

---

### I.    Introduction

This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on Plaintiff's Motion to Exclude MTS's New Invalidity Theories and Fact Witnesses or to Allow Hysitron Additional Discovery at MTS' Expense [Docket No. 181] and Plaintiff's Motion Compel Documents [Docket No. 186]. A hearing was held on the motion on November 24, 2009. Allen Hinderaker and Joshua Graham appeared on behalf of Plaintiff. David Pearson and Brent Lorentz appeared on behalf of Defendant.

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Exclude [Docket Nos. 181] is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion to Compel [Docket No. 186] is **GRANTED** as set forth herein.

## II.    Background

***Pretrial Scheduling Order***

The parties met with this Court on May 30, 2007, for a pretrial scheduling conference. [Docket No. 24.] At the conference, the parties requested that this Court include the following language in the Pretrial Scheduling Order: "The parties may supplement their prior art statements pursuant to Federal Rule of Civil Procedure 26(e)." (Pretrial Scheduling Order 4, May 30, 2007.) The Pretrial Scheduling Order also set forth various deadlines. (*Id.*) These deadlines were ultimately amended such that fact discovery was to be completed by July 24, 2009; Plaintiff's Claim Chart was due on July 1, 2007; Defendant's Claim Chart was due on August 15, 2007; Defendant's Prior Art Statement was due on September 15, 2007; and Plaintiff's Prior Art Statement was due on October 15, 2007. (Fifth Amended Pretrial Scheduling Order 1-8, Nov. 3, 2009.) The Fifth Amended Pretrial Scheduling Order also provided that the parties would identify expert witnesses who would be providing expert reports by August 1, 2009, exchange initial expert reports by September 1, 2009, and exchange expert rebuttal reports by October 1, 2009. (*Id.* at 5.)

***Discovery and Procedural Posture in 2007***

Defendant served its Rule 26(a) Disclosure on June 1, 2007. (Decl. Graham, Ex. P, Nov. 6, 2009.)  Defendant identified Warren Oliver, the General Manager at MTS Nano Instruments, as an individual likely to have discoverable information. (*Id.* at Ex. P.)

On August 15, 2007, Defendant disclosed its Claim Chart. (*Id.* at Ex. A.) On September 17, 2007, Defendant disclosed its Prior Art Statement. (*Id.* at Ex. B.) As to Claims 1-4, 7-9, and 11-15 of U.S. Patent No. 6,026,677 ('677 patent), Defendant asserted invalidity claims under 35 U.S.C. §§ 102(b), 103(a).  (*Id.*) As to Claims 1, 3, and 6 of U.S. Patent No. 5,553,486 ('486

patent"), Defendant asserted invalidity claims under 35 U.S.C. §103(a). (*Id.*) Defendant contended that the '486 and '677 patents were invalid under 35 U.S.C. §§ 102(b), 103(a) based upon 14 items of prior art. (*Id.*) Among these items were a patent and two papers:

1. Oliver et al. U.S. Patent No. 4,848,141.

2. Todd, J.D. and Pethica, J.B., *A Shear Model for STM Imaging of Layered Material*, J. Phys.: Condens. Matter 1, pp. 9823-31 (1989) (hereinafter Todd paper).

3. Pethica, J.B. and Oliver, W.C., *Tip Surface Interactions in STM and AFM*, Physica Scripta, Vol. 119, pp. 61-67 (1987) (hereinafter Pethica paper).

(*Id.*)

In the fall of 2007, Plaintiff produced Wayne Bonin's lab notebook and documents that discussed a "proposal" and a sale to 3M. (Pearson Aff. ¶ 5, Nov. 17, 2009.) Bonin's lab notebook states that he sent a "proposal" to 3M on July 1, 1992. (*Id.* at ¶ 6.) Apparently there were other documents that indicated that the claimed invention was sold to 3M, but these documents did not provide the date of the offer or the sale. (*Id.*)

In September 17, 2007, Plaintiff provided to Defendant a copy of its Preliminary Claim Construction. (Graham Decl. Ex. U, Nov. 6, 2009.)

***Discovery and Procedural Posture in 2008***

On September 12, 2008, Defendant served its first answers to Plaintiff's first set of interrogatories. (Decl. Graham, Ex. Q, Nov. 6, 2009.) Interrogatory No. 15 asked Defendant to state the factual basis for its invalidity defenses. (*Id.*) In response to Interrogatory No. 15, Defendant stated that its invalidity defense was based upon the fact that the accused product was derived from the device disclosed in the Todd paper. (*Id.*) Defendant identified Warren Oliver, John Pethica, Jennifer Hay, and Thomas Wyrobek as having knowledge of these facts. (*Id.*)

Interrogatory No. 16 asked Defendant to state the facts relating to the conception and development of the scanned probe microscope apparatus (i.e., the accused device). (Decl. Graham, Ex. Q, Nov. 6, 2009.) In response to Interrogatory No. 16, Defendant explained that the conception and development of the scanned probe microscope apparatus was based upon existing MTS technology and Warren Oliver's expertise and knowledge, including knowledge of the Todd paper. (*Id.*) Within its response to Interrogatory No. 16, Defendant stated that Warren Oliver "is the author of important, seminal articles and the inventor of several important inventions relating to nanoindentation and imaging technology." (*Id.*) Defendant's response cites Warren Oliver and John Pethica as individuals involved in the creation of the accused device. (*Id.*)

On September 15, 2008, Plaintiff served an amended answer to Defendant's interrogatory No. 3. (Fernholz Aff. Ex. DD, Nov. 24, 2009.) Defendant's Interrogatory No. 3 asked Plaintiff to describe the development of the devices described by the patents-in-suit. (*Id.*) Plaintiff asserted, in its amended answer, that Wayne Bonin conceived of the device covered by claim 1 of the '677 patent as early as June 1992 and reduced it to practice by February 1993. (*Id.*) Plaintiff asserted that Wayne Bonin conceived of a device covered by the asserted claims of the '486 and '677 patents (other than claim 1 of the '677 patent) as early as July 1993 and reduced it to practice by September 1994. (*Id.*) In addition, Plaintiff asserted that "[in] July 1992, Mr. Bonin sent a proposal to 3M using the conceived three plate capacitive sensor mounted directly on the stage of a scanning tunneling microscope." (*Id.*)

### Discovery and Procedural Posture in 2009

On April 28, 2009, United States District Court Judge Ann D. Montgomery entered a memorandum opinion and order concerning the claim construction. [Docket No. 164.] David P.

Peterson stated in his affidavit that "[f]ollowing issuance of the Court's *Markman* Order on April 28, 2009, counsel for MTS evaluated MTS' invalidity and infringement defenses in view of the Court's claim construction." (Pearson Aff. ¶ 13, Nov. 17, 2009.)  Also in April 2009, the parties conducted their first fact depositions. (Pearson Aff. ¶ 5, Nov. 17, 2009.)

Wayne Bonin was deposed on May 13, 2009. (Pearson Aff. ¶ 8, Nov. 17, 2009.) During his deposition, he testified that on July 1, 1992, he offered to sell to 3M a device that covers claims in the '486 and '677 patents. (*Id.*)  On May 20-21, 2009, Defendant's counsel reviewed archived documents from Nano Instruments, Inc., the predecessor company to MTS Nano Division.  (*Id.* at ¶ 14.) This review was done to confirm features of the Nano Indentor II device prior to October 1, 1992, and to identify evidence confirming that the Nano Indentor II was sold or offered for sale before the October 1, 1992 critical date. (*Id.*)  The documents that were discovered were produced to Plaintiff on June 3, 2009. (*Id.* at ¶ 15). John Swindeman's deposition was held on May 28, 2009, and Plaintiff was aware that the documents discovered on May 20-21, 2009, would not be produced in time for the deposition. (*Id.* at 16.)

On June 15, 2009, Defendant disclosed its First Supplemental Prior Art Statement. (Decl. Graham, Ex. C, Nov. 6, 2009.)  Defendant organized its First Supplemental Prior Art Statement around three theories of invalidity: 1) Device of W. Bonin/Hysitron offered for sale to 3M in July 1992; 2) MTS Nano Indenter and Nano Indenter II;[1] and 3) IBM Microindentor. (*Id.*) Defendant cited 33 items of prior art and divided the items according to theory to which they corresponded. (*Id.*) Specifically, under the "offered sale to 3M," Defendant cited W. Bonin's deposition. (*Id.*) Under the MTS Nano Indenter and Nano Indenter II,

---

[1] Defendant contends that the Nano Indenter and the Nano Indenter II are prior art to the patents-in-suit since they were manufactured and sold before October 1, 1992. (Pearson Aff. ¶ 11, Nov. 17, 2009.) Defendant contends that these devices were also predecessor instruments to the alleged infringing device. (*Id.*) At the hearing, Defendant characterized the infringing device as the Nano Indenter II with NanoVision option added to it.

Defendant cited the Todd and Pethica papers. (*Id.*) Under the IBM Microindentor, Defendant cited various papers by T.W. Wu. (*Id.*) In addition to the invalidity claims in the initial Prior Art Statement, Defendant asserted invalidity claims under 35 U.S.C. § 102(a) and new claims based upon the additional items of prior art.[2]

On June 17, 2009, Defendant served Plaintiff with a Supplemental Rule 26(a) Disclosure. (Decl. Graham, Ex. R, Nov. 6, 2009.) In the supplemental disclosure, Defendant again identified Warren Oliver as an individual likely to have discoverable information, but also noted that Warren Oliver may offer Rule 702 testimony. (*Id.* at Ex. R.) Defendant also identified Vincent Jardret and George M. Pharr, and indicated that they may offer Rule 702 testimony. (*Id.* at Ex. R.)

On June 18, 2009, Defendant served Plaintiff with a supplemental answer to Plaintiff's first set of interrogatories. (*Id.* at Ex. S.) Defendant added to its earlier explanation regarding the conception and development of the scanned probe microscope apparatus and identified the Nano Indenter as predecessor to the NanoVision technology. (*Id.*) Also on June 18, 2009, the parties deposed Warren Oliver. (Pearson Aff. ¶¶ 18-19, Nov. 17, 2009.) Plaintiff question Mr. Oliver concerning the Nano Indenter and the Nano Indenter II instruments. (*Id.*)

On August 3, 2009, Defendant served its expert witness identification. (Decl. Graham, Ex. T, Nov. 6, 2009.) Defendant identified in part Dawn A. Bonnell, Ph.D., Vincent Jardret, Ph.D., Warren Oliver, Ph.D., R. Brian Peters, and Krystyn Van Vliet, Ph.D. (*Id.*)

On September 1, 2009, Defendant disclosed a second supplemental prior art statement. (Decl. Graham, Ex. N, Nov. 6, 2009.) This supplemental prior art statement incorporated by

---

[2] Defendant's three prior art statements are far too voluminous for this Court to restate each theory of invalidity for each claim.

reference Dr. Dawn Bonnell's Report dated September 1, 2009. (*Id.*) Also on September 1, 2009,

Defendant disclosed Dr. Bonnell's expert report. (Pearson Aff. ¶ 25, Nov. 17, 2009.)

Dr. Bonnell's expert report identifies eight "concepts and elements" that she contends

were well-known prior to October 1992. (Fernholz Aff. Ex. V, Nov. 24, 2009.) Dr. Bonnell also

identifies 13 items or categories of prior art that render the eight "concepts and elements" well

known. (*Id.*) Of these 13 items or categories of prior art, six were disclosed in Defendant's initial

Prior Art Statement.[3] Of the remaining seven items or categories of prior art, three were

disclosed in Defendant's First Supplemental Prior Art Statement.[4] Finally, the following four

items or categories of prior art were identified for the first time in Dr. Bonnell's report and the

Second Supplemental Prior Art Statement:

1.  G. Neubauer, S.R. Cohen, G.M. McClelland, D. Horne, and C.M. Mate, "Force microscopy with a bidirectional capacitance sensor," *Rev. Sci. Instrum.* 61(9), 2296-2308 (1990).

2.  S.A. Joyce, J.E. Houston, and T.A. Michalske, "Diffferentiation of topographical and chemical structures using an interfacial force microscope" *App. Phys. Lett.* 60(10), 1175-177 (1992). S.A. Joyce and J.E. Houston, "A new force sensor incorporating force-feedback control for interfacial force microscopy" *Rev. Sci. Instrum.* 62(3), 710-715 (1991).

3.  C.C. Williams, W.P. Hough, and S.A. Rishton, "Scanning capacitance microscopy on a 25 nm scale" *Appl. Phys. Lett.* 55(2), 203-205 (1989).

4.  Y. Martin, D.W. Abraham, and H.K. Wickramasinghe, High-resolution capacitance measurement and potentiometry by force microscopy" *Appl. Phys. Lett.* 52(13), 1103-1105 (1988).

(*Id.*)

---

[3] *Compare* Graham Decl. Ex. B, Nov. 6, 2009 (citing Binnig et al. European Patent Application No. EP 0290648; Bonin et al. U.S. Patent No. 4,694,687; Breitmeier U.S. Patent No. 5,146,690; Göddenhenrich et al. European Application EP 0407835; Miller et al. U.S. Patent No. 5,085,070; and the Todd paper) *with* Fernholz Aff. Ex. V, Nov. 24, 2009.

[4] *Compare* Graham Decl. Ex. C, Nov. 6, 2009 (citing the device of W. Bonin/Hysitron offered for sale to 3M in July 1992 and supporting evidence; the MTS Nano Indenter and Nano Indenter II and supporting evidence, and IBM Microindentor and supporting evidence) *with* Fernholz Aff. Ex. V, Nov. 24, 2009 (citing "Bonin 3M Sale," "Nano Indenter (Oliver et al.)," and Wu et al.).

On October 5, 2009, Plaintiff provided Defendant with a Rebuttal Expert Report of Richard J. Colton. (Fernholz Aff. Ex. W, Nov. 24, 2009.) Dr. Colton responded to each of Dr. Bonnell's eight "concepts and elements." (*Id.*) On October 14, 2009, Plaintiff deposed Dr. Bonnell. (*Id.*)

Plaintiff brought the present motions on November 6, 2009. [Docket Nos. 183, 188.]

### III. Discussion

In Plaintiff's Motion to Exclude [Docket No. 183], Plaintiff argues: (1) the supplemental prior art statements added seven new theories of invalidity and Defendant should be precluded from pursuing these theories because they were not timely supplements to its prior art statements under Fed. R. Civ. P. 26(e) (Pl.'s Mem. 22-26, Nov. 6, 2009); (2) Defendant violated Fed. R. Civ. P. 26(e) when it failed to timely and properly supplement its Rule 26(a) witness disclosure and response to one of Plaintiff's interrogatories (*id.* at 26-28); and (3) in the alternative, Plaintiff is entitled to further discovery at the expense of Defendant. (*Id.* at 32-33.)

Plaintiff's Motion to Compel [Docket No. 188] pertains to reports generated by the use of the allegedly infringing NanoVision option. Plaintiff contends that it requested these reports and the reports are relevant. (Pl.'s Mem. 7-9, Nov. 6, 2009.) Plaintiff requests that this Court issue an order compelling disclosure of the reports. (*Id.* at 9.)

### a. Motion to Exclude MTS's New Invalidity Theories and Fact Witnesses or to Allow Hysitron Additional Discovery at MTS' Expense [Docket No. 181]

#### i. <u>Standard of Review</u>

Typically, this Court employs the following language in its pretrial scheduling orders for patent cases:

> Defendant can add prior art to the original Statement only
> by leave of court, upon a showing:

   1. that it was not and could not reasonably have been located earlier by Defendant;

   2. that it is not merely cumulative of prior art already listed, and

   3. how Defendant will be prejudiced if leave is denied, and how the opposite party will not be prejudiced if leave is given.

The utility of this language is set forth as follows:

> The validity of the claims is tied to the issue of infringement. The broader the patent owner tries to stretch the claims to reach the defendant's accused product or process, the more likely that something in the prior art will render the claims obvious (or anticipated.)

> The consequences of this interrelationship are two-fold. First, the plaintiff does not want to be pinned down to a claim construction until it knows what prior art defendant has uncovered. That way it knows what to avoid in its claim construction argument. Second, for the same reason defendant does not want to disclose prior art it knows of, or its contentions as to how this art invalidates the claims asserted against it, until after plaintiff announces its claim construction.

>  . . .

> Defendants will typically argue that they cannot make this disclosure until discovery is completed, because they may find more and better prior art as discovery continues. This concern is easily accommodated by permitting defendant to add new prior art after its opening disclosure—but only with leave of Court, based on a showing of why defendant did not or could not locate it earlier. Defendant should be shown some leniency, because there is a public interest in invalidating patents that are anticipated or obvious. At the same time, a defendant should not be permitted to "sandbag," by holding back prior art it knows of until plaintiff commits to a claim construction that defendant hopes will be rendered obvious by that prior art.

James M. Amend & Eric R. Lamison, *Patent Law: A Primer for Federal District Court and Magistrate Judges* 30-31 (2006). Thus, the typical language used by this Court negates a defendant's ability to manipulate the proceedings and provides for an orderly administration of the case.

Unfortunately, at the insistence of the skilled counsel in the present case, this Court did not employ its typical language. As a result, but for the sentence, "The parties may supplement their prior art statements pursuant to Federal Rule of Civil Procedure 26(e)," this motion could have been avoided. (Pretrial Scheduling Order 4, May 30, 2007.) Nevertheless, because the parties' submitted to this procedure in the present case, this Court will decide Plaintiff's motion under Rule 26(e).

Fed. R. Civ. P. 26(e)(1)[5] provides:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

The commentary to the rule provides that the duty imposed by Rule 26(e)(1) applies to "corrective information . . . learned by the client or by the attorney." Fed. R. Civ. P. 26, Advisory Comm. Notes, 1993 Amends. The obligation to supplement arises when a "party learns that its prior disclosures or responses are in some material respect incomplete or incorrect." *Id.* But the obligation does not extend to "supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process." *Id.* "Failure to provide the updating, correcting, or completing information can be unfair to adversaries and greatly complicate the trial process."   Kent Sinclair, *Sinclair on Federal Practice*, *§ 9:9 Duty to*

---

[5] Fed. R. Civ. P. 26(e)(2) provides for supplemental disclosure of experts whose reports must be disclosed. This Court is unaware of any contention that either party did not timely disclose these experts.

*Supplement Disclosure* (5th ed., 2008.) If a party fails to make timely disclosures under Rule 26(e), then the party may face sanctions under Rule 37(c).

### ii. Plaintiff's Requested Interpretation of Rule 26(e)

Plaintiff contends that Rule 26(e) precludes supplementation with new theories or to add information available at the time of the prior disclosures. (Pl.'s Mem. 13-15, Nov. 6, 2009.) This Court agrees with Plaintiff in part; the "timely manner" inquiry of Rule 26(e) considers when the new facts were supplemented relative to when the new facts were discovered by the supplementing party. If there is an untimely delay between finding the new facts and disclosing them through supplementation, then supplementation has not been effectuated in a timely manner. Timeliness in the present case has a second dimension because there was a pretrial scheduling order that dictated due dates for the exchange of the parties' prior art statements. The parties had an opportunity to discuss with this Court the due dates in the pretrial scheduling conference. The parties also had an opportunity to move to amend the pretrial scheduling order. Given these opportunities, the due dates in the scheduling order influence this Court's analysis of timeliness and creates a burden for the supplementing party to justify why the supplemental items of prior art were not disclosed at the time of the relevant deadlines.

This Court disagrees with Plaintiff's narrow reading of the term "supplementation" as it applies in the present case. This Court recognizes that the Eighth Circuit has stated, "It is the new facts that the rule seeks to bring out in the open, not new contentions . . . ." *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir. 1975). But, *Havenfield Corp.* is distinguishable from the present case because in the present case Rule 26(e) is being applied to prior art statements. The prior art statement in question was to include: "a list of all of the prior art on which [Defendant] relies, and a complete and detailed explanation of what it alleges the prior art

shows and how that prior art invalidates the claim(s) asserted by Plaintiff." (Pretrial Scheduling Order, 3, May 30, 2007.) Thus, Defendant's prior art statement was to identify invalidity defenses and the facts that form the basis for those defenses. Rule 26(e) "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. It would yield an unjust and illogical determination of this action to construe Rule 26(e), as applied to prior art statements, to permit supplementation of merely cumulative prior art that supports a previously asserted invalidity defense but not permit supplementation of newly discovered prior art that supports a new invalidity defense. This is especially true considering the public interest in invalidating patents that are anticipated or obvious.

### iii. **Defendant's Supplementations**

#### 1. *Defendant's First Supplemental Prior Art Statement*

Plaintiff asserts that the three new theories asserted in First Supplemental Prior Art Statement constitute new invalidity theories. (Pl.'s Mem. 5-6, Nov. 6, 2009.) Plaintiff asserts that these theories were not timely disclosed. (*Id.* at 23-25.)

In terms of the "Device of W. Bonin/Hysitron offered for sale to 3M in July 1992," this Court concludes that Defendant supplemented the prior art statement in a timely manner. This Court concludes that the term "proposal" was ambiguous and the disclosures provided to Defendant did not provide a date for the sale. Defendant learned of the nature of the proposal and the date of the sale during Bonin's deposition in the spring of 2009 and Defendant filed its First Supplemental Prior Art Statement shortly thereafter. Under a traditional Rule 26(e) analysis, Defendant would not have been required to disclose Bonin's deposition testimony. It is only

because Rule 26(e) is being applied to prior art that the Court must consider timeliness and this Court concludes that supplementation as to this theory was timely.

In terms of "IBM Microindenter," this Court concludes that Defendant did not supplement its prior art statement in a timely manner. The "IBM Microindenter" theory is based upon academic publications by T.W. Wu. Defendant has made no showing as to why these academic publications were not identified for the initial Prior Art Statement or why Defendant was unable to locate these items for almost two years. This Court concludes that supplementation was not made in a timely manner where Defendant has offered no explanation as to why supplementation occurred two years into discovery and following the *Markman* hearing.

In terms of the "MTS Nano Indenter and Nano Indenter II," this Court concludes that Defendant did not supplement its Prior Art Statement in a timely manner. Under the heading "MTS Nano Indenter and Nano Indenter II," Defendant cites 12 items of prior art. Three of these items—patent '141, the Todd paper, and the Pethica paper—were disclosed in the Defendant's initial Prior Art Statement. (Decl. Graham, Ex. B, Nov. 6, 2009.) Defendant contends that this earlier disclosure put Plaintiff on notice. For Defendant to argue that "MTS Nano Indenter and Nano Indenter II" were encompassed by these three items cuts both ways. While it suggests that Plaintiff was on notice, it also suggests that these devices were known to Defendant in the fall of 2007.

In addition, these devices were known to Defendant because they were created by a predecessor company and thus, the evidence related to these devices that was located in May 2009 was available to Defendant throughout this litigation. Furthermore, five of the items of prior art that support this theory are academic articles either written or co-written by Warren Oliver. (*Id.* at Ex. C.) In their response to Interrogatory No 16, Defendant stated that Warren

Oliver "is the author of important, seminal articles and the inventor of several important inventions relating to nanoindentation and imaging technology." Moreover, Warren Oliver cofounded a predecessor company to MTS. Thus, Defendant was aware or should have been aware of these articles in at least the fall of 2008.

Furthermore, Defendant was aware of Plaintiff's proposed claim construction in the fall of 2007 and therefore, Defendant's "reexamination" of its prior art theories following District Court Judge Montgomery's claim construction order is not a strong justification for its delay. Finally, Defendant failed to explain why it took almost two years to locate and disclose this prior art given what has already been stated. Therefore, this Court concludes that disclosure was not made in a timely fashion.

### 2. *Defendant's Second Supplemental Prior Art Statement*

Plaintiff contends that Dr. Bonnell's report presents four new invalidity defenses and expands upon the "MTS Nano Indenter and Nano Indenter II" and "Device of W. Bonin/Hysitron offered for sale to 3M in July 1992" theories of defense. (Pl.'s Mem. 7-8, Nov. 6, 2009.) This Court concludes that Defendant did not properly supplement its prior art statement within Defendant's Second Supplemental Prior Art Statement. Any supplementation under Rule 26(e) had to correspond with pretrial scheduling order. The pretrial scheduling order required "a list of all of the prior art on which [Defendant] relies, and a complete and detailed explanation of what it alleges the prior art shows and how that prior art invalidates the claim(s) asserted by Plaintiff." Dr. Bonnell's report, which is incorporated by reference within Defendant's Second Supplemental Prior Art Statement, does not satisfy these requirements. While Dr. Bonnell makes an introductory assertion identifying which claims she concludes are invalid, she does not offer "a complete and detailed explanation of what . . . the prior art shows and how that prior art

invalidates the claim(s)." After her introductory assertion, Dr. Bonnell's report is organized around her identified "concepts and elements." The "concepts and elements" do not directly correspond with the contested claims, as was expressly required by the Pretrial Scheduling Order.

### 3. *Plaintiff's Interrogatory No. 15*

Plaintiff contends that Defendant failed to supplement its response to Plaintiff's Interrogatory No. 15 as required by Rule 26(e). (Pl.'s Mem. 27-28, Nov. 6, 2009.) This Court concludes that Defendant's did not fail to supplement its responses to Plaintiff's Interrogatory No. 15.

Rule 26(a)(2)(C) concerns the time to disclose expert testimony in the absence of a court order. The pretrial scheduling order only addressed experts who will provide reports. Supplementation is not required where supplemental or corrective information has been otherwise made known to the parties in writing or during the discovery process. Fed. R. Civ. P. 26, Advisory Comm. Notes, 1993 Amends.

On June 17, 2009, Defendant identified Vincent Jardret and George Pharr within its Supplemental Rule 26(a) Disclosure and noted that these individuals may offer expert testimony. (Graham Decl. Ex. R, Nov. 6, 2009.) On August 3, 2009, Defendant disclosed R. Brian Peters and Vincent Jardret within Defendant's Expert Witness Identification. This Court concludes that the disclosure of these individuals was timely because all of these individuals are identified as potential expert witnesses. If these individuals were going to provide a report, then disclosure of their identity was not required until August 2009. (Third Amended Pretrial Scheduling Order, 5, Sept. 26, 2008.) If they were not going to provide a report then their disclosure was governed by Fed. R. Civ. P. 26(a)(2)(C). Their disclosure was certainly timely under Rule 26(a)(2)(C).

Furthermore all of these individuals were identified in disclosures and during the depositions of other individuals and thus, supplementation was unnecessary under Rule 26(e). Finally, Plaintiff had the opportunity to conduct discovery relative to these individuals until December 15, 2009, because these individuals were named as offering expert testimony.

### 4. *Witness Disclosures*

Plaintiff contends that Defendant failed to timely supplement its Rule 26(a) disclosures. (Pl.'s Mem. 10, 26-27, Nov. 6, 2009.) This argument is almost identical to Plaintiff's argument pertaining to Interrogatory No. 15. In addition to its arguments that Vincent Jardret, George Pharr, and R. Brian Peters' identities should have been disclosed in the Rule 26(a) disclosures pursuant Rule 26(e), Plaintiff contends that Defendant should have supplemented or clarified its Rule 26(a) disclosures to specify which witnesses will testify regarding invalidity. (*Id.* at 10.) Defendant's Rule 26(a) Disclosure and Supplemental Rule 26(a) Disclosure lists potential witnesses under three categories "Development of the product," "Marketing and Sales of the product," and "Other." First, Rule 26(a) does not require Defendant to specify the facts about which each witness will testify. Second, this Court concludes that supplementation was not required for the reasons set forth above.

### iv. <u>Sanctions</u>

Given that this Court has concluded that theories in the Second Supplemental Prior Art Statement and "IBM Microindenter" and "MTS Nano Indenter and Nano Indenter II" from the Supplemental Prior Art Statement were not timely disclosed, this Court must address whether and to what extent sanctions are appropriate. Plaintiff requests that this Court issue an order precluding Defendant from offering any evidence beyond that which was presented in the initial Prior Art Statement. (Pl.'s Mem. 2, Nov. 6, 2009.)  In the alternative, Plaintiff requests that this

Court limit Defendant to only offering evidence in the initial Prior Art Statement and evidence relating to "IBM Microindenter" and "MTS Nano Indenter and Nano Indenter II." (Pl.'s Mem. 30-31, Nov. 6, 2009.)

Federal Rules of Civil Procedure 16(f)(1)(C) permits this court to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Furthermore,

> [i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2). Federal Rules of Civil Procedure 37(c)(1) provides for violations of Rule 26(a) or 26(e). This Court may sanction a party for its violation by (1) precluding the party from use of that information or witness at trial, "unless the failure was substantially justified or harmless"; (2) "order payment of the reasonable expenses, including attorney's fees, caused by the failure"; (3) "inform the jury of the party's failure," Fed. R. Civ. P. 37(c)(1)(A)-(B); and (4) impose other appropriate sanctions, including:

> i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part; [or]
> (vi) rendering a default judgment against the disobedient party . . . .

*Id.* at 37(c)(1)(C) (quoting *id.* at 37(b)(2)(A)(i)-(vi)).

The factors courts consider when determining whether to exclude witnesses not made known in compliance with a pretrial order are: "(1) the reason the party fails to name the witness; (2) the importance of the testimony; (3) the amount of time the opposing party needs to properly prepare for the testimony; and (4) whether a continuance would in some way be useful."

*Citizens Bank of Batesville, Arkansas v. Ford Motor Co.*, 16 F.3d 965, 966 -967 (8th Cir. 1994)

(quoting *Boone v. Moore*, 980 F.2d 539, 541-42 (8th Cir. 1992)).

This Court concludes that exclusion of the evidence is inappropriate in this case. As discussed earlier, Defendant's explanation why it supplemented its Prior Art Statement so late in discovery was insufficient to support a conclusion that supplementation was made in a timely manner. While this factor favors exclusion, the other factors do not support exclusion as a sanction.

First, prior art is offered to show invalidity. There is a public interest in invalidating patents that are anticipated or obvious. Therefore, this Court concludes that the proposed excluded invalidity defenses are important.

Second, this Court concludes that little additional discovery will be needed. At the hearing on this matter, Plaintiff's counsel was unable to articulate the amount of time that Plaintiff needs to prepare to rebut these invalidity defenses. Furthermore, there are a number of facts that lead this Court to conclude that Defendant's untimely supplementation resulted in negligible prejudice to Plaintiff.

Plaintiff's actions do not evince a party that was surprised or prejudiced by an untimely disclosure. Plaintiff delayed almost five months in bringing this motion. Following Defendant's Supplemental Prior Art Statement, this Court granted an Order Amending Fact Discovery Deadline, a Fourth Amended Pretrial Scheduling Order, and a Fifth Amended Pretrial

Scheduling Order. Plaintiff never requested time for additional discovery or objected to Defendant's supplemental prior art statements within the context of any of these prior orders.

Furthermore, Plaintiff had over one month to conduct fact discovery based upon the new invalidity defenses presented in Defendant's First Supplemental Prior Art Statement. And Plaintiff appears to have conducted some discovery based upon the new theories.

Furthermore, these theories do not appear to be entirely "new." Plaintiff was on notice as to the "Nano Indenter and Nano Indenter II" because they stems from patent '141, the Todd paper, and the Pethica paper, which were disclosed in the Defendant's initial Prior Art Statement. In terms of the "IBM Microindenter," Plaintiff was just as much aware of the articles supporting this theory as Defendant given that the author of the articles is cited in one of Plaintiff's patents. (Pl.'s Mem. 5-6, Nov. 6, 2009.)

Furthermore, it is questionable that discovery needs to be conducted given that the prior art is almost entirely made up of academic articles. Either the articles are or are not prior art. Finally, any prejudice related to the Second Supplemental Prior Art Statement is questionable given that Plaintiff's expert was able to respond to Dr. Bonnell's report and Plaintiff deposed Dr. Bonnell.

All of these factors lead the Court to conclude that Plaintiff was minimally prejudiced by the untimely supplementation. And to the extent that any prejudice lingers, this Court concludes that such prejudice can be eliminated by reopening fact discovery to permit Plaintiff to conduct discovery related to the new invalidity defenses.

Nevertheless, this Court takes the untimely supplementation in the present case seriously. This Court is especially concerned about the Second Supplemental Prior Art Statement, which does not satisfy any of the requirements set forth in the pretrial scheduling order and which

seems to set forth new theories of invalidity after the close of fact discovery. Supplementation in the present case raises the specter of tactical rather than "technical noncompliance." (Def.'s Mem. 36, Nov. 17, 2009.) Thus, this Court concludes that some sanction is appropriate. Consistent with this conclusion and the previous discussion, Plaintiff's Motion to Exclude [Docket No. 181] is **GRANTED IN PART** to the extent that this Court orders as follows:

1. On or before February 1, 2010, Defendant shall pay to Plaintiff the sum of five thousand dollars ($5,000.00) as a sanction for failing to timely supplement its prior art statement and as reasonable fees associated with Plaintiff bringing the present motion.

2. On or before January 15, 2010, Defendant shall provide Plaintiff with a Third Supplemental Prior Art Statement that adheres to the requirements of the Pretrial Scheduling Order.

3. On or before February 1, 2010, Plaintiff will submit to this Court a proposed Sixth Amended Scheduling Order providing a timeline and number of interrogatories and depositions needed for Plaintiff to conduct discovery related to Defendant's invalidity claims.

Plaintiff's Motion to Exclude [Docket No. 181] is **DENIED** in all other respects.

### b. Motion Compel Documents [Docket No. 186]

Plaintiff moves this Court for an order compelling Defendant to produce testing report documents. (Pl.'s Mem. Mot. to Compel, 9, Nov. 6, 2009.) Plaintiff served on Defendant its Third Set of Requests for Production of Documents Nos. 15, 16, 17, and 18. (*Id.* at 4-5.) Document Request No. 15 requested "Documents sufficient to describe MTS' testing services using indentation testing devices with a scanned probe microscope apparatus, including NANO Vision™, including but not limited to a specimen of each marketing and promotion document

regarding MTS' micro and nano mechanical testing services." (*Id.* at 4.) Defendant contends that Document Request No. 15 does not encompass the testing reports that Plaintiff now seeks and argues in the alternative that the testing reports are irrelevant. (Def.'s Mem. in Opp. 1, Nov. 17, 2009.)

This Court agrees with Defendant that Document Request No. 15 is ambiguous. Nevertheless, the testing reports are conceivably encompassed within the phrase "[d]ocuments sufficient to describe MTS' testing services." And any ambiguity was certainly cured when Plaintiff notified Defendant that Plaintiff intended Document Request No. 15 to encompass the testing reports.

This Court concludes that the testing reports are relevant. The testing reports evince use of the alleged infringing device, which was pleaded in the present case. *See* 35 U.S.C. § 271. Defendant contends that use has never been contested in this case, (Def.'s Mem. in Opp. 9, Nov. 11, 2009), but the scope of discovery is not limited by what a defendant asserts the central issue of the case to be. If Defendant wanted to mitigate the cost of disclosing each testing report, Defendant could have negotiated with Plaintiff to provide a document or admission listing every test done. In addition to being relevant to Plaintiff's claims, the testing reports are also relevant to the calculation of the royalties to which Plaintiff is entitled if Plaintiff prevails on its claims. *See* 35 U.S.C. § 284.

Therefore, this Court orders that on or before February 1, 2010, Defendant must produce nonprivileged information responsive to Plaintiff's Document Request No. 15, including, but not limited to, testing reports for the accused device.

# IV. ORDER

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Exclude [Docket Nos. 181] is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion to Compel [Docket No. 186] is **GRANTED** as set forth herein and as follows:

1. On or before February 1, 2010, Defendant shall pay to Plaintiff the sum of five thousand dollars ($5,000.00) as a sanction for failing to timely supplement its motion and as reasonable fees associated with Plaintiff bringing the present motion.

2. On or before January 15, 2010, Defendant shall provide Plaintiff with a Third Supplemental Prior Art Statement that adheres to the requirements of the Pretrial Scheduling Order.

3. On or before February 1, 2010, Plaintiff will submit to this Court a proposed Sixth Amended Scheduling Order providing a timeline and number of interrogatories and depositions needed for Plaintiff to conduct discovery related to Defendant's invalidity claims.

4. On or before February 1, 2010, Defendant must produce nonprivileged information responsive to Plaintiff's Document Request No. 15, including, but not limited to, testing reports for the accused device.

Dated:_____1/4/10_____

_____s/ Arthur J. Boylan_____
Magistrate Judge Arthur J. Boylan
United States District Court